IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

Hon. Guy Reschenthaler, in his capacity
as a candidate for reelection to U.S.
House of Representatives, Hon. Dan
Meuser, in his capacity as a candidate
for reelection to U.S. House of
Representatives,  Hon. Glenn "G.T."
Thompson,  in his capacity as a                         File No. 24-1671
candidate for reelection to U.S. House
of Representatives, Hon. Lloyd
Smucker, in his capacity as a candidate
for reelection to U.S. House of
Representatives, Hon. Mike Kelly, in his
capacity as a candidate for reelection to
U.S. House of Representatives, Hon.
Scott Perry,  in his capacity as a
candidate for reelection to U.S.
House of Representatives, PA
Fair Elections,

         Plaintiffs

vs.                                                     Amended Complaint


Al Schmidt, in his official capacity
as Secretary of the Commonwealth,
or successor, Jonathan Marks, in his
official capacity as the Deputy
Secretary for Elections and
Commissions for the
Commonwealth of Pennsylvania,
or successor,

         Defendants

Plaintiffs, by and through their undersigned counsel, respectfully allege and represent the following for their Complaint.

1.      The Plaintiffs Guy Reschenthaler, Dan Meuser, Glenn "G.T." Thompson, Lloyd Smucker, Mike Kelly, and Scott Perry are Congressmen seeking re-election to the U.S. House of Representatives in the November 5, 2024, general election in the Commonwealth of Pennsylvania ("Commonwealth" or "Pennsylvania").

2.      Plaintiffs seek prospective declaratory and injunctive relief to ensure legal compliance with federal and state law regarding the verification of voter registration applicants' identity and eligibility before accepting and counting ballots from UOCAVA applicants in the Commonwealth of Pennsylvania.

3.      The federal Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) establishes special voting privileges reserved for members of the military, their family members, and other non-military U.S. citizens abroad.

4.      UOCAVA requires states to first determine if a voter registration applicant is qualified to receive those voting privileges. The federal law requires all states to "accept and process, with respect to any election for Federal office, any **otherwise valid** voter registration application and absentee ballot application…" [52 U.S.C. § 20302(a)(a)(2)] before triggering the privileges for UOCAVA eligible voters. (Emphasis added).

5.      To verify identity and eligibility and to determine if an application is otherwise valid, the federal Help America Vote Act (HAVA) establishes the minimum standards. 52 U.S.C. § 21083(a)(5)(A)(i-iii)(verification of voter registration information).

Applicants who seek to vote in a federal election must provide, at the time of registration, a valid driver's license number. *Id.* If the individual has not been issued a driver's license, they may use the last four digits of their social security number. For applicants who have no DLN and who have not been issued a SSN, HAVA has a Special Rule that a State can assign them a unique identifying number and verify their identity and eligibility using other approved documents. *Id.*

6.     In addition to the minimum federal requirements, Pennsylvania law, 25 Pa.C.S. § 3502 explicitly requires UOCAVA applicants to satisfy the voter eligibility requirements of the Commonwealth. 25 Pa.C.S. § 3502. To be eligible under Pennsylvania law, applicants must "satisfy the voter eligibility requirements of the Commonwealth including residency requirements." *Id.*

7.     The Pennsylvania Election Code establishes that a UOCAVA application may be rejected if an "omission prevents election officials from determining whether the UOCAVA applicant is eligible to vote." 25 Pa.C.S. § 3515.

8.     When attempting to determine if an absentee ballot application is "otherwise valid", county election officials "shall ascertain from the information on such application, district register or **from any other source** that such applicant possesses all the qualifications of a qualified elector other than being registered or enrolled." 25 Pa.C.S. § 3146.2b

9.     In direct conflict with federal and state law, Defendants Secretary of the Commonwealth Al Schmidt or Deputy Secretary for Elections Johnathan Marks, or

both, have issued directives and guidance to county officials to exempt UOCAVA applicants entirely from any verification requirements.

10.    The Defendants' non-verification position has been confirmed in sworn testimony in the General Assembly. Ex. B (House Committee Meetings, *Public Hearing on election administration considerations (in particular in advance of the 2022 General Election)*, at 59:10–1:00:14 (Sept. 14, 2022).[1]

11.    When asked about how UOCAVA applicants are verified in a 2022 hearing, the Deputy Secretary for Elections, Johnathan Marks testified: "That group of voters are specifically exempted from [sic] the HAVA verification requirements… They do not have to provide PennDOT ID or last 4 of SSN… There's no systematic verification." *Id.*

12.    The Defendants' non-verification position is also confirmed in their 2023 Pennsylvania Military and Overseas Voters Guidance (Oct. 18, 2023) (Ex. E) which includes the Department of State's "position."

13.    "The Department's position is that covered voters are exempt from the Election Code's ID requirements for absentee voters." *Id.*

14.    The Defendants cannot cite to any legal authority, statutory or otherwise, as a valid legal basis for their "position" that UOCAVA voters are exempt from voter registration identification requirements, state eligibility requirements and

---

[1] This exhibit in the record is a video recording, available at
https://www.legis.state.pa.us/cfdocs/legis/CMS/ArchiveDetails.cfm?SessYear=2021
&MeetingId=2450&Code=-1&Chamber=H

absentee ballot application requirements because no such exemption exists in state or federal law. See, e.g., Ex. A.

15.     Under the U.S. Constitution's Supremacy Clause, preemption occurs when a state law or practice conflicts with a federal law and when it is impossible to comply with both state law and federal law.

16.     Because the Defendants' statewide directives conflict with federal law, and it is impossible to comply with both the directives and federal law, the Defendants' statewide directives and guidance are preempted by federal law.

17.     The Commonwealth's practice is an illegally structured election process which makes Pennsylvania's elections vulnerable to ineligible votes by individuals or entities who could purport to be UOCAVA-eligible, register to vote without verification of identity or eligibility but receive a ballot by email and then vote a ballot without providing identification at any step in the process.

18.     The Commonwealth's "position" allows UOCAVA applicants to register to vote, receive absentee ballots and to cast ballots in federal elections that do not comply with the requirements of federal and state law. Defendants' disregard for the law creates an opportunity for inclusion of ineligible ballots such that the ultimate tally of the votes may not accurately reflect the legal results which could affect a close Congressional election—an injury to Plaintiffs.

19.     Foreign nations, in efforts to interfere with U.S. elections, could easily submit falsified FPCAs for ballots to unduly influence U.S. elections. *See, e.g.,*

https://www.justice.gov/opa/press-release/file/1449226/dl (last visited Sept. 30, 2024) (Sealed indictment, *U.S. v. Seyed Mohmnad Hosein Mousa Kazemi,* 21 Cr. 644).

20.     According to Defendants' Absentee and Mail Ballot Report, over 25,000 UOCAVA ballots for the November 5, 2024, election have already been transmitted to potentially unverified UOCAVA applicants. See: https://copaftp.state.pa.us/ (Sept. 30, 2024)

21.     The Defendants' Directives and guidance to county election officials to not attempt to verify the identity or eligibility of UOCAVA applicants, as required by federal law under UOCAVA and HAVA, is an ongoing and continuing act and, hence, is an impending and continuing injury as the illegal election structure departs from federal legal mandates.

22.     Therefore, the Plaintiffs, who are Congressional candidates, are entitled to prospective declaratory and injunctive relief for upcoming elections.

## JURISDICTION AND VENUE

23.     This action arises under the Constitution of the laws of the United States.

24.     This Court has jurisdiction pursuant to Articles III and VI of the United States Constitution, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1346(a)(2), and 42 U.S.C. § 1983.

25.     The Help America Vote Act has a preemption clause for inconsistent state laws. 52 U.S.C. § 21084.

26.     Plaintiffs' claims for declaratory and injunctive relief are authorized by 28

U.S.C. §2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

27.    Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to Plaintiffs' claims against Defendants occurred in the Commonwealth of Pennsylvania.

## PARTIES

28.    Guy Reschenthaler brings this complaint in his capacity as a candidate for reelection to U.S. House of Representatives from the 14th district of Pennsylvania.

29.    Dan Meuser brings this complaint in his capacity as a candidate for reelection to U.S. House of Representatives from the 9th district of Pennsylvania.

30.    Glenn "GT" Thompson brings this complaint in his capacity as a candidate for reelection to U.S. House of Representatives from the 15th district of Pennsylvania.

31.    Lloyd Smucker brings this complaint in his capacity as a candidate for reelection to U.S. House of Representatives from the 11th district of Pennsylvania.

32.    Mike Kelly brings this complaint in his capacity as a candidate for reelection to U.S. House of Representatives from the 16th district of Pennsylvania.

33.    Scott Perry brings this complaint in his capacity as a candidate for reelection to U.S. House of Representatives from the 10th district of Pennsylvania.

34.    Plaintiffs Guy Reschenthaler, Dan Meuser, Glenn "GT" Thompson, Lloyd Smucker, Mike Kelly and Scott Perry are currently elected members of the U.S. House of Representatives. These Plaintiffs seek re-election in the November 5, 2024, election. Moreover, they intend to run for federal office in the future and have plans to do so. As

candidates, they have federal rights to a fair and equal election, including that state and local election officials comply with federal election laws and voter registration information verification requirements.

35.    PA Fair Elections is an association of Pennsylvania voters dedicated to election integrity and election official legal compliance, which includes UOCAVA voters on active duty in the US military. These UOCAVA voters have federal rights to a fair and equal election, including that state and local election officials comply with federal election laws and voter registration information verification requirements.

36.    Defendant Al Schmidt is the Secretary of the Commonwealth of Pennsylvania. He is a political appointee of the Governor and is designated as the Commonwealth's Chief Election Official and thus has certain duties imposed upon him by the Commonwealth's election code which are established by the legislature.

37.    Defendant Jonathan Marks is the Deputy Secretary for Elections and Commissions for the Commonwealth of Pennsylvania.

38.    Defendant Al Schmidt and Defendant Jonathan Marks are both within the executive office of the Pennsylvania Department of State.

39.    The Defendants or their successors are sued in their official capacity only. The Defendants are not sued for damages, but for prospective declaratory and injunctive relief only.

## FACTUAL ALLEGATIONS

40.    Plaintiffs who are Congressional candidates in the 2024 election are forced

to participate in Pennsylvania's illegally structured federal election process.

41.   The Commonwealth's practice is an illegally structured election process which makes Pennsylvania's elections vulnerable to ineligible votes by individuals or entities who could purport to be UOCAVA-eligible, register to vote without verification of identity or eligibility but receive a ballot by email and then vote a ballot without providing identification at any step in the process.

42.   The Commonwealth's practice allows UOCAVA applicants to register to vote, to apply for, receive and to cast ballots that do not comply with the requirements of federal and state law, such that the potentially invalid ballots could be accepted, and, in turn, the invalid votes could change the result of a close Congressional election—an injury to Plaintiffs.

43.   The Defendants' directives to county election officials to not attempt to verify the identity or eligibility of UOCAVA applicants, as required by federal law under HAVA and UOCAVA, and under state law is an ongoing and continuing act and, hence, is an impending and continuing injury as the illegal election structure departs from federal legal mandates.

44.   Additionally, each Plaintiff-Congressman, under the Elections Clause, has individual U.S. Representative standing because the Defendants' actions and interpretations of state law are an effective repeal or amendment to federal election law depriving the Congressman of an opportunity to vote on the subject—an injury to each Congressman.

45.     Congressman Guy Reschenthaler resides in Washington County, Pennsylvania. He is running for re-election in the 14th District of Pennsylvania on November 5, 2024. He also intends and has plans to seek a federal office in the future. He would vote no if given an opportunity to vote on a federal bill to exempt Pennsylvania from complying with the legal requirements of UOCAVA and HAVA as detailed in this complaint.

46.     Congressman Dan Meuser resides in Luzerne County, Pennsylvania. He is running for re-election in the 9th District of Pennsylvania on November 5, 2024. He also intends and has plans to seek a federal office in the future. He would vote no if given an opportunity to vote on a federal bill to exempt Pennsylvania from complying with the legal requirements of UOCAVA and HAVA as detailed in this complaint.

47.     Congressman Glenn "GT" Thompson resides in Centre County, Pennsylvania. He is running for re-election in the 15th District of Pennsylvania on November 5, 2024. He also intends and has plans to seek a federal office in the future. He would vote no if given an opportunity to vote on a federal bill to exempt Pennsylvania from complying with the legal requirements of UOCAVA and HAVA as detailed in this complaint.

48.     Congressman Lloyd Smucker resides in Lancaster County, Pennsylvania. He is a candidate for re-election in the 11th District of Pennsylvania in the US House of Representatives on November 5, 2024. He also intends and has plans to seek a federal office in the future. He would vote no if given an opportunity to vote on a federal bill

to exempt Pennsylvania from complying with the legal requirements of UOCAVA and HAVA as detailed in this complaint.

49.     Congressman Mike Kelly resides in Butler County, Pennsylvania. He is running for re-election in the 16th District of Pennsylvania on November 5, 2024. He also intends and has plans to seek a federal office in the future. He would vote no if given an opportunity to vote on a federal bill to exempt Pennsylvania from complying with the legal requirements of UOCAVA and HAVA as detailed in this complaint.

50.     Congressman Scott Perry resides in York County, Pennsylvania. He is running for re-election in the 10th District of Pennsylvania on November 5, 2024. He also intends and has plans to seek a federal office in the future. He would vote no if given an opportunity to vote on a federal bill to exempt Pennsylvania from complying with the legal requirements of UOCAVA and HAVA as detailed in this complaint.

51.     To begin, the U.S. Constitution's Elections Clause authorizes states to regulate the times, places and manner of federal election subject to Congressional enactments.

52.     The Elections Clause, ratified in 1790, as part of the original U.S. Constitution, provides:

> The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators.

53.     The Plaintiffs believe that the purpose of the Elections Clause is twofold.

54.     First, the Elections Clause divides the legal responsibility for regulating

federal elections. That responsibility lies primarily with the states subject to Congressional enactments.

55.    Second, the Plaintiffs believe that the Elections Clause lodges the power to regulate elections in the respective legislative branches of the states and the federal government.

56.    Congress, pursuant to the Elections Clause, enacted UOCAVA in 1986 regulating absentee voting in federal elections by military and overseas citizens.

57.    The Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), P.L.    99-410, 52 U.S.C. §§ 20301–20311, 39 U.S.C. § 3406, 18 U.S.C. §§ 608–609,    is a federal law dealing with federal elections and voting rights.

58.    The act requires that all U.S. states, the District of Columbia, Puerto Rico, Guam, American Samoa, and the U.S. Virgin Islands allow certain eligible U.S. citizens to register to vote and to vote by absentee ballot in federal elections.

59.    The act is Public Law 99-410 and was signed into law by President Ronald Reagan on August 28, 1986.

60.    The Plaintiffs believe that UOCAVA facilitates military and overseas voting distinct from other absentee voting by providing privileges to eligible voters.

61.     The Plaintiffs understand that the Federal Post Card Application (FPCA) (Ex. G) is the form used by members of the U.S. military and their family members to register to vote and to request an absentee ballot under UOCAVA in every state, including Pennsylvania.

62.     The FPCA may be returned by physical postal mail, email, or fax. *Id.*

63.     Under UOCAVA, the FPCA can also be used by U.S. citizens who reside outside of the United States but who are not members of the military. *Id.*

64.     The FPCA is both a voter registration form and absentee ballot application combined in a single document. *Id.* See Ex. L (diagram of FPCA registration and absentee processes).

65.     UOCAVA, 52 U.S.C. § 20302(a)(a)(2), is accurately quoted in part as follows and requires states to "accept and process, with respect to any election for Federal office, any **otherwise valid** voter registration application and any **otherwise valid** absentee ballot application from an absent uniformed services voter or overseas voter, if the application is received by the appropriate State election official not less than 30 days before the election." (Emphasis added).

66.     The Plaintiffs understand that the privileges for registering and voting under UOCAVA apply to an otherwise eligible applicant which means that in order for the UOCAVA privileges to be in effect, there must first be a voter eligible to vote in the state.

67.     The FCPA includes fields for applicants to provide the HAVA required driver's license or social security number information. *Id.*

68.     The Plaintiffs' understanding is that federal law anticipates that the state will have additional requirements beyond the minimum HAVA requirements. Thus, the FPCA also includes a field for state specific instructions and "additional information"

that the applicant must provide.

69.     Non-military UOCAVA-eligible voters include study abroad students, individuals who work outside of the U.S., and U.S. citizens who reside abroad.

70.     Members of the military and their family members who vote as military under UOCAVA must have valid IDs that could be matched to data in government databases to verify identity and eligibility. The Plaintiffs' understanding is that unlike some states that allow overseas votes from those who have never lived in the state, Pennsylvania is not a "never-resided" state, meaning that only those U.S. citizens who lived in Pennsylvania before moving abroad would be eligible to vote in any election in Pennsylvania. *Pennsylvania*, Federal Voting Assistance Program, https://www.fvap.gov/guide/chapter2/pennsylvania (last visited May 29, 2024).

71.     According to the EAC's report, Election Administration and Voting Survey 2020 Comprehensive report, in Pennsylvania's last Presidential election (2020), the state received approximately 27,000 ballots through UOCAVA, with approximately 20,000 of those ballots coming from non-military applicants.[2]

72.     Congress, pursuant to the Elections Clause, enacted HAVA in 2002 which included requirements for states to verify registration information for all voters including UOCAVA voters.

---

[2]ELECTION ADMINISTRATION AND VOTING SURVEY 2020 COMPREHENSIVE REPORT, U.S. Election Assistance Commission, https://www.eac.gov/sites/default/files/document_library/files/2020_EAVS_Report _Final_508c.pdf

73.    In 2002, Congress, pursuant to the Elections Clause, enacted HAVA which included, in part, requirements on states to verify registration information for all voters including UOCAVA voters.

74.    The Help America Vote Act (HAVA), codified at 52 U.S.C § 21083 et seq. (Pub. L. 107–252, title III, § 303, Oct. 29, 2002, 116 Stat. 1708), under 52 U.S.C. § 21083(a)(5), titled "Verification of voter registration information" establishes mandates for voter registration applicants to provide information, in-part "to enable each such [election] official to verify the accuracy of the information provided on applications for voter registration." *Id.* at § 21083(a)(5)(B) Text of HAVA, 52 U.S.C. § 21083). (*Help America Vote Act of 2002-Conference Report: Hearing on H.R. 3295 Before the Senate*, 107th Cong. S10488–516 (2002)).

75.    The Congressional record reflects that Senator Christopher "Kit" Bond remarked about the underlying rationale and necessity for an identification process as he is accurately quoted as stating:

> Congress agreed that while the mail-in cards have made registration more accessible, the policy has also created increased opportunities for fraud. To address this, we created an identification requirement for first-time voters who register by mail. The security of the registration and voting process is of paramount concern to Congress and the identification provision and the fraud provisions in this bill are necessary to guarantee the integrity of our public elections and to protect the vote of individual citizens from being devalued by fraud. Every false registration and every fraudulent ballot cast harms the system by cancelling votes cast by legitimate voters. It undermines the confidence of the public that their vote counts and therefore undermines public confidence in the integrity of the electoral process.

https://www.congress.gov/107/crec/2002/10/16/CREC-2002-10-16.pdf.

76.    The Plaintiffs' understanding is that HAVA establishes minimum requirements for all applicants registering to vote to provide information with their application for registration in 52 U.S.C. § 21083(a)(5)(A).

77.    Under 52 U.S.C. § 21083(a)(5)(A), a voter registration application may not be accepted or processed by a state unless the application includes the following:

- If an individual has been issued a driver's license, they *must* provide their driver's license number. *Id.* at (a)(5)(A)(i)(I);
- In the case of an individual who has not been issued a driver's license, the last four digits of the applicant's social security number may be used. *Id.* at (a)(5)(A)(i)(II); or
- If an individual does not possess a driver's license or social security number, the state may assign a unique number, but that individual may not vote in a Federal election unless they provide some other document to establish identity and eligibility. *Id.* at (a)(5)(A)(ii).

78.    Data from the Social Security Administration, from the ssa.gov website shows that a very small percentage of adult US citizens do not have an SSN or a DLN.[3]

79.    HAVA's Special Rule only applies to applicants who do not have a driver's license and who have not been issued a social security number; however, that special rule does not apply to applicants who do have a driver's license or a social security number. The Special Rule does not apply to individuals who provide invalid DLN or invalid SSN.

80.    Furthermore, under HAVA's Special Rule, adding a person to the voter registration database and assigning them a number does not eliminate the need to verify the accuracy of the information on the application. The applicants are added to the statewide voter

---

[2] (https://www.ssa.gov/dataexchange/documents/HAVV%20model.pdf)

registration database and then the official must verify the accuracy of the voter registration information as described in 5(B)(i).

> 5(B) REQUIREMENTS FOR STATE OFFICIALS.— (i) SHARING INFORMATION IN DATABASES.—The chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information **in the <u>database of the statewide voter registration system</u>** with information in the <u>database of the motor vehicle authority</u> to the extent required to enable each such official to **verify the accuracy of the information provided on applications for voter registration.** (emphasis added)

81.     The Social Security Administration's enumeration at birth (EAB) is a program that allows parents to complete applications for SSNs for their newborns as part of the hospital birth registration process; so, approximately 99% of SSNs for infants are assigned through the EAB process. (Source: https://secure.ssa.gov/poms.nsf/lnx/0110205505)

82.     A parent cannot even claim their child as a dependent on an income tax return unless that child has a social security number which serves as further incentive to ensure that all children have a social security number. [source: https://www.ssa.gov/pubs/EN-05-10023.pdf]

83.     Data from the US Department of Transportation, Federal Highway Administration shows that 91% of all American adults have a driver's license. https://www.fhwa.dot.gov/policyinformation/statistics/2021/dl20.cfm                     and https://hedgescompany.com/blog/2024/01/number-of-licensed-drivers-us/

84.     Based on the data from the SSA, US DOT and the IRS, there is only a small percentage of adult US citizens who have neither a DLN nor an SSN. Identification is required for overseas travel. Therefore, the number of UOCAVA applicants to whom the Special Rule could apply would necessarily be a small number.

85.     A valid passport is required to enter and leave most foreign countries. Some countries may allow you to enter with only a birth certificate, or with a birth certificate and a driver's license. However, the rules established under the U.S. Intelligence Reform and Terrorism Prevention Act of 2004, require that all persons, including U.S. citizens, traveling by air, must present a valid passport to reenter the United States. https://exchanges.state.gov/us/required-documentation#:~:text= Only%20the%20U.S.%20Department%20of,is%20the%20best%20documentation%2 0available.

86.     Defendants' directive and position conflate HAVA's Special Rule for Applicants **without** a driver's license or social security number to somehow include applicants who provide invalid DLN or invalid, but the Special Rule clearly only applies to individuals who have been issued neither.

> (ii) SPECIAL RULE FOR APPLICANTS WITHOUT DRIVER'S LICENSE OR SOCIAL SECURITY NUMBER.—If an applicant for voter registration for an election for Federal office has not been issued a current and valid driver's license or a social security number, the State shall assign the applicant a number which will serve to identify the applicant for voter registration purposes. To the extent that the State has a computerized list in effect under this subsection and the list assigns unique identifying numbers to registrants, the number assigned under this clause shall be the unique identifying number assigned under the list.

87.     The Plaintiffs' understanding is that the very small number of those individuals eligible to vote who have not been issued a driver's license or state identification or social security number to whom the HAVA Special Rule applies, can still apply to register to vote and be assigned a unique voter ID number in the statewide voter registration database, but they must prove their identity and eligibility by alternate

means prior to voting in a federal election. 52 U.S.C. §§ 21083(a)(5)(A)(ii)–(iii).

88.    The Plaintiffs' understanding is that examples of other acceptable documents include government issued documents like a U.S. Passport or military ID. HAVA also includes documents like a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter. *E.g., id.* at § 21083(b)(2)(A)(i)(II).

89.    As detailed above, UOCAVA provides for military and military families, and non-military U.S. citizens abroad, to receive certain privileges to vote absentee.

90.    Before voting, eligible citizens intending to vote through UOCAVA may apply to register to vote and simultaneously apply to request an absentee ballot using the Federal Post Card Application (FPCA). Ex. G (FPCA 2023 Print Version).

91.    To determine if an applicant is eligible to receive the privileges afforded under UOCAVA, states must first determine if the application is "otherwise valid" as a voter registration application and as an absentee ballot application according to state and federal requirements.

92.    Pennsylvania law established identification and eligibility requirements for voter registration applications and additional identification requirements for absentee ballot applications.

93.    HAVA, as a federal law, established the minimum level of verification of identity and eligibility for all individuals who seek to register to vote in any federal election. *See, e.g.*, 52 U.S.C. § 21083(a)(5), as described above.

94.     HAVA requires all voter registration applicants to provide valid voter registration identification before an applicant can vote in a federal election.

95.     Congress passed HAVA in 2002, in part, to make it "easier to vote, harder to cheat."

96.     HAVA section 304, regarding preemption sets the minimum standards for election administration. States may establish "election administration requirements that are more strict than the requirements established under this title so long as such State requirements are not inconsistent with the Federal requirements under this title or any law described in section 906." 52 U.S.C. § 21084. No state may establish laws that are less strict than the minimum standard established by HAVA. *Id.*

97.     The Plaintiffs' understanding is that § 21083(a)(5)(a) governing minimum ID requirements, applies to all who are applying to register to vote.

98.     There are additional identification requirements in 52 U.S.C. § 21083(b) for individuals who registered by mail and then choose to vote by mail, but registering to vote, applying for an absentee ballot and voting by mail are separate processes. Nothing in the text of the law states that mail-in-specific requirements supplant HAVA's registration identification and verification requirement of (a)(5).

99.     The Plaintiffs' understanding is that under 52 U.S.C. § 21083(b), this section establishes additional identification requirements for first time voters who registered to vote by mail.

100.    One such requirement under 52 U.S.C. § 21083(b)(2)(i), involves an

individual who successfully registered to vote by mail but appears to vote in-person. That individual would be required to present a current, valid photo ID, and proof of address through some sort of bill or other government document that "shows the name and address of the voter." *Id.* at (ii)(II).

101.   The Plaintiffs' understanding is that §21083(b) also allows for casting a provisional ballot in the absence of the required ID.

102.    The Plaintiffs' understanding is that for first time voters who registered by mail and who choose to vote by mail for the first time, HAVA requires them to include a photocopy of their ID with their mail ballot.

103.   The Plaintiffs' understanding is that UOCAVA privileges apply to "otherwise eligible" individuals who are members of the military and their family members who are stationed far from home and to non-military US citizens who are overseas at the time of the election.

104.    UOCAVA was enacted in 1986 before email and other forms of electronic communication were readily available.

105.    Due to the "absentee" component of UOCAVA eligibility, nearly all UOCAVA ballots would have necessarily been submitted by mail.

106.    HAVA establishes the minimum requirements, but many states have requirements that exceed the minimum requirement in HAVA and are stricter. It is also the Plaintiffs' understanding that state laws regarding requirements for absentee ballot applications also vary. The Plaintiffs' understanding is that one of the privileges afforded

to eligible UOCAVA voters is the right to vote absentee even if the state laws would have otherwise limited access to absentee ballots.

107.   PA law requires the provision of certain information as part of the absentee ballot application process. Absentee ballot applications of military applicants should not be rejected for missing information if the missing information can be ascertained by the county board. 25 Pa. Stat. § 3146.2b(b): "Providing, however, that no application of any qualified elector in military service shall be rejected for failure to include on the elector's application any information if such information may be ascertained within a reasonable time by the county board of elections."

108.   When HAVA was passed in 2002, Congress enumerated an exception for UOCAVA voters who registered by mail and who would be necessarily voting absentee by mail.

109.   UOCAVA voters who have been registered and are entitled to vote under UOCAVA are not required to submit a photocopy of their ID with the ballot when they return the ballot by mail. HAVA paragraph 52 U.S.C. § 21083(b)(1) – requiring a copy of the ID with the ballot --shall not apply in the case of a person who is "entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act."

110.   The Plaintiffs' understanding is that HAVA exempts UOCAVA eligible and qualified voters from the (b)(1) requirement to also include a copy of their ID with their mail ballot but does not exempt UOCAVA voters from *ever* providing identification information prior to voting, or from the general (a)(5) requirements to provide HAVA

required identification information when registering to vote.

111.   Consistent with HAVA's b(1)exception, Pennsylvania's election code exempts qualified and eligible UOCAVA electors from the additional proof of identification document requirements with the returned absentee ballot.

> Pa. Stat. § 3146.2(j) Notwithstanding the provisions of this section requiring proof of identification, a qualified absentee elector shall not be required to provide proof of identification if the elector is entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act (Public Law 99-410, 100 Stat. 924) or by an alternative ballot under the Voting Accessibility for the Elderly and Handicapped Act (Public Law 98-435, 98 Stat. 1678).

112.   Consistent with HAVA, if an applicant is determined to be a qualified elector according to state and federal law and if they are determined to be eligible to receive UOCAVA voting privileges, that elector shall not be required to provide the additional proof of identification otherwise required with the returned voted absentee ballots.

113.   In 2012, the Pennsylvania General Assembly enacted the Uniform Military and Overseas Voters Act (UMOVA), which was signed into law on October 24, 2012. 25 Pa.C.S. § 3501, et seq.

114.   Pennsylvania's UMOVA extends to Pennsylvania's state and local elections the accommodations and privileges for military and overseas voters found in federal UOCAVA law. *Id.*

115.   UMOVA applies to all elections conducted in Pennsylvania and helps to ensure compliance with UOCAVA and the MOVE Act. *Id.*

116.   Pennsylvania law is accurately quoted as, covered voters include all the

following: (1) A uniformed-service voter who is registered to vote in the Commonwealth; (2) An overseas voter who is registered to vote in the Commonwealth; (3) A uniformed-service voter who is not registered to vote in the Commonwealth but who otherwise satisfies the voter eligibility requirements of this Commonwealth; and (4) An overseas voter who is not registered to vote in the Commonwealth but who otherwise satisfies the voter eligibility requirements of this Commonwealth including residency requirements. 25 Pa.C.S. § 3502.

117.   Under Pennsylvania law, the UOCAVA applicants must satisfy the voter eligibility requirements under state and federal law before becoming a covered voter.

118.   Notably, the Plaintiffs' understanding is that Pennsylvania's enactment of UMOVA state law cannot supersede 52 U.S.C. § 21083(a)(5)(A) and HAVA's voter registration information verification requirements or UOCAVA's requirement that election officials first determine if the voter registration application and the absentee ballot applications are otherwise valid.

119.   Minimum state requirements are established in the Pennsylvania Election Code. PA Election Code § 3502 requires UOCAVA applicants to "satisfy the voter eligibility requirements of the Commonwealth including residency requirements." Further, an overseas applicant's application can be rejected if an omission prevents an election official from determining whether the applicant is eligible. (§ 3515).

120.   Voter eligibility requirements of the Commonwealth are described in § 1301(a) and accurately quoted as:

- o At least 18 years of age on the day of the next election;
- o A citizen of the United States for at least one month;
- o Resident of the Commonwealth for at least one month; and
- o Not confined in a penal institution for conviction of a felony within the last five years

121.  But, the PA Department of State takes the "position" that UOCAVA applicants are exempt from HAVA's registration information verification requirements.

122.  The Defendants' directives and guidance to the counties on UOCAVA applicants direct county officials not to attempt to verify identity and eligibility and not to follow 52 U.S.C. § 21083(a)(5)(A) and its voter registration information verification requirements.

123.  The Plaintiffs' understanding is that the majority of UOCAVA applicants provide a DLN or SSN4 on the application but the Defendants direct counties not to even attempt to verify the information that UOCAVA applicants provided on the FPCA.

124.  Al Schmidt is Pennsylvania's chief election official. HAVA also charges Secretary Schmidt—as well as his predecessors and successors who serve as the state's chief election official—with the responsibility to establish a system to match the applicant's identification numbers provided against information in official government databases prior to voting in a federal election:

> The chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications

for voter registration.

52 U.S.C. § 21083(a)(5)(B)(i).

125.   The chief state election official is responsible under HAVA to ensure that, prior to accepting or processing a registration, officials verify the accuracy of the information on a voter registration application by comparing to information in the state motor vehicle authority and/or with information in the social security administration.

> Except as provided in clause (ii), notwithstanding any other provision of law, an application for voter registration for an election for Federal office **may not be accepted or processed by a State** unless the application includes—
> (I)in the case of an applicant who has been issued a current and valid driver's license, the applicant's driver's license number; or
> (II) in the case of any other applicant (other than an applicant to whom clause (ii) applies), the last 4 digits of the applicant's social security number.

52 U.S.C. § 21083(a)(5)(A)(i) (emphasis added).

126.   HAVA requires chief election officials to enter into agreements with the state motor vehicles department and the Commissioner of the Social Security Administration to verify information for applicants who have drivers' licenses and for those who do not have a state issued driver's license or identification. *Id.* at § 21083(a)(5)(B)(i-ii).

127.   In violation of HAVA, Pennsylvania's chief election official Schmidt, or Deputy Secretary Marks or both, through the Department of State's Voter ID Guidance, from September 26, 2022, is accurately quoted, in part, as follows: "Those entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)… are not required to provide proof of identification." Ex. M.

128.   Although Defendants do have a process for HAVA-required verification of applicants' identifying information, the Defendants instruct counties not to attempt to verify UOCAVA applicants as required under 52 U.S.C. § 21083(a)(5)(A).

129.   In 2022, Deputy Secretary of the Commonwealth, Jonathan Marks confirmed that Pennsylvania's current practice is to exempt UOCAVA voters entirely from verification requirements.

130.   When asked how counties verify information for UOCAVA applicants during a hearing in the General Assembly, the Deputy Secretary for Elections, Johnathan Marks testified: "That group of voters are specifically exempted from [sic] the HAVA verification requirements… They do not have to provide PennDOT ID or last 4 of SSN… There's no systematic verification." Ex. B (House Committee Meetings, *Public Hearing on election administration considerations (in particular in advance of the 2022 General Election)*, at 59:10–1:00:14 (Sept. 14, 2022).[4]

131.   The Secretary or Deputy Secretary, or both, through the Department of State's Guidance on Military and Overseas Voters (Ex. E) includes the "Department's position" that UOCAVA applicants are exempt for ID requirements.

---

[4] This exhibit in the record is a video recording, available at
https://www.legis.state.pa.us/cfdocs/legis/CMS/ArchiveDetails.cfm?SessYear=2021
&MeetingId=2450&Code=-1&Chamber=H)



**pennsylvania**
DEPARTMENT OF STATE

Pennsylvania Military and Overseas Voters
Guidance

TLP:WHITE

**What are the voter ID requirements for covered voters?**
The Department's position is that covered voters are exempt from the Election Code's
ID requirements for absentee voters.

[https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2023-Pennsylvania-Military-Overseas-Voters-Guidance-2.1.pdf ]

132.   Essentially, the Defendants through directives and guidance to county election officials exempt UOCAVA applicants entirely from verification of identity and eligibility as required under state law and federal law.

133.   Defendants have illegally adopted a "position" that the voter registration requirements for verification of identity and eligibility in federal and state law can be waived by expanding HAVA's narrow exceptions to the additional mail ballot return identification requirements.

134.   If the Defendants' directive and guidance are based on the Defendants' position on or interpretation of state statutes, such as Pennsylvania's Uniform Military and Overseas Voters Act (UMOVA), 25 Pa.C.S. § 3501, et seq., then those state statutes, to the extent they conflict with the federal requirements for voter registration requirements for verification of identity and eligibility, are preempted by HAVA and UOCAVA.

135.   Furthermore, despite the almost obvious contradiction between federal

law mandates and the Secretary's issued directives and guidance, two Pennsylvania administrative complaints based on Pennsylvania's non-compliance with § 21083(a)(5)(A) have been rejected by Office of General Counsel. *Wood v. Pennsylvania Department of State*, Docket No. 2022-04, Report of the Office of General Counsel (Jan. 3, 2023) at 8 (Ex. C); *PA Fair Elections v. Pennsylvania Department of State,* Docket No. 2023-001 (appeal pending), Final Determination (No. 21, 2023) at 7 (Ex. D).

136.   In the appeal to the Commonwealth Court, case no. 1512 CD 2023, the Defendants have filed a response brief reiterating their position that UOCAVA applicants are exempt from HAVA's requirements for voter registration information verification. (Ex. F)

137.   But, the U.S. Department of Defense, FVAP.gov website, U.S. Department of Justice and the U.S. Election Assistance Commission have all confirmed that UOCAVA applicants are not exempt from voter registration application information verification requirements.

138.   The Federal Voting Assistance Program (FVAP), which is charged with overseeing UOCAVA for the Department of Defense, provides an electronic version of the FPCA. The website includes instructions for UOCAVA applicants to supply one or more forms of personal identification. If federal law created an exemption from voter registration information verification requirements for UOCAVA voters, the FPCA would not include fields for identification, nor would it include instructions for providing proof of identity or eligibility.

139.   The Defendants' directives and guidance to county election officials are to not attempt to verify the information provided on the FPCA and to not attempt to match information to an official government database--even if the applicant provided a DLN or SSN4 on the FPCA.

140.   The Secretary or Deputy Secretary, or both, instruct counties to send a UOCAVA applicant a ballot, including ballots for federal elections, without verifying identity or eligibility in violation of HAVA and in violation of UOCAVA.

141.   A 2014 brief filed by the U.S. Department of Justice on behalf of the U.S. Elections Assistance Commission (EAC), is accurately quoted as: stated:

> Arizona notes that after passage of Proposition 200, the Federal Voting Assistance Program ("FVAP") at the Department of Defense granted its request to add instructions regarding its proof-of-citizenship requirement to the Federal Post Card Application, a voter registration and absentee ballot application form for overseas citizens developed pursuant to the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 42 U.S.C. § 1973ff(b)(2). EAC001702, EAC0017S0-S1. However, the UOCAVA is a separate statute from the NVRA and contains no language similar to the NVRA's limitation that the Federal Form "may require only such identifying information ... as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process." 42 US.C. § 1973gg-7(b)(I). The FVAP's decision therefore has no bearing on the States' requests to the EAC.

https://www.justice.gov/sites/default/files/crt/legacy/2014/05/14/kobachmotions.pdf, p. 44 (last visited: Sep. 29, 2024).

142.   This comment, by the Department of Justice on behalf of the EAC, shows that there is NO federal exemption from ID requirements for UOCAVA applicants.

143.   In fact, the Department of Defense, Department of Justice and the EAC

have confirmed that a state can reject FPCAs that are not accompanied by documentary proof of US citizens if state law requires that DPOC to be "otherwise valid" in the state.

144.    There is no exemption to identification and eligibility verification requirements in UOCAVA and the Supremacy Clause and 52 U.S.C. § 21084 prohibit Defendants from issuing a directive that conflicts with federal law.

145.    Furthermore, other states comply with 52 U.S.C. § 21083(a)(5)(A) and its voter registration application information verification requirements.

146.  The Plaintiffs' understanding is that Pennsylvania's procedures for UOCAVA applicants in this regard contradict other state's procedures for compliance with federal law.

147.    Publicly available documents accessible on the internet, include the procedures for UOCAVA voters from the state of Ohio. Ex. H (Ohio 12-K Instructions for Uniformed Services or Overseas Voters).

148.    In addition to identification required on the FPCA, Ohio also instructs UOCAVA voters to complete their ballots, and fill out identification information envelopes, on which a UOCAVA voter must provide the last four digits of their social security number, their Ohio driver's license or state ID card number, or a copy of a different form of photo ID. *Id.*

149.    Georgia is another example of a state that has a procedure properly to verify identity of UOCAVA voters. Ex. I (Georgia Secretary of State UOCAVA Ballot Issuing/Mailing PowerPoint Training Presentation PDF).

150. The Georgia training guide explains how to verify identification information that may be provided on a UOCAVA application: "Best practice would be to start the search by DL number since this is a data point that must be verified anyway." *Id.*

151. UOCAVA applicants in Georgia whose identification information on the FPCA cannot be matched to an official government database are sent a provisional ballot with instructions for how to provide proof of identity and eligibility. *Id.*

152. Consistent with Georgia law and federal law, if the voter fails to provide the proof of identity and eligibility, their ballot will not be counted. *Id.*

153. Alaska requires non-military UOCAVA applicants to provide a copy of their US Passport (or similar Department of State document) with their UOCAVA voter registration application. See https://www.elections.alaska.gov/voter-information/military-overseas-and-college-voters/#seas (last visited: Sep. 29, 2024)

154. Minnesota's Secretary of State's website includes the HAVA ID requirements for UOCAVA applicants and training materials for local election officials and includes instructions for how to process non-matches. The SOS documents make it clear that the UOCAVA applicants must provide a US Passport, driver's license or state ID number or the last four digits of their social security number. "Pursuant to statutory requirements, the absentee record includes the following information: voter's name, voter's present or former address of residence in Minnesota, school district number, **passport number, Minnesota driver's license or state identification card**

**number, or the last four digits of the voter's social security number, category of UOCAVA voter**." Source: https://www.sos.state.mn.us/media/5058/absentee-voting-administration-guide.pdf (emphasis added).

155.   Additionally,  the Minnesota Secretary of State PowerPoint on UOCAVA Management lists the HAVA verification steps for UOCAVA applications:



Ex.  J  (Source:  https://www.sos.state.mn.us/media/4925/2-02-uocava-management-final.pptx, p. 4 (last visited: Sep. 29, 2024).

156.   In 2006, a federal district court in the State of Washington issued a preliminary injunction confirming HAVA requires voter registration information verification. *Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264 (W.D. Wash 2006).

The district court, held that the statute was likely to stand as an obstacle to HAVA and the statute was likely to stand as an obstacle to Voting Rights Act. Id. Afterwards, the court issued a permanent injunctive order, pursuant to stipulation of the parties, requiring, under HAVA, that Washington State not count any ballot from an applicant who has not provided documentation to confirm his or her identity and eligibility sufficient for the government to complete the verification process:

> (c)No [provisional] ballot cast pursuant to paragraph (1)(c) above shall be tabulated or regarded as containing valid votes for any office or measure until the Defendant receives information or the voter presents or submits documentation sufficient to register the voter as described in paragraph (1)(a) [driver license no. or social security number] or (1)(b) [alternate identification information] above.

Ex. K.

157.   Pennsylvania's guidance violates UOCAVA and does not meet HAVA's minimum standard.

158.   HAVA sets the minimum standard for states for verification of identity.

159.   The Plaintiffs' understanding is that the Supremacy Clause and 52 U.S.C. § 21084 bar Pennsylvania from making exceptions to this federal law because the Elections Clause makes state law regulating times, places and manner of federal elections subject to Congressional enactments.

160.   Therefore, Defendants may not create a directive that contradicts UOCAVA and HAVA which are both Congressional enactments.

161.   The Plaintiffs' understanding is that the HAVA minimum requirements apply to all voter registration applicants and states must first determine if an applicant is

otherwise eligible to receive UOCAVA voting privileges.

162. The Plaintiffs' understanding is that the only exemption granted to qualified UOCAVA applicants under HAVA, is from the requirement for first time voters who register by mail and vote by mail for the first time to include a photocopy of their ID with their absentee ballots. HAVA does not exempt UOCAVA applicants from requirements for verification of identity and eligibility for voter registration.

163. The EAC's official guidance on the requirements of HAVA, explains that states should not accept unverified registration applications.

> Make every effort to ensure that a voter registration application is not rejected as unverifiable until the State has given the individual an opportunity to correct the information at issue and attempted to validate the accuracy of the government information contained in its databases. **This does not mean that States should accept or add unverified registration applications to the statewide list**. Rather, it means only that election officials should make certain efforts before an application is determined to be unverifiable and finally rejected. The EAC recommends that in the event a State determines that the information provided in a registration application does not match the information contained in a verification database, States contact the individual in order to: (1) inform him or her of the disparity, (2) provide a meaningful opportunity for the applicant to respond or provide the correct information and (3) explain the consequences of failing to reply…

https://www.eac.gov/sites/default/files/eac_assets/1/1/Implementing%20Statewide %20Voter%20Registration%20Lists.pdf (emphasis added).

164. Notably, Pennsylvania law does not allow U.S. citizens who have never resided in the state to register and vote in the state.

165. The Plaintiffs' understanding is that eligible U.S. citizens who have previously resided in Pennsylvania and who could apply for UOCAVA privileges would

be required to have a valid driver's license, photo identification, a social security number or Passport. Identification is required to board an airplane, cross the border or otherwise travel abroad.

166. The Plaintiffs' understanding is that for limited number of eligible UOCAVA applicants who swear and affirm that they do not have a driver's license or state identification and whom have never been issued a social security number, HAVA requires them to provide other documentation to establish identity and eligibility prior to voting in a federal election.

167. The Plaintiffs' understanding is that despite the fact that most applicants who submit the FPCA do provide a driver's license or the last four digits of their social security number, Defendants, have instructed and continue to instruct Pennsylvania counties not to attempt to verify the information.

168. To be eligible under Pennsylvania law, applicants must "satisfy the voter eligibility requirements of the Commonwealth including residency requirements." 25 Pa.C.S. § 3502.

169. UOCAVA requires the states to first determine if the applicant is eligible.

170. The Plaintiffs' understanding is that in contradiction of UOCAVA and HAVA, Defendants instruct counties not to verify information provided on the FPCA and instruct counties not to determine if the applicant meets the eligibility requirement of prior Pennsylvania residence.

171. Nonetheless, the Department of State's Guidance on Military and

36

Overseas voters includes the "Department's position" that UOCAVA applicants are exempt for ID requirements.  Ex. E.

172.   As described in the US Department of Justice indictment, Iranian nationals, in efforts to interfere with U.S. elections, demonstrated that bad actors could easily create and submit falsified FPCAs in Pennsylvania's November 5, 2024, federal elections.  *See, e.g.,* https://www.justice.gov/opa/press-release/file/1449226/dl  (last visited Sept. 30, 2024) (Sealed indictment, *U.S. v. Seyed Mohammad Hosein Mousa Kazemi,* 21 Cr. 644).

## COUNT I

## UOCAVA and HAVA Preemption

173.   Plaintiffs hereby incorporate by reference the above paragraphs as if fully restated herein.

174.   The Supremacy Clause, Art. VI, cl. 2, is accurately quoted as follows:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

175.   The U.S. Supreme Court has recognized that the Supremacy Clause is not a source of federal rights or confer a cause of action. The Court also recognized that the Supremacy Clause instructs what courts should do when state and federal laws clash, but is silent as to who may enforce federal laws in court, and in what circumstance they may do so. In this regard, the Court has noted that federal district courts may issue injunctive

relief upon finding state regulatory actions are preempted.

176.   The Plaintiffs' understanding is that, unlike non-election cases, under the Elections Clause, Supremacy Clause preemption is presumed when Congress enacts laws regulating the times, places and manner of federal elections.

177.   Moreover, HAVA, 52 U.S.C. § 21084, has a preemption provision creating minimum federal legal standards and preempting inconsistent state laws:

> §21084. Minimum requirements
> The requirements established by this subchapter are minimum requirements and nothing in this subchapter shall be construed to prevent a State from establishing election technology and administration requirements that are more strict than the requirements established under this subchapter so long as such State requirements are not inconsistent with the Federal requirements under this subchapter or any law described in section 21145 of this title.

178.   Defendants have implemented an illegal election structure regarding military and overseas voting that the Plaintiff-Congressional candidates and UOCAVA voters are forced to participate in.

179.   Defendants have implemented an illegal election structure that creates vulnerabilities and the opportunity for ineligible ballots to dilute valid ballots from military service members.

180.   Votes tallied in the Pennsylvania illegal election structure undermine the credibility of the election for federal office.

181.   The Plaintiffs as candidates either gain or lose by the forced participation in the state's illegal election activities.

182.   The Plaintiffs as candidates are participating in the upcoming November

5, 2024, general election for federal office.

183.   The candidates' forced participation in the illegal election structure regarding absentee voters and the tally of those votes, may not accurately reflect the legally valid votes cast.

184.   An inaccurate vote tally is a concrete and particularized injury to the plaintiff candidates.

185.   Also, UOCAVA voters who are members of PA Fair Elections members, are injured by Defendants' directives and guidance invalidating their and others' UOCAVA votes by failing to verify voter registration information prior to counting UOCAVA ballots which is required by federal law.

186.   The Defendants' legal violations cause candidates' forced participation in an illegal election structure regarding absentee voters and the tally of those votes, may not accurately reflect the legally valid votes cast.

187.   Defendants' guidance or directives, or both, to county election officials not to attempt to verify the identity of UOCAVA applicants who seek to vote and actually cast a ballot, as required by federal law under HAVA and UOCAVA (as previously described and as incorporated for Count I), are ongoing and continuing acts and, hence, are an impending and continuing injury as the illegal election structure departs from federal legal mandates.

188.   There is a causal connection between the challenged conduct of the Secretary's or the Deputy Secretary's, or both's, policy and guidance and the asserted

injury.

189.   To verify identity and eligibility, HAVA establishes the minimum standards. 52 U.S.C. § 21083(a)(5)(A)(i-iii)(verification of voter registration information).

190.   Applicants who seek to vote in a federal election must provide at the time of registration, a valid driver's license number. *Id.*

191.   If the individual has not been issued a driver's license, they may use the last four digits of their social security number (or if they have neither, the State shall assign them a unique identifying number and verify their identity and eligibility using other HAVA approved documents). *Id.*

192.   The Plaintiffs' understanding is that in direct conflict to federal law (UOCAVA and HAVA), and in conflict with Pennsylvania law (25 Pa. Stat. §§3501, 3515) Defendants have issued directives to county officials to exempt UOCAVA applicants entirely from any attempt to verify identity or eligibility.

193.   Under the U.S. Constitution's Supremacy Clause, and HAVA, 52 U.S.C. § 21084, preemption occurs when a state action conflicts with a federal law and when it is impossible to comply with both state action and federal law.

194.   The Plaintiffs' understanding is that because the Defendants' statewide directive conflicts with federal law, the Defendants' statewide directive is preempted by federal law because it is impossible to comply with both the state Directives and guidance and federal law.

195.   Notably, the Defendants have not specified or referenced any particular

law they rely on for their "position" or directives and guidance.

196.   If the Defendants' Directives and guidance are based on the Defendants' position on or interpretation of state statutes, such as Pennsylvania's Uniform Military and Overseas Voters Act (UMOVA), 25 Pa.C.S. § 3501, et seq., then those state statutes, to the extent they conflict with the federal requirements for voter registration requirements for verification of identity and eligibility, are preempted by HAVA and UOCAVA.

197.   Injunctive relief will redress the injury because the former will mitigate the latter.

198.   The Secretary or Deputy Secretary, or both, are responsible for enforcement of Commonwealth of Pennsylvania laws governing all state elections, including federal elections.

199.   The Defendants circumvent state and federal law through directives or guidance or both which are preempted by the federal law.

200.   The Defendants' guidance or directives, or both, directing the counties to accept and process applications without first determining if the applications are "otherwise valid" is preempted by federal law.

201.   Plaintiffs seek prospective declaratory and injunctive relief against the Defendants.

## PRAYER FOR RELIEF

For the reasons stated in this complaint, the Plaintiffs request that this Court

grant the following relief:

1. Enter a declaratory judgment that the directives and guidance issued by the Defendants through the Pennsylvania Department of State by the Defendants and any underlying supporting state law purportedly superseding UOCAVA and HAVA's voter registration requirements for verification of the identity and eligibility of Pennsylvania UOCAVA applicants, are preempted by federal law;

2. Issue an order granting injunctive relief enjoining Defendants Schmidt and Marks from any further actions funding, supporting, or facilitating the directives and guidance based on them being preempted by federal law;

3. Issue an order for injunction instructing Defendants to provide directions to county election officials on the legally mandated procedures to comply with federal and state law in upcoming elections by requiring verification of the identity and eligibility of UOCAVA applicants, including state residency requirements, prior to accepting and counting the UOCAVA ballots;

4. Issue an order for injunction requiring county election officials to segregate UOCAVA ballots returned for the 2024 election until the identity and eligibility of the applicant can be verified as required under HAVA and state law; and

5. Grant such other and further relief as is just and appropriate.

Respectfully submitted,

Dated: October 7, 2024

/s/ Erick G. Kaardal
Erick G. Kaardal (WI No. 1035141)
Elizabeth A. Nielsen (PA No. 335131)*
**Mohrman, Kaardal & Erickson, PA**
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
kaardal@mklaw.com
nielsen@mklaw.com
*Attorneys for Plaintiffs*
*Petition and Application for Admission
Pending

/s/ Karen DiSalvo
Karen DiSalvo (PA No. 80309)
**Election Research Institute**
Mohrman, Kaardal & Erickson
1451 Quentin Road, Suite 232
Lebanon, PA 17042
kd@election-institute.com
*Attorney for Plaintiffs*