# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

---

## No. 1512 CD 2023

---

### PA FAIR ELECTIONS and HEATHER HONEY,
#### Petitioners

#### v.

### PENNSYLVANIA DEPARTMENT OF STATE,
#### Respondent

---

## BRIEF FOR RESPONDENT

---

Appeal from the Final Determination of the Office of General Counsel dated
November 21, 2023, No. 2023-001

Kathleen A. Mullen (ID No. 84604)
Ian B. Everhart (ID No. 318947)
Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

*On behalf of Respondent Pennsylvania
Department of State*

Date Filed: June 28, 2024

Exhibit F

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES ....................................................... ii

INTRODUCTION .......................................................................1

COUNTER-STATEMENT OF JURISDICTION ..................................3

COUNTER-STATEMENT OF SCOPE AND STANDARD OF REVIEW ...........4

COUNTER-STATEMENT OF QUESTIONS INVOLVED ....................................5

COUNTER-STATEMENT OF THE CASE ............................................6

SUMMARY OF ARGUMENT .......................................................10

ARGUMENT ...........................................................................12

I.      Statutory Background. ....................................................12

    A.      Help America Vote Act of 2002 ..............................12

        1.      Computerized Registration List Requirement of Section 303(a). ........12

        2.      Identification requirement for certain voters who register by mail of Section 303(b). .....................................................16

    B.      Uniformed and Overseas Citizens Absentee Voting Act. .......................16

    C.      Pennsylvania Law ..............................................17

II.     Dismissal of Petitioners' Complaint Is Fully Supported Because Petitioners Failed to Show Any Violation of HAVA. ..................................20

    A.      HAVA does not condition approval of a registration application on "matching" an ID number provided therein. ..............................20

    B.      The Department's practices are consistent with HAVA and other laws..25

III.    The Office of General Counsel's Final Determination Properly Applies the Law and Should Be Affirmed.........................................................28

CONCLUSION ........................................................................32

CERTIFICATION ....................................................................33

i

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013)...............................................................21

*Balshy v. Pa. State Police*,
  988 A.2d 813 (Pa. Commw. Ct. 2010) ....................................4

*Brakebill v. Jaeger*,
  905 F.3d 553 (8th Cir. 2018) ...............................................14

*Dunn v. Blumstein*,
  405 U.S. 330 (1972)...........................................................18

*In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*,
  241 A.3d 1058 (Pa. 2020) ...................................................22

*In re Hickson*,
  821 A.2d 1238 (Pa. 2003)......................................................6

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..............................................................6

*Mixon v. Commw.*,
  759 A.2d 442 (Pa. Commw. Ct. 2000) ..................................18

*Rosebud Sioux Tribe v. Barnett*,
  604 F. Supp. 3d 827 (D.S.D. 2022) ................................. 22, 23

*Van Osdol v. Dep't of Transp.*,
  909 A.2d 428 (Pa. Commw. Ct. 2006) ....................................4

*Wash. Ass'n of Churches v. Reed*,
  492 F. Supp. 2d 1264 (W.D. Wash. 2006) .............................22

Exhibit F

CONSTITUTIONAL PROVISIONS

Pa. Const. art. VII, § 1..........................................................................................................18

U.S. Const. amend. XXVI, § 1 ...........................................................................................18

STATUTES

25 P.S. § 2602 .....................................................................................................................19

25 P.S. § 3046.2 ...................................................................................................... 3, 6, 7, 10

25 P.S. § 3146.2 ...................................................................................................................19

25 P.S. § 3146.2b .................................................................................................................19

25 P.S. § 3146.5 .............................................................................................................. 19, 27

25 P.S. § 3146.8 ........................................................................................................ 19, 26, 27

25 P.S. § 3150.12b ...............................................................................................................19

25 P.S. § 3150.15 .................................................................................................................19

25 Pa. Cons. Stat. § 1222 .....................................................................................................13

25 Pa. Cons. Stat. § 1301 .....................................................................................................18

25 Pa. Cons. Stat. § 1328 ................................................................................................ 17, 18

42 Pa. Cons. Stat. § 704 .........................................................................................................4

42 Pa. Cons. Stat. § 763 .........................................................................................................3

52 U.S.C. § 20302 ...............................................................................................................17

52 U.S.C. § 20303 ...............................................................................................................16

52 U.S.C. § 20981 ...............................................................................................................12

52 U.S.C. § 21083 .......................................................................................................... *passim*

52 U.S.C. § 21112 ........................................................................6

52 U.S.C. Ch. 203 ......................................................................24

52 U.S.C. Ch. 209 ........................................................................6

Help America Vote Act of 2002,
   52 U.S.C. §§ 21081–21102 ....................................................6

N.D. Cent. Code § 40-21-10 .....................................................14

<u>RULES</u>

Pa. R.A.P. 1551 ...........................................................................3

Pa. R.A.P. 2119 .........................................................................25

Pa. R.A.P. 2135 .........................................................................33

Pa. R.A.P. 2154 ...........................................................................9

Pa. R.A.P. 2188 .........................................................................12

Pa. R.A.P. 702 .............................................................................3

<u>OTHER AUTHORITIES</u>

Op. Pa. Att'y Gen. No. 1972-121 (May 5, 1972) .....................18

Exhibit F

## **INTRODUCTION**

Petitioners PA Fair Elections and Heather Honey do not like the fact that both Congress and the Pennsylvania General Assembly decided to treat absentee military and overseas voters covered by UOCAVA differently than other voters for purposes of verification of identification prior to elections. Based on Petitioners' apparent dissatisfaction at the Pennsylvania Department of State for following the requisites of federal and state law, Petitioners submitted an administrative complaint pursuant to HAVA claiming that the Department of State violates HAVA through its 2018 Directive, which was specifically issued to ensure that counties comply with HAVA.

HAVA requires that all individuals who register to vote supply an identification number, either the last four digits of the individual's Social Security number or a driver's license number to be matched against existing government databases and assist states in creating a database of registered voters with a unique identifier. But HAVA makes clear that matching these numbers is not a prerequisite for registration and that state law determines the sufficiency of a voter's registration application. And HAVA has a "Special rule" requiring states to assign a unique number for registration purposes for those applicants who lack both a Social Security and driver's license number. The Department's Directive simply echoes these HAVA provisions, stating that county registration commissions cannot deny a voter registration application solely because of a nonmatch. Different HAVA provisions

Exhibit F

and provisions of the Pennsylvania Election Code provide proof of identification requirements for absentee voters so that identity verification takes place before an absentee voter's ballot is counted. However, both HAVA and the Pennsylvania Election Code specifically exempt UOCAVA voters from this requirement. Petitioners claim this creates a "loophole" for which the Department is to blame. In so doing, they mischaracterize the Directive and ignore the clear language of HAVA, UOCAVA and the Pennsylvania Election Code.

As OGC correctly concluded, Petitioners have failed to show any violation of HAVA. Yet Petitioners now ask this Court to find that the Department has somehow violated HAVA by issuing a directive—the sole purpose of which is to ensure that county registration commissions comply with HAVA—and seek an Order that would require the Department to direct counties to violate the Pennsylvania Election Code by ignoring the special protections the General Assembly has seen fit to provide to UOCAVA voters. Petitioners unsurprisingly provide no legal authority or record evidence to support this request. The final determination of OGC should be affirmed.

Exhibit F

## <u>COUNTER-STATEMENT OF JURISDICTION</u>

Judicial review of proceedings under 25 P.S. § 3046.2 are "agency determination[s] subject to appellate review pursuant to 42 Pa.C.S. § 763." Accordingly, this Court has "exclusive jurisdiction" of this appeal. 42 Pa. Cons. Stat. § 763(a); *see also* Pa. R.A.P. 702(a) and 1551.

3

## **COUNTER-STATEMENT OF SCOPE AND STANDARD OF REVIEW**

In the absence of "a specific scope of review from the General Assembly," the Court applies "the standard one for an appeal from an administrative agency:" whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence. *Van Osdol v. Dep't of Transp.*, 909 A.2d 428, 430 n.3 (Pa. Commw. Ct. 2006) (citing 42 Pa. Cons. Stat. § 704).

The Court's standard of review requires affirmation of the order under appeal, "unless it shall find the adjudication is in violation of the constitutional rights of the appellants, or is not in accordance with law, or the statutory provisions controlling practice and procedure of Commonwealth agencies have been violated in the proceedings before the agency, or any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." *Balshy v. Pa. State Police*, 988 A.2d 813, 825 (Pa. Commw. Ct. 2010) (citing 42 Pa. Cons. Stat. § 704).

Exhibit F

## <u>COUNTER-STATEMENT OF QUESTIONS INVOLVED</u>

I.    Whether the Office of General Counsel's dismissal of Petitioner's HAVA Complaint was correct as a matter of law and supported by substantial evidence?

*Agency Answer: Not answered by OGC.*

*Suggested Answer: Yes.*

II.    Whether the Office of General Counsel properly determined that the Department's Directive is consistent with HAVA.

*Agency Answer: Yes.*

*Suggested Answer: Yes.*

Exhibit F

## **COUNTER-STATEMENT OF THE CASE**

This proceeding comes before the Court on the Petition for Review of the Final Determination of the Governor's Office of General Counsel ("OGC") concluding that the Pennsylvania Department of State ("Department") has not violated Title III of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. §§ 21081–21102. (Section 303 of HAVA is codified at 52 U.S.C. § 21083. This brief uses the two citation formats interchangeably.)

HAVA requires states receiving certain federal grants to set up an administrative complaint procedure for those who believe they are aggrieved by a violation of Title III of HAVA. 52 U.S.C. § 21112(a)(2)(B). On August 23, 2023, Petitioners PA Fair Elections and Heather Honey ("Petitioners") submitted a Complaint to the Department pursuant to Section 1206.2 of the Pennsylvania Election Code, 25 P.S. § 3046.2, which establishes Pennsylvania's HAVA administrative complaint process.

PA Fair Elections describes itself as an unincorporated "association of Pennsylvania citizens concerned with the fairness and integrity of elections in Pennsylvania." Heather Honey is its "founding member." R.336a.[1] Petitioners'

---

[1] Neither PA Fair Elections nor Honey have made any allegations of injury that would support ordinary standing pursuant to Pennsylvania law or Article III standing under federal law. *See generally In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003) ("[I]t is not sufficient for the person claiming to be 'aggrieved' to assert the common interest of all citizens in procuring obedience to the law."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 575–76 (1992) (holding generalized grievance insufficient to establish standing).

Exhibit F

Complaint alleged that the Department violates Title III of HAVA by failing to require that voters covered under the Uniformed and Overseas Citizens Absentee Voting Act of 1986, 52 U.S.C. § 20301–20311 ("UOCOVA") provide identification when registering to vote. R.5a–6a. Specifically, Petitioners cited to Section 303(a)(5) of HAVA which requires applicants for voter registration to provide either a driver's license number ("DLN")[2] or the last four digits on their Social Security number ("SSN4," together with DLN, "ID number"), which a state can then match against existing databases. If a voter has neither, HAVA requires a state to assign the applicant a number which will serve to identify them for voter registration purposes. Petitioners claimed that the Department's Directive Concerning HAVA — Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications ("Directive") issued in 2018 violates HAVA. R.5a–6a (citing R.23a–27a).

Because the Complaint alleged a HAVA violation against the Department, the Department forwarded it to OGC for adjudication pursuant to 25 P.S. § 3046.2(c)(2) on August 28, 2023. R.335a.

The Department submitted a Response on September 12, 2023, explaining that the plain language of HAVA does not require states to match prospective voters to an existing identification number as a prerequisite to voter registration and that

---

[2] In referring to driver's licenses and DLN herein, the Department means to include non-driver identification cards issued by the Pennsylvania Department of Transportation, as well as licenses to operate motor vehicles.

Exhibit F

HAVA explicitly excludes UOCAVA voters from the identification requirements it otherwise establishes as a prerequisite to voting for voters who register by mail. R.39a–48a. Further, the Department explained that the Directive, which simply advises county voter registration commissions that voter registrations cannot be rejected for the *sole* reason of a non-match between the applicant's identifying numbers on their application and the comparison database numbers, was fully consistent with HAVA.

The parties submitted pre-hearing memoranda of law on November 3, 2023. At Petitioners' request, OGC convened an informal hearing before Hearing Examiner Stephen R. Kovatis on November 6, 2023. On November 21, 2023, OGC issued its Final Determination and Order, finding that Petitioners failed to show that the Department committed any violation of HAVA and dismissing the Complaint. R.333a–345a. Specifically, OGC concluded that the Directive was fully consistent with and did not violate HAVA. OGC further found that HAVA's identification requirements for voters who register by mail specifically excluded UOCAVA voters. Accordingly, OGC dismissed the Complaint.

This appeal followed, based on the Petition for Review filed by Petitioners on December 21, 2023.

This Court set a briefing schedule on April 19, 2024; Petitioners' brief was due on or before May 29, 2024 (with the designation of record due April 29, 2024

Exhibit F

(being 30 days prior to the deadline for the brief, pursuant to Pa. R.A.P. 2154)). Petitioners filed the Designation of Record untimely on May 20, 2024. Petitioners' Reproduced Record was filed timely on May 29, 2024, but their Brief was filed untimely on June 4, 2024.

Exhibit F

## SUMMARY OF ARGUMENT

The OGC's decision is fully correct as a matter of law and supported by substantial evidence. It should be affirmed. The only question at issue in this narrow review concerning a HAVA administrative proceeding pursuant to Section 1206.2 of the Election Code is whether OGC's determination that the Department through its Directive did not (and does not) violate any provision of Title III of HAVA. It is clear the Department has not. As the record shows, the Directive is fully consistent with HAVA.

HAVA requires that voter registration applicants provide either their DLN or SSN4 for purposes of matching that number against the database maintained by the state motor vehicle authority to verify the accuracy of that information for the purpose of assigning a unique identifier to each registrant to create a computerized list of registered voters. The plain language of HAVA makes clear that matching these numbers with existing database numbers is not a prerequisite for registration— HAVA actually has a "Special rule" requiring states to assign a unique number for registration purposes for those applicants who lack both a DLN and SSN4. Further, HAVA makes clear that state law determines the sufficiency of a voter's registration application. The Directive, consistent with HAVA, simply states that county registration commissions cannot reject a voter registration application for the sole

10

reason that an applicant's numbers on their application do not match comparison database numbers. The Directive applies to all voter registration applications.

Further, the Department's practices with respect to UOCAVA voters are fully consistent with both HAVA, UOCAVA and the Pennsylvania Election Code. HAVA and the Election Code exempt UOCAVA voters from certain identification requirements that apply to other voters as a prerequisite to having their vote count. Petitioners' dissatisfaction with this fact does not create a violation of HAVA. Accordingly, the OGC's determination that the Department did not violate HAVA and dismissing the Complaint should be affirmed.

Exhibit F

**ARGUMENT**[3]

**I.      Statutory Background.**

Based on the number of statutes at play, a brief summary of those statutes as they apply to the issues raised here is helpful.

**A. Help America Vote Act of 2002.**

HAVA was enacted in the wake of the 2000 Presidential Election to ensure eligible voters would not be disenfranchised, and that voting and election administration systems "will be nondiscriminatory and afford each eligible and registered voter an equal opportunity to vote and have that vote counted." 52 U.S.C. § 20981. Title III of HAVA, codified as Subchapter III and consisting of 52 U.S.C. §§ 21081–21102, created new mandatory minimum standards for states in several key areas of election administration, including as pertinent to the issues here: requirements for a computerized statewide voter registration system and requirements for voters who register by mail. *Id.*

**1.   Computerized Registration List Requirement of Section 303(a).**

Specifically, HAVA requires that states develop "a single, uniform, official, centralized, interactive computerized statewide voter registration list" that assigns a

---

[3] As a starting point, the untimeliness of Petitioners' filings warrant dismissal independent of the merits. Because Petitioners' designation of record and brief were filed untimely, this matter should be dismissed pursuant to Pa. R.A.P. 2188.

12

Exhibit F

unique identifier to every registered voter. 52 U.S.C. § 21083(a)(1)(A).[4] To that end, all registration applicants who possess either a driver's license or Social Security Number must provide the DLN or SSN4. States are required to enter an agreement with their respective motor vehicle authority (i.e., the Pennsylvania Department of Transportation; "PennDOT"), which in turn must enter an agreement with the Commissioner of Social Security for the matching of information in the statewide voter registration system with information in the PennDOT database in order to enable the verification of information on voter registration applications. 52 U.S.C. § 21083(a)(5)(B).

Significantly however, a match of an ID number is not a prerequisite for registration under HAVA. This is evident by the clear language of HAVA itself. Specifically, HAVA provides a "Special rule for applicants without driver's license or social security number" ("Special Rule") for those registration applicants who lack both a DLN and an SSN4. For those applicants, HAVA requires that "the State *shall* assign the applicant a number which will serve to identify the applicant for voter registration purposes." 52 U.S.C. § 21083(a)(5)(A)(ii).

Moreover, the clear language of Section 303(a)(5)(A)(iii) of HAVA mandates that state law governs whether the information provided by an individual is sufficient

---

[4] Pennsylvania met this obligation by creating the Statewide Uniform Registry of Electors (the "SURE System" or "SURE"). 25 Pa. Cons. Stat. § 1222(a).

Exhibit F

to meet whatever registration requirements are provided under state law. 52 U.S.C. § 21083(a)(5)(A)(iii) ("The State shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law.").

State law voter registration requirements vary widely.[5] And nothing in HAVA was meant to supplant this. The plain language of the Section 303(a)(5), in addition to its legislative history makes this clear. As Senator Dodd emphasized: "With respect to the provisions of section 303(a)(5) which require verification of voter registration information, it is important to remember that nothing in this conference report establishes a Federal definition, or standard, for when a voter is duly registered. That authority continues to reside solely with State and local election officials pursuant to State law." R.298a.

Echoing the text of the Special Rule, Senator Dodd further noted that if an applicant has neither a DLN nor an SSN4, the State shall issue the individual a number which becomes the voter's unique identifier (as required for the centralized computerized registration list). R.298a. While the chief state election officer is

---

[5] As of this writing, twenty-two states and the District of Columbia provide for same-day registration. Nat'l Conf. of State Legs., Same-Day Voter Registration (Oct. 31, 2023), https://www.ncsl.org/elections-and-campaigns/same-day-voter-registration, site visited June 25, 2024. One state, North Dakota, has no state-wide voter registration requirement. *Brakebill v. Jaeger*, 905 F.3d 553, 556 (8th Cir. 2018) ("North Dakota has no voter registration requirement . . . ."); N.D. Cent. Code § 40-21-10 (providing for optional registration for voters within municipalities).

Exhibit F

required to enter into agreements to match information supplied by the voter with motor vehicle or Social Security databases, "nothing in this section prohibits a State from accepting or processing an application with incomplete or inaccurate information. . . . The provision requires only that a verification process be established but it does not define when an applicant is a duly registered voter." R.298–299a. As stated, that language is made clear by HAVA, which mandates that "State law" must determine whether the information provided by an applicant is sufficient for registration purposes pursuant to state law. 52 U.S.C. § 21083(a)(5)(A)(iii).

The legislative history also makes it clear that the purpose of matching a registrant's ID numbers was to ensure that voters with the same name or birth date are distinguished as required for the centralized list. R.284a ("It is likely that states will find it necessary to create a unique identifier to distinguish registered voters who happen to have the same name and/or birth date. The unique identifier so created will be used to assure that list maintenance functions are attributable to the correct voter; to avoid removing registrants who happen to have the same name and birth date as a felon, for example.").

Exhibit F

## 2. Identification requirement for certain voters who register by mail of Section 303(b).

Certain voters who register by mail are subject to mandatory identification requirements imposed by HAVA if they have "not previously voted in an election for Federal office in the State" (*i.e.*, are first-time voters in the state, or had previously only voted in an election for state or local office). 52 U.S.C. § 21083(b)(1)(B). Voters can meet HAVA's first-time voter identification requirements by providing their ID number which matches with an existing state identification record or by showing a photo or non-photo identification. 52 U.S.C. § 21083(b)(2)(A)(i), (b)(3)(A), (b)(3)(B).

Significantly, though, HAVA exempts UOCAVA voters from the requirement to provide photo or non-photo ID at the time of voting a mail ballot, regardless of whether those voters provided ID numbers during registration. 52 U.S.C. § 21083(b)(2)(C)(i).

### B. Uniformed and Overseas Citizens Absentee Voting Act.

Congress enacted UOCAVA to ensure that active-duty military members, as well as other categories of U.S. citizens living overseas, are entitled to vote in elections for federal offices by absentee ballot. The definitions adopted by Congress apply UOCAVA to "absent uniformed services voters" and "overseas voters." 52 U.S.C. § 20303. These groups include U.S. citizens who "reside[] outside the United

16

States" and active-duty members of the military ("UOCAVA voters"). 52 U.S.C. § 20310.

The U.S. Department of Defense has developed "an official post card form, containing both an absentee voter registration application and an absentee ballot application," known as the Federal Post Card Application ("FPCA"), pursuant to 52 U.S.C. § 20301(b)(2). The states are required to accept the FPCA "for simultaneous voter registration application and absentee ballot application." 52 U.S.C. § 20302(a)(4). The FPCA contains a space for the applicant's DLN or SSN4. R.73a–81a. The Pennsylvania-specific instructions, developed by the Department to accompany the FPCA, require that applicants "must provide your Pennsylvania-issued ID number or the last four digits of your Social Security Number;" for an applicant without either of these numbers, the applicant is advised to write "I do not have a Social Security Number or Pennsylvania-issued ID number." R.76a.

**C. Pennsylvania Law.**

Pursuant to Section 1328 of the voter registration law, it is county voter registration commissions that receive voter registration applications, examine whether a prospective voter possesses the qualifications to vote, and depending upon the result of that examination, accepts them, rejects them, or otherwise disposes of them. 25 Pa. Cons. Stat. § 1328. The Pennsylvania voter registration law prescribes just four qualifications to register to vote: age, citizenship, residence, and

incarceration status. 25 Pa. Cons. Stat. § 1301(a), *accord* Pa. Const. art. VII, § 1.[6] The voter registration law further offers just four grounds to reject a voter registration application: an incomplete application, non-qualification, non-entitlement to a transfer or address change, and non-entitlement to a name change. 25 Pa. Cons. Stat. § 1328(b)(2). "Failure to match ID number" is not among the bases offered in Pennsylvania law to reject a voter registration application. In other words, there is no matching prerequisite for a voter to register under Pennsylvania law.

Consistent with the voter registration law and with HAVA, the Department issued the Directive. R.23a, 84a, 265a. The Directive simply advises counties that they cannot reject a voter registration application solely on the basis of a non-match of an ID number. The Directive does not make any distinctions with respect to UOCAVA voters, nor even mentions them.

---

[6] The text of Section 1301 purports to disqualify from registration anyone who has been incarcerated for a felony within the past five years, but that five-year exclusion was declared unconstitutional and is not in force. *Mixon v. Commw.*, 759 A.2d 442, 451 (Pa. Commw. Ct. 2000) (holding that individuals with felony convictions not currently incarcerated may register to vote), *aff'd* 783 A.2d 763, 763 (Pa. 2001).

The text of Article VII, § 1, grants the right to vote to twenty-one-year-olds resident in Pennsylvania at least 90 days and resident in the voting district for 60 days before the election. The franchise is broadened to include eighteen-year-olds and those resident in their voting district only 30 days as a result of federal law. U.S. Const. amend. XXVI, § 1 (eighteen-year-olds entitled to vote); Op. Pa. Att'y Gen. No. 1972-121 (May 5, 1972) (concluding that *Dunn v. Blumstein*, 405 U.S. 330, 348–49 (1972), prohibits the enforcement of certain durational residency requirements longer than 30 days).

Exhibit F

When it comes to identification requisites in order to have one's vote for a particular election counted, the Election Code contains strict requirements going beyond HAVA's requirements for first-time voters who register by mail contained in Section 303(b). Pennsylvania mandates that absentee and mail-in voters provide proof of identification for every election; otherwise their vote will not count. 25 P.S. §§ 3146.2(e.2), 3146.2b(d), 3146.5(b)(1), 3146.8(h)(2), 3150.12b(c), 3150.15 (requiring proof of identification for absentee and mail-in voters in order for ballot to be counted). Proof of identification can be provided through, *inter alia*, a match of a voter's SSN4 or DLN. 25 P.S. § 2602(z.5)(3). Absentee or mail-in voters who fail to provide matching numbers must provide other proof of identification to their county board of elections within six days following an election or their ballot will not count for that election. 25 P.S. § 3146.8(h).

Crucially however, the General Assembly saw fit to carve out an exception to these identification requirements for certain types of voters, including UOCAVA voters. For instance, Section 1308(i) of the Election Code which governs the canvassing of absentee and mail-in ballots and provides identification requirements, states: "Notwithstanding the provisions of this section, a qualified absentee elector shall not be required to provide proof of identification if the elector is entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act. . . ." 25 P.S. § 3146.8(i).

19

Exhibit F

**II.    Dismissal of Petitioners' Complaint Is Fully Supported Because Petitioners Failed to Show Any Violation of HAVA.**

**A. HAVA does not condition approval of a registration application on "matching" an ID number provided therein.**

The plain language of HAVA precludes a state from rejecting a voter registration application for a non-match of an ID number. Indeed, one would have to ignore the Special Rule in Section 303(a)(5)(A)(ii) to read HAVA as Petitioners do. 52 U.S.C. § 21083(a)(5)(A)(ii). Petitioners also ignore Section 303(a)(5)(A)(iii), which explicitly empowers the states to determine whether an individual has provided sufficient information for registration pursuant to state law. 52 U.S.C. § 21083(a)(5)(A)(iii).

Petitioners have not and cannot cite any authority to show how the Directive, which simply directs counties not to reject a voter application for the sole reason of a non-match pursuant to the Special Rule in HAVA, could violate HAVA. Instead, Petitioners' attempt to confuse matters by repeatedly mischaracterizing the Directive. Pet'rs' Br. at 12. They claim that "Pennsylvania directs local election officials not to attempt to verify UOCAVA voters." *Id.* Yet, by its terms, the Directive does not direct county voter registration commissions not to attempt to verify the identity of any voter registration applicants, including UOCAVA voters. R.23a; *contra* Pet'rs' Br. at 12, 15, 16, 17, 20. And the Pennsylvania-specific

20

instructions that accompany the FPCA require UOCAVA applicants to provide their ID number—or if they have neither a DLN or SSN4, to so state. R.73a–81a.

Petitioners cite to the Supremacy Clause seemingly to claim that the Directive is somehow preempted by HAVA. Pet'rs' Br. at 18–19. This argument is a *non sequitur*. As the Supreme Court has recognized, "[b]ecause the power the Elections Clause confers is none other than the power to preempt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013). It is solely the text that controls whether a statutory provision enacted by Congress under the Elections Clause preempts a state requirement. *Id.* The text of both Section 303 and the Directive reveal no conflict so there can be no question of preemption. And Petitioners do not even attempt to identify any. The Directive was issued specifically so that county registration commissions would comply with HAVA's Special Rule.

The holdings of federal courts which have confronted this issue completely contradict Petitioners' contention that "HAVA requires election officials to determine the validity of numbers provided by applicants *before* they become voters." Pet'rs' Br. at 17 (emphasis in original).[7] The language of both the Special Rule in Section 303(a)(5)(A)(ii) and HAVA's direction in Section 303(a)(5)(A)(iii)

---

[7] Notably, Petitioners' only referenced support for that argument is their own Complaint.

Exhibit F

that the State shall determine the sufficiency of the information provided for registration in accordance with state law make clear that the matching requirement is not a prerequisite for registration.

Significantly, where states have attempted to mandate a matching process as a prerequisite to registration as Petitioners seek here, courts have found such requirements to be in violation of HAVA. *See Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1268–69, 1270 (W.D. Wash. 2006)*cited with approval in In re Canvass of Absentee & Mail-in Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1075 (Pa. 2020). *See also Rosebud Sioux Tribe v. Barnett*, 604 F. Supp. 3d 827, 834–35 (D.S.D. 2022).

In *Reed*, plaintiffs sought to enjoin a Washington State statute which essentially required that the state match a potential voter's name to either the Social Security Administration's database or that of the state Department of Licensing before the applicant could be registered to vote. *Id.* at 1266. The *Reed* court found that such a matching requirement "directly conflicts with HAVA" and was therefore preempted. *Id.* at 1269. Citing to both the plain language of Section 21083 and legislative history, the *Reed* court concluded that "it is the assignment of some kind of unique identifying number to the voter that is the requirement, not the 'match.'"

Exhibit F

*Id.* at 1269–70.[8] Similarly, a federal court in South Dakota recently concluded that denying registration when an applicant lacked a driver's license or Social Security number and requiring the submission of an affidavit in front of the County Auditor as a prerequisite for registration conflicts with HAVA. *Rosebud*, 604 F. Supp. 3d at 834–35.

Contrary to Petitioners' contentions, HAVA itself does not have one all-purpose "verification" protocol; rather, it prescribes specific and discrete procedures to be followed at different phases of the election process, contained in two different subsections: Section 21083(a) (concerning computerized registration list) and Section 21083(b) (concerning submission of identification prior to voting for those who register by mail). Petitioners improperly conflate these two sections into a single purported verification rule, but their claim falls apart when one examines the clear language of subsections (a) and (b).

As stated above, the purpose of Section 21083(a), as its title reflects, is to aid in establishing a computerized statewide voter registration list that will uniquely

---

[8] Petitioners' attempt to distinguish *Reed* simply highlights one of the major analytical flaws in their argument. They note that the final order in *Reed* made clear that the Court was not requiring the counting of ballots cast by voters whose SSN4 or DLN are not matched and who do not provide alternative identification. *See* Pet'rs' Br. at 27–28. That in no way conflicts with the Directive which deals only with initial matching for registration purposes, not identification verification for absentee and mail in voters. As for identity requirements for voters who register by mail, HAVA specifically exempts UOCAVA voters. And Pennsylvania law, which provides stricter identity verification requirements for absentee and mail-in voters, does as well.

Exhibit F

identify all registrants—so as to minimize the potential for confusion where registrants have the same name and birthday. The assignment of a unique voter ID in Section 21803(a)(5)(A)(ii) serves precisely this purpose.[9] Nowhere does HAVA mandate that a positive "match" be found before a person's registration be accepted. Such a requirement makes no sense in light of the Special Rule, which completely dispenses with the requirement to provide an ID number when the applicant has none. 52 U.S.C. § 21083(a)(5)(A)(ii).

Subsection (b) of HAVA Section 303 does contain an identification requirement for first-time voters who register by mail, which one can satisfy by matching an ID number (discussed in Part I.A.2, *supra*). 52 U.S.C. § 21083(b). But, as Petitioners must acknowledge, this identification requirement is inapplicable to, *inter alia*, UOCAVA voters. Pet'rs' Br. at 23, *citing* 52 U.S.C. § 21083(b)(3)(C)(i). As discussed in Part I.C, *supra*, Pennsylvania's identification requirements for absentee voters are stricter than those of HAVA, but they similarly exempt

---

[9] As contemplated at the time HAVA was enacted, Pennsylvania's SURE system assigns registrant a unique voter ID number, whether or not possessed of a DLN or SSN4:

> It is likely that states will find it necessary to create a unique identifier to distinguish registered voters who happen to have the same name and/or birth date. The unique identifier so created will be used to assure that list maintenance functions are attributable to the correct voter; so as to avoid removing registrants who happen to have the same name and birth date as a felon, for example.

R.284a.

Exhibit F

UOCAVA voters from having to provide other proof of identification if their ID numbers do not match or if they lack them. That was a choice made by the General Assembly. And, again, the Directive which deals only with the registration of voters and not with whether any voter's particular ballot in any election should count, has no relevance to this process.

**B.  The Department's practices are consistent with HAVA and other laws.**

Petitioners claim that Department officials "acknowledge that even when the applicant provides a DLN on the FPCA, the elections officials are directed not to even attempt to match it to PennDOT records." Pet'rs' Br. at 16. Tellingly, there is absolutely no support for this assertion. Their citation to R.103a and R.311a does not help them. Page R.103a is Petitioners' Pre-Hearing Memorandum submitted to the hearing examiner during administrative proceedings.[10] Page R.311a contains a link to the legislative hearing where Deputy Secretary Jonathan Marks, in response to one question regarding UOCAVA *ballots,* during an hours-long proceeding simply responded that proof of identification is exempted from verification pursuant

---

[10] The memorandum simply references exhibits, none of which support this claim. They include: the Directive itself (Exhibit 2, R.23a, 84a, 265a) a letter from Acting Secretary of the Commonwealth Leigh Chapman to Representative Francis X. Ryan (October 28, 2022) (Exhibit 3; R.266a–269a), and Department guidance regarding Voter ID (Sept. 26, 2022) (Exhibit 6; RR278-280a), which together accurately explain Pennsylvania's processes for verifying identification of voters before their vote is counted pursuant to Pennsylvania law and note that UOCAVA voters are exempt from Pennsylvania's proof of identification requirements.

25

to Pennsylvania law.[11] 25 P.S. § 3146.8(i). Curiously, Petitioners ignore the fact that the Pennsylvania-specific instructions to the FPCA exactly mirror HAVA's requirements in Section 303(a)(5). R.73a–81a. Specifically, they state: "You must provide your Pennsylvania-issued ID number or the last four digits of your Social Security Number. If you do not have any of these numbers you must enter in Section 6: 'I do not have a Social Security Number or Pennsylvania-issued ID number.'" Quite simply, there is no support in the record for the claim that the Department directs counties election officials not to match DLs or SSN4 on FPCA applications for UOCAVA voters.

With respect to those UOCAVA voters who do not match however, the Department correctly instructs counties, consistent with Section 1308(i) of the Election Code, that they cannot require proof of identification for such UOCAVA

---

[11] The full context of this testimony shows that Representative Francis X. Ryan was asking about the use of queries to verify mail ballot applications in advance of each election. Deputy Secretary Marks' response concerns not the registration application process but instead the ballot application process as made clear below:

> **Rep. Ryan:** But one final question. The UOCAVA system. There's been a significant increase in the number of non-military ballots that came out through the system. What steps are taken to verify, by county election offices, to verify the information on the Federal Post Card Applications received from overseas non-military voters or is there any requirement to have verification done?
> **Dep. Sec'y Marks:** Those voters, that group of voters are specifically exempted from the HAVA verification requirements. So they do not have to provide the PennDOT ID or last four of SSN. That's an exemption both in federal law and I believe state law as well. So there is no systematic verification if that's what you're asking.

Exhibit F

voters whose identification has not been verified. 25 P.S. § 3146.8(i); *see also* R.278a–280a. This is not a violation of HAVA and, moreover, is in accord with state law. 52 U.S.C. § 21083(b)(3)(C)(i); 25 P.S. §§ 3146.2(j), 3146.2b(f), 3146.5(c), 3146.8(i) (all providing for such an exemption for UOCAVA voters). The Department's guidance, and other communications (including to the county boards of elections and the Pennsylvania House State Government Committee) are all squarely in line with this unambiguous statutory text. Any alleged violation of Section 21083(b) is meritless.

Petitioners devote an inordinate amount of space in their argument recounting what other states do with respect to proof of identification of UOCAVA voters. Pet'rs' Br. at 24–26 (discussing Georgia and Ohio).[12] That other states might have different requirements and procedures for UOCAVA voters is of no relevance. The only issue is whether Petitioners demonstrated a violation of HAVA. The OGC correctly found that they did not.

---

[12] Petitioners indeed spent a significant component of their presentation before the hearing examiner recounting the practices of other states. R.167a, 170a, 177a, 187a (discussing UOCAVA procedures for Alaska voters); R.167a, 172a–177a, 314a–330a (same for Georgia); R.167a–172a, 177a, 312a–313a (same for Ohio). Even assuming, *arguendo*, that Ms. Honey's testimony was proper to demonstrate what those other states require, those other states' policies are of no relevance in assessing whether the Department violated any provision of Title III of HAVA.

Exhibit F

**III.    The Office of General Counsel's Final Determination Properly Applies the Law and Should Be Affirmed.**

After a full hearing in which Petitioners were generously permitted to present all of the evidence they sought, the OGC hearing examiner dismissed the complaint, finding Petitioners failed to show the Department violated HAVA. This determination contains findings of fact ("F.F.") fully supported by the record and conclusions of law fully consistent with HAVA. R.336a–337a, F.F. 1–12. These findings support the Final Determination's conclusions that the Department's actions are fully consistent with the law.

In one of these findings, the hearing examiner specifically concluded that there was "no evidence" presented "that the Department prohibits or interferes with the ability of counties to take steps to verify voter information . . . ." R.336a–337a, F.F. 4, 5, 6. The examiner further found that the FPCA instructs Pennsylvania UOCAVA voters to provide their ID number, their SSN4 or state that they have neither. R.337a, F.F. 9-10. All of these findings were the product of a full hearing during which Petitioners had every opportunity to present evidence in support of their claims. R.136a, R.255a.

Yet the only "evidence" advanced by Petitioners to demonstrate the Department's supposed wrongdoing consists of documents and testimony which actually demonstrate that the Department has acted entirely consistent with the law. *See generally* Pet'rs' Br. at 20–24 (citing the Directive). And the only scintilla of

Exhibit F

evidence provided by Petitioners as to the practice of any county, that one county purportedly did not properly process FPCAs during the 2020 election, based on a hearsay account from Ms. Honey regarding a response to a Right to Know request made by some unidentified person, R.218a, 332a, was correctly rejected as "speculative and conclusory at best." R.343a–44a.[13]

In any case, Petitioners' Brief is wholly devoid of any allegation that the Findings of Fact in the Final Determination are defective in any way. It does not even refer to the Final Determination's Findings of Fact, much less persuasively argue that they are unsupported by substantial evidence. Nor could it. The OGC properly found that the record did not support Petitioners' claims and any suggestion to the contrary is meritless.

Petitioners provide no evidence—and none is found in the record—which would support the conclusion that the Department has approved or encouraged, much less "directed," county voter registration commissions not to attempt to match ID numbers submitted by voter registration applicants.

Similarly, the conclusions of law ("C.L.") in the Final Determination fully outline HAVA and the requirements of Title III. R.337a–340a, C.L. 1–18. Significantly, the hearing examiner recognized:

---

[13] A response from one county that no records exist for a Right to Know request seeking "incomplete HAVA applications" from over two years prior proves nothing.

Exhibit F

- the mandate to establish a "computerized statewide voter registration list," C.L. 7;

- the rules with respect to provision of information by voter registration applicants and the Special Rule for applicants who do not have an ID number, C.L. 8, 9;

- that determinations of the sufficiency of voter registration forms are to be made "in accordance with [Pennsylvania] law," C.L. 10;

- that HAVA does not institute a restriction on voter eligibility, C.L. 11; and

- that HAVA exempts UOCAVA voters from the requirement to provide an ID number at the time of voting; C.L. 12–14.

The Final Determination rightly notes that Petitioners "are unable to show how any Department practice, including the Directive, violates the clear and plain text of HAVA," and concludes that the Department's practices "adhere[]" to the system HAVA created. R.341a. None of the foregoing represents legal error, and Petitioners really make no argument to the contrary. Quite simply, Petitioners do not like that the Election Code excepts UOCAVA overseas voters from the requirement that one provide proof of identification for their ballot to be counted. Pet'rs' Br. at 26. But that does not create a violation of HAVA. Nor do Petitioners cite any authority that overseas voters who vote pursuant to UOCAVA are to be treated any

Exhibit F

differently than military voters. There is none; neither UOCAVA nor Pennsylvania law makes any such distinction.

Petitioners claim that "[t]he Department of State and the Secretary of the Commonwealth's directive have created a loophole" with respect to UOCAVA voters misses the mark. Pet'rs' Br. at 20. The Directive simply reflects HAVA's requirements with respect to the Special Rule: that a voter registration application cannot be rejected for the sole reason of a non-match. This does not violate HAVA; rather, it is entirely consistent with HAVA. Moreover, both HAVA and the Election Code treat UOCAVA voters differently with respect to verification of identification prior to voting. The Department and Secretary simply execute the law as enacted. Any such "loophole" is in fact the deliberate creation of the United States Congress and Pennsylvania General Assembly, which have struck a balance after weighing the benefits and burdens of imposing certain requirements on UOCAVA voters.

The Office of General Counsel's determination is fully supported and should be affirmed.

Exhibit F

## <u>CONCLUSION</u>

The Department's Directive is fully consistent with HAVA. The Final Determination of the Office of General Counsel dismissing Petitioner's Complaint is correct and fully supported by substantial evidence. Accordingly, the Court should affirm the Final Determination of the Office of General Counsel.

Respectfully submitted,

*/s/ Kathleen A. Mullen*
Kathleen A. Mullen (ID No. 84604)
Ian B. Everhart (ID No. 318947)
Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

*On behalf of Respondent Pennsylvania Department of State*

Date: June 28, 2024

Exhibit F

# <u>CERTIFICATION</u>

This 28th day of June, 2024, I certify that:

*Electronic version*. The electronic version of this Brief that has been provided to the Court in .pdf format in an electronic medium today is an accurate and complete representation of the paper original of the document that is being filed by Respondent Pennsylvania Department of State.

*Public Access Policy.* I certify that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The undersigned verifies that the preceding Brief does not contain or reference exhibits filed in the trial court under seal. Therefore, the preceding Brief does not contain confidential information.

*Word Count*. I certify that this filing contains 6,542 words and, thus, complies with the word count limit imposed by Pa. R.A.P. 2135(a)(1). In making this certification, I have relied on the word count of the word processing system used to prepare this filing.

Exhibit F

      ***Service***. I am this day serving this Brief to all counsel of record electronically via the PACFile system, and to any *pro se* participants via electronic mail, with a certificate of service to be generated thereby.

/s/Kathleen A. Mullen
Kathleen A. Mullen

Exhibit F