IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Hon. Guy Reschenthaler, a member of the U.S. House of Representatives, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>Al Schmidt, in his official capacity as Secretary of the Commonwealth, et al.,<br><br>      Defendants. | Civil No. 1:24-CV-01671 |

**Plaintiffs' Opposition Memorandum to Proposed Intervention of the Democratic National Committee and the Pennsylvania Democratic Party**

The Plaintiffs oppose the proposed intervention of the Democratic National Committee and the Pennsylvania Democratic Party. Based on the facts and circumstances of this proposed intervention, amici curiae participation is a more appropriate fit for the Democratic National Committee and the Pennsylvania Democratic Party than either intervention as of right or permissive intervention.

**I.     Intervention as of right**

The proposed intervenors, the Democratic National Committee (DNC) and the Pennsylvania Democratic Party (PDP), seek to intervene in the underlying action as a matter of right under Federal Rule of Civil Procedure 24(a) or for permissive intervention under Rule 24 (b)1(b). DNC-PDP Mot. to Intervene, at 3–4, ¶ 7, R. Doc.

14, at 3–4, ¶7 (Oct. 4, 2024).  Under Federal Rule of Civil Procedure 24(a), "the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action[.]" A litigant is entitled to intervene as a matter of right if it can show: (1) a timely application for leave to intervene; (2) a sufficient interest in the litigation; (3) a threat that its interests will be impaired or affected, as a practical matter, by the disposition of the action; and (4) that its interests are not adequately represented by existing parties to the litigation. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).

### A. Timeliness

Turning to the first element, an application to intervene must be timely. *See In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982).  DNC-PDP Mot. to Intervene, at 6–7, ¶ 15. R. Doc. 14, at 6–7, ¶ 15 (Oct. 4, 2024).   The plaintiffs, also referred to as the "Congressional Candidates,"[1] do not contest the first element of timeliness.

### B. Interest in litigation

Second, the intervenor must demonstrate a sufficient interest "relating to the property or transaction which is the subject of the action that is significantly protectable." *Kleissler*, 157 F.3d at 969 (citation omitted). In other words, there must

---

[1] Or referenced as the "Candidate(s)".

be a "tangible threat to a legally cognizable interest to have the right to intervene." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (citations omitted). The interest must be specific to the intervenor and directly affect the intervenor in a "substantially concrete fashion by the relief sought." *Kleissler*, 157 F.3d at 972.

The interest may be sufficient if "a determination of the action in the applicants' absence will have a significant *stare decisis* effect on their claims, or if the applicants' rights may be affected by a proposed remedy." *Brody by Brody and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992.) While this analysis suggests a flexible approach and permits reliance "upon pragmatic considerations such as the benefits derived from consolidation of disputes into one proceeding. Those considerations, however, should not prevail if the focus of the litigation would be unduly dissipated or case management would become exceptionally complex." *In re Safeguard Scis.*, 220 F.R.D. 43, 48 (E.D. Pa. 2004). As the Third Circuit noted in *Kleissler*:

> [T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantial concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.

157 F.3d at 972.

To show that their interest will be impaired if the litigation proceeds without them, the proposed intervenors "must show that [their] absence in the action poses a 'tangible threat' to [their] interest, such as 'a significant stare decisis effect' on [their] claims." *Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 349 (M.D. Pa. 2013). "Courts have held that where the parties to the litigation share the position of the movant, stare decisis or collateral estoppel problems are lessened." *Id.*

Here, the DNC-PDP fail to demonstrate a sufficient legally cognizable interest. Their interest is not direct. In the complaint, the Congressional Candidates have presented that they have competitor standing to ensure that the final vote tally accurately reflects the valid votes cast. The Congressional Candidates allege that Pennsylvania election officials are not completing HAVA-required voter registration information verification before counting UOCAVA ballots. See Amended Complaint, R. Doc. 23, Ex. L (diagram). In light of the Congressional candidates' allegations, the DNC-PDP fail to adequately explain how they have a legally cognizable interest in this lawsuit.

In a partisan way, the DNC-PDP misconstrue the underlying complaint of the Congressional Candidates. The Candidates do not seek to "inhibit the participation of tens of thousands of Pennsylvania voters…." DNC-PDP Mot. to Intervene, at 1, R. Doc. 14, at 1. The Candidates' allegations assert that mandated verification of voters as to their eligibility to have their respective ballots counted ensures the participation of *Pennsylvania voters* as defined under federal and state law to participate in federal

4

election contests. If voters are not eligible as Pennsylvania voters, there is no *inhibiting* of any "guarantee[ ] by the federal Uniformed and Overseas Citizens Absentee Voting Act." *Id. See e.g.,* Plts. Compl. at 19–21, ¶¶ 98-99, 104, R. Doc. 1, at 19– 21, ¶¶ 19–21, 104 (Sept. 30, 2024). Simply put, UOCAVA does not guarantee that when a person is not eligible to register that their ballot will be counted.

The legal issues presented by the complaint pertain to election processes and procedures implemented by the defendant Al Schmidt, Secretary of the Commonwealth.[2] It has nothing to do with the DNC-PDP's retention of candidates on the ballot as identified by the parties, nor any change to the ballot, which would affect the DNC-PDP's interests. These are not interests connected to the Congressional Candidates' claims.

The DNC-PDP assert expenditures devoted to campaigning for their respective candidates. DNC-PDP Mot. to Intervene, at 6, ¶ 12. While that might be true (although nothing is said as it relates to campaign expenditures dedicated specifically to overseas military or citizens), the DNC-PDP's assertion that if the Candidate's injunctive relief is granted, the DNC-PDP will be required "to divert their scarce resources toward the 'verification' of 'the identity and eligibility' of military and overseas voters who cast ballots in the 2024 election." *Id.,* ¶ 12 quoting Plts. Compl., at 37, Relief ¶ 4, R. Doc. 1, at 37, Relief ¶4. The DNC-PDP fail to inform the Court

---

[2] References to the defendant Secretary Al Schmidt is inclusion of the co-defendant Deputy Secretary of the Commonwealth for Elections and Commissions.

5

that political parties, here, the DNC-PDP, have *nothing* to do with *the governmental* verification process complained of—because it is solely the responsibility of *governmental* election officials.

Moreover, the governmental verification process, mandated under federal law, does not "threaten the ability of registered Democrats to cast a ballot and hence the electoral prospects of Democratic candidates" as the DNC-PDP stated as a proposed reason for intervention. *Id.* at 6, ¶ 13. The complaint does not interfere with a "registered Democrat's" ability to cast a ballot. First, there is no way to identify if a voter is a Democrat, Republican, Socialist, or Green Party registered member. There is nothing in the registration process or absentee ballot process that requires a person's party affiliation. Second, if the verification process concludes a voter is not eligible to vote in Pennsylvania, the voter cannot cast a ballot regardless of party affiliation. If a voter is eligible, the ballot counts; if not, the ballot doesn't count. Hence, a fair election for all parties involves counting the eligible voter ballots.

Indeed, defendant Schmidt should not have an interest in a political party's hope of electing its candidate to office. However, Schmidt is in the best position as Pennsylvania's chief election official to ensure an electoral system reflects who shall prevail—fairly and with each party or independent candidate receiving valid ballot counts based on counting eligible voter ballots. The complaint contests Schmidt's directives as state policy, instructing governmental election officials' non-compliance

with federal law. Thus, Schmidt's interests must be in legal compliance--ensuing the operation of an election system in accordance with federal and state law.

In what can be described as a brazenly partisan statement, the DNC-PDP asserts that "[t]he Defendants are public officials, and do not share the DNC's and PDP's interests in seeking to ensure that their candidates prevail." DNC-PDP Mot. to Intervene, at 6, ¶ 14. This statement suggests the DNC-PDP supports the asserted illegal election structure *because* they want to win. This purported interest is remote to the obligations of governmental election officials to ensure fair elections in determining who shall prevail regardless of party affiliation.

### C. Interests affected or impaired

Third, the intervenor must show their interest may be affected or impaired. This Circuit narrowly defines "legal interests" for purposes of Rule 24(a)(2). As previously stated, to show that their interest will be impaired if the litigation proceeds without them, the intervenors "must show that [their] absence in the action poses a 'tangible threat' to [their] interest, such as 'a significant stare decisis effect' on [their] claims." *Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 349 (M.D. Pa. 2013). "Courts have held that where the parties to the litigation share the position of the movant, stare decisis or collateral estoppel problems are lessened." *Id.*

The arguments the DNC-PDP asserted as "interests" to intervene in the litigation are equally relevant here. The DNC-PDP have not explained persuasively (indeed, characterizing their own claims as merely "implications," *see e.g.,* DNC-PDP

7

Mot. to Intervene, at 6, ¶ 13, R. Doc. 14, at 6, ¶ 13), as to why their "interests" would be affected or impaired. As for a further example, the DNC-PDP asserts that their interest involves the expectation of their candidates "to receive votes from those [DNC voters registered in Pennsylvania residing overseas and intending to vote] voters." *Id.* Yet, the Candidates' interests are exactly the same. Their expectations are to receive votes from similar voters—only, that those voters are *eligible* voters. Here, the DNC-PDP suggests they want the ballots of *ineligible* voters to count to get their candidates in office. The position is contrary to ensuring a fair election under an electoral system compliant with federal law which is in the interests of the existing parties. Here, the DNC-PDP seek to impede the ultimate relief sought.

### D. Interests not adequately represented

Finally, the DNC-PDP as prospective intervenors must show their interests are not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a)(2). Representation is considered adequate unless: (1) the interests of the parties diverge sufficiently and the existing party cannot devote proper attention to the intervener's interests, even if the intervener's interests are similar to those of a party; (2) there is collusion between the representative party and the opposing party; or (3) the representative party is not diligently prosecuting the suit. *In re WELLBUTRIN XL*, 268 F.R.D. 539, 547 (E.D. Pa. July 21, 2010) (citation omitted).

Here, the DNC-PDP have made no representation or allegation to suggest the existing parties cannot meet the requirements of Rule 24(a)(2). As previously noted,

the DNC-PDP have stated that "[t]he Defendants are public officials, and do not share the DNC's and PDP's interests in seeking to ensure that their candidates prevail." DNC-PDP Mot. to Intervene at 6, ¶ 14, R. Doc. 14 at 6, ¶ 14. Our previous explanation holds true here. Schmidt is in the best position as Pennsylvania's chief election official to ensure an electoral system reflects who shall prevail—fairly and with each party or independent candidate receiving valid ballot counts from eligible voters regardless of party affiliation. The complaint contests Schmidt's directives as state policy, instructing governmental election officials to disobey federal law under UOCAVA. Thus, Schmidt's interests are to ensure the operation of an electoral system in accordance with federal law. The objective of the Candidates' complaint is to ensure a fair election so that the prevailing candidate of any party (or independent) wins. The DNC-PDP further does not suggest collusion between the Candidates and Schmidt, or that he, through counsel, will not diligently prosecute the lawsuit. Therefore, the DNC-PDP fail to show that their interests will not be adequately represented.

In short, the Candidates see no reason why this Court should allow the DNC-PDP to intervene as a matter of right. The DNC-PDP's motion should be denied.

## II. Permissive intervention

Federal Rule of Civil Procedure 24(b) authorizes permissive intervention at the discretion of the court. Under this Rule, "the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a

9

claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In deciding whether to grant permissive intervention under Rule 24(b), "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Likewise, permissive intervention under Rule 24(b)(2) is allowed on timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). In deciding whether to permit intervention under Rule 24(b), "courts consider whether the proposed intervenors will add anything to the litigation." *See Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 471 (M.D. Pa. 2005).

There is no issue regarding timeliness. However, the DNC-PAP have not argued they have a conditional right to intervene conferred by federal statute, and there is no evidence of a common question of law or fact shared with the Candidates or the defendant Schmidt.

Even if the proposed intervenors' interests are aligned with those of the defendant Schmidt, who as the chief election officer for the Commonwealth of Pennsylvania has the enforcement power under applicable state and federal law (*see e.g.,* Plts. Compl. at 6–7, 14, 21, ¶¶ 27, 28, 66, 67, 103, 104, 105, R. Doc. 1 at 6–7, 14, 21, ¶¶ 27, 28, 66, 67, 103, 104, 105), which makes him (1) a proper defendant; and (2) well-suited to defend the statutory compliance allegations at issue. *See Miracle v. Hobbs,* 333 F.R.D. 151, 156 (D. Ariz., 2019). Most notably, allowing the DNC-PDP to

intervene, as the DNC-PDP have ably demonstrated in their own motion, they will introduce unnecessary partisan politics into an otherwise nonpartisan legal dispute. The Candidates' complaint presented to this Court is a nonpartisan legal pursuit. The DNC-PDP are specifically concerned about their candidates and not interested in the legality or illegality of an electoral system presently in place that possibly distorts the outcome of an election and a whether a candidate is actually the prevailing candidate. Consequently, even if the DNC-PDP as proposed intervenors had satisfied the criteria for permissive intervention, the Court should exercise its discretion to deny their motion.[3]

Therefore, under the arguments presented, the Candidates see no reason why this Court should exercise its discretion to allow the DNC-PDP to permissively intervene. The DNC-PDP's motion should be denied.

### III. The amici curiae role is a better fit for DNC-PDP.

There is an alternative to intervention for proposed intervenors with remote, but not direct, interests—amici curiae participation. *Baptiste v. Bethlehem Landfill Company*, 965 F.3d 214, 219 (C.A.3 (Pa.), 2020) (These two non-profit organizations as amici curiae "sought to shine light on the 'environmental justice' implications of the

---

[3] It should also be note that the cases the DNC-PNP cite to in their motion as evidence that "[f]ederal courts routinely permit political parties to intervene in such cases," an examination of those cases, while allowing intervention, do *not* analyze *why* or *how* the parties met the criteria for intervention. *See,* DNC-PNP Mot. to Intervene at 5 ¶ 10, R. Doc. 14, at 5, ¶ 10.

11

District Court decision"). An amicus is not a party to the litigation. *See, e.g., New England Patriots Football Club, Inc. v. University of Colo.*, 592 F.2d 1196, 1198 n.3 (1st Cir. 1979) (describing amicus curiae as nonparty that provides information and assistance); *Clark v. Sandusky*, 205 F.2d 915, 917 (7th Cir. 1953) (stating amicus curiae is not party to suit); *United States v. Smith*, 686 F. Supp. 847, 853 n.9 (D. Colo. 1988) (stating clear precondition for amicus is that person not be party to suit); *Alexander v. Hall*, 64 F.R.D. 152, 155 (D.S.C. 1974) (declaring amicus is not party to litigation but rather is impartial servant of court); *Munoz v. County of Imperial*, 667 F.2d 811, 816-17 (9th Cir.), *cert. denied,* 459 U.S. 825 (1982); *see* 3A C.J.S. §7, at 429-31 (stating amicus curiae is not bound by res judicata). But, courts do grant amici curiae the power to perform functions similar to those of a party. *See* John Koch, Comment, *Making Room: New Directions in Third Party Intervention,* 48 U. Toronto Fac. L. Rev. 151, 157 n.26 (1989) (stating American amicus curiae takes advocacy role primarily through presentation of written brief); Comment, *The Amicus Curiae,* 55 NW. U. L. REV. 469, 469 n.3 (1960), at 170-71 (describing limited role of amicus curiae and indicating amicus may be allowed oral argument); Eugene R. Fidell, *Befriending the Court: A Few Words on Amicus Briefs,* LEGAL TIMES, Sept. 5, 1983, at 8, 9 (indicating that brief is most common form of amici participation and that under limited circumstances court may grant oral argument); *see also* Fed.R.App.P. 29 (allowing amicus participation with consent of parties or leave of court, but limiting oral presentation to extraordinary instances). The amici curiae role is a better fit for the DNC-PDP in this case because DNC-PDP

12

have remote, not direct, interests and they have shown that they are partisan—as detailed and explained above. In their role as amici curiae, the DNC-PDP can "shine light" on the partisan implications of the District Court's decisions.

## Conclusion

This Court should deny the DNC's and PDP's motion to intervene as a matter of right or for permissive intervention. The Plaintiffs do not object to the DNC's and PDP's participation as amici curiae.

Dated: October 8, 2024

/s/Erick G. Kaardal
Erick G. Kaardal (WI No. 1035141)
Elizabeth A. Nielsen (PA No. 335131)*
Mohrman, Kaardal & Erickson, PA
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
kaardal@mklaw.com
nielsen@mklaw.com
*Attorneys for Plaintiffs*
*Applications for Admission pending


/s/Karen DiSalvo
Karen DiSalvo (PA No. 80309)
Election Research Institute
Mohrman, Kaardal & Erickson
1451 Quentin Road, Suite 232
Lebanon, PA 17042
kd@election-institute.com
*Attorney for Plaintiffs*