# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| Hon. Guy Reschenthaler, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Secretary Al Schmidt, *et al.*,<br><br>Defendants. | No. 1:24-cv-01671-CCC<br>Hon. Christopher C. Conner |

## BRIEF IN SUPPORT OF MOTION TO DISMISS FILED BY SECRETARY OF THE COMMONWEALTH AL SCHMIDT, AND DEPUTY SECRETARY JONATHAN MARKS

# TABLE OF CONTENTS

Table of Authorities ..................................................................... ii

Introduction .............................................................................. 1

Background ............................................................................... 2

Argument ................................................................................. 6

  I.     Plaintiffs Lack Standing ......................................... 7

  II.    Plaintiffs Lack a Cause of Action................................11

  III.   Plaintiffs' Claims Lack Any Plausible Merit .............................14

  IV.   Plaintiffs' Claims are Untimely. .................................17

Conclusion.................................................................................21

# TABLE OF AUTHORITIES

## Constitutional Provisions

U.S. Const. art. III, § 2.............................................................................. 7

## Statutes

25 P.S. § 3146.8..............................................................................5, 11

25 Pa.C.S. § 1222 ............................................................................ 3

25 Pa.C.S. § 1328 ........................................................................4, 11

52 U.S.C. § 20303............................................................................ 3

52 U.S.C. § 21083.................................................................*passim*

## Cases

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1
     (2013)....................................................................................14

*American Civil Rights Union v. Philadelphia City
     Commissioners*, 872 F.3d 175 (3d. Cit. 2017)....................................12

*Bognet v. Secretary Commonwealth of Pennsylvania*, 980
     F.3d 336 (3d Cir.)................................................................9, 10

*Corman v. Torres*, 287 F. Supp. 3d 558 (M.D. Pa. 2018) ......................... 8

*Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016)......................19

*In re Burlington Coat Factory Securites Lit.*, 114 F.3d 1410
     (3d Cir. 1997)...................................................................... 4

*Kars 4 Kids, Inc. v. America Can!*, 98 F.4th 436 (3d Cir.
     2024) ....................................................................................17

*Keefer v. Biden*, – F. Supp. 3d –, 2024 WL 1285538 (M.D. Pa.
     Mar. 26, 2024)...................................................................... 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................7, 9

*Nigro v. Pa. Higher Educ. Assistance Agency*, No. 19-2000,
  2020 WL 5369980 (M.D. Pa. Sept. 8, 2020) ....................................... 6

*Raines v. Byrd*, 521 U.S. 811 (1997) ......................................................... 7

*Warth v. Seldin*, 422 U.S. 490 (1975) ...................................................... 9

*Wood v. Raffensperger*, 981 F.3d 1307 (11th Cir. 2020) ........................10

*Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir.
  2022) .................................................................................................7, 9

*Zimmerman v. Schmidt*, 63 MAP 2024, 2024 WL 4284202
  (Pa. Sept. 25, 2024).............................................................................11

## INTRODUCTION

With less than one month to go before Election Day, and mail-in voting already underway, several sitting members of Congress and a nonprofit organization have asked that this Court require counties in Pennsylvania to set aside all ballots cast by members of the armed forces serving abroad as well as those of other overseas voters. Plaintiffs' basis for that requested relief rests on their own confusion over how two separate requirements of the Help America Vote Act (HAVA) apply to overseas voters. The first, relating to applications to register to vote, does apply to overseas voters. The second, relating to applications to vote by absentee or mail-in ballot, does not. Because Plaintiffs conflate these provisions, their complaint is groundless.

But the Court need not address the merits of the complaint at all, because several threshold issues require dismissal. *First*, plaintiffs lack standing for two separate reasons: they assert nothing more than generalized grievances of the sort that the Third Circuit has held do not confer standing in election cases; and the injuries they claim would be redressable only through relief directed against county election officials—who are responsible for processing voter registration

applications as well as returned mail ballots—not any Defendant.[1]
*Second*, Plaintiffs lack a cause of action: Third Circuit law is clear that
these Plaintiffs have no private right of action to enforce the specific
provisions they allege Defendants are violating. And, *third*, Plaintiffs
have inexcusably delayed in bringing this action, complaining about
policies that have been in effect for years.

For all these reasons, Plaintiffs' complaint should be dismissed.

## BACKGROUND

This case concerns the interaction of two federal statutes.

Congress enacted the first, HAVA, in the wake of the 2000
Presidential Election and, relevantly, created new mandatory procedures
standards for states, including requirements to build a computerized
statewide voter registration system and requirements for voters who
register by mail. HAVA requires that states develop "a single, uniform,
official, centralized, interactive computerized statewide voter
registration list" that assigns a unique identifier to every registered
voter. 52 U.S.C. § 21083(a)(1)(A). Pennsylvania met this obligation by

---

[1] For the same reason, Plaintiffs have failed to join indispensable
parties. *See* Fed. R. Civ. P. 12(b)(7).

creating the Statewide Uniform Registry of Electors (the "SURE System" or "SURE"). 25 Pa.C.S. § 1222(a).

Congress passed the second, the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), to ensure that active-duty military members, as well as other categories of U.S. citizens living overseas, are entitled to vote in elections for federal offices by absentee ballot. Under the definitions adopted by Congress, UOCAVA applies to "absent uniformed services voters" and "overseas voters." 52 U.S.C. § 20303.

These statutes interact differently as far as the proof of identification required at the time of registering to vote and then at the time of voting.

**Registration:** Under HAVA, a state may not process a voter registration application unless it contains the applicant's driver's license number or the last four digits of the applicant's Social Security Number, unless the applicant has been issued neither. See 52 U.S.C. § 21083(a)(5)(A). This requirement applies to all voters, including

overseas voters. *See* Exhibit attached hereto (Federal Post Card Application (FPCA) with PA instructions).[2]

Under Pennsylvania Law, county voter registration commissions receive voter registration applications, examine whether prospective voters possess the qualifications to vote, and depending upon the result of that examination, accept them, reject them, or otherwise disposes of them. 25 Pa.C.S. § 1328.

**Voting:** Under HAVA, first-time voters who registered to vote by mail are required to provide identification, either in person or with their returned mail ballot. See 52 U.S.C. § 21083(b). Mail voters satisfy this requirement by returning, with their ballot, either a copy of a valid photo identification or a copy of a "utility bill, bank statement, government check, paycheck, or other government document" listing the voter's address. Id. § 21083(b)(2)(A)(ii). However, this requirement ***does not apply*** to any voter who is "entitled to vote by absentee ballot under the

---

[2] While Plaintiff attached an FPCA application to its brief, *see* Pls.' Ex. G, it failed to attach the complete one with Pennsylvania instructions. Because this document is referenced and explicitly relied upon by Plaintiffs it is appropriate to attach it here. *See In re Burlington Coat Factory Securites Lit.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (district court ruling on motion to dismiss may properly consider such document).

Uniformed and Overseas Citizens Absentee Voting Act." *Id.* § 21083(b)(3)(C)(i). The state law implementing this identification requirement similarly exempts UOCAVA voters. *See* 25 P.S. § 3146.8(i) ("Notwithstanding the provisions of this section, a qualified absentee elector shall not be required to provide proof of identification if the elector is entitled to vote by absentee ballot under [UOCAVA].")

***Plaintiffs' Amended Complaint***. Within the context of these requirements, Plaintiffs complain about three statements made by the Defendants. First, Plaintiffs complain that the Department's Voter ID Guidance, issued in 2022, states that UOCAVA voters are not required to provide proof of identification with their returned ballots. Am. Compl. ¶127 & Ex. M. Second, Plaintiffs allege that, during an extended legislative committee meeting, Deputy Secretary Jonathan Marks indicated that UOCAVA voters are exempt from verification requirements. Am. Compl. ¶ 130. Third, Plaintiffs complain that the Department's Guidance on Military and Overseas Voters indicates, like the Voter ID Guidance, that "covered voters are exempt from the Election Code's ID requirements for absentee voters." Am. Compl. ¶131 Plaintiffs have cobbled together their complaint from these statements.

5

## STANDARD OF REVIEW

Facial challenges to subject matter jurisdiction under Rule 12(b)(1) and motions to dismiss under Rule 12(b)(6) are evaluated under the same standard of review. *Nigro v. Pa. Higher Educ. Assistance Agency*, No. 19-2000, 2020 WL 5369980, at *5 (M.D. Pa. Sept. 8, 2020). The Court must consider whether the Amended Complaint contains sufficient plausible factual allegations to establish this Court's subject matter jurisdiction and whether it states a claim for relief that is plausible on its face. *Id.* at *4-5. Further, this Court must determine whether Plaintiffs' complaint should be dismissed under Rule 12(b)(7) because they have failed to join the Counties and officials that actually implement the processes about which plaintiffs complain.

## ARGUMENT

This Court should dismiss the Amended Complaint because Plaintiffs lack standing. No Plaintiff has suffered a legally cognizable injury and their supposed injuries cannot be redressed by Defendants. While the Court need not—and should not—go beyond these failures, the complaint may also be dismissed because Plaintiffs have no plausible cause of action, have failed to allege a violation of any federal

constitutional or statutory requirement, and their complaint is time-barred as a result of their inexcusable delay in bringing this suit.

## I.   Plaintiffs Lack Standing

The U.S. Constitution confines a federal court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limit is enforced by requiring that a plaintiff establish standing, which in turn requires them to demonstrate that they suffered (1) an injury in fact, (2) caused by the conduct complained of, and that is (3) capable of judicial remedy. *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 310 (3d Cir. 2022). Respect for separation of powers makes standing concerns "particularly acute" in cases brought by legislators. *Russell v. DeJongh*, 491 F.3d 130, 134 (3d Cir. 2007).

For injury in fact, a plaintiff cannot rely upon a general interest "in the proper application of the Constitution and laws." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992). Injuries must be personal to the plaintiff as well as "concrete" and "particularized." *Raines v. Byrd*, 521 U.S. 811, 818-19 (1997); *see also Yaw*, 49 F.4th at 311, 314-15. Here, accepting their non-conclusory allegations, Plaintiffs have not alleged any concrete, particularized injury specific to them.

The Amended Complaint makes abundantly clear that the claimed injury here is that the Defendants' statements and directions diverge from plaintiff's misinterpretation of HAVA, UOCAVA or state election law. This is no more than the type of allegations of generalized injury that have repeatedly been deemed insufficient for Article III standing purposes.

That the allegations are made, in part, by legislators does nothing to confer standing under Article III. The Supreme Court said as much in *Raines v. Byrd*. There, six members of Congress filed suit challenging a statute that allowed the President to "'cancel' certain spending and tax benefit measures after he has signed them into law." 521 U.S. 811, 814 (1997). The legislators asserted they had standing based on a claimed interest in maintaining the effectiveness of their votes. *Id.* at 821-22. The Court ruled that such an interest was shared equally by every member of Congress's two bodies such that no individual member had a personal stake; the alleged injury was instead an "institutional injury." *Id.* at 821, 829-30; *see also Corman v. Torres*, 287 F. Supp. 3d 558, 567 (M.D. Pa. 2018) (holding that Pennsylvania legislators did not suffer any particularized injury from the "purported usurpation of the Pennsylvania

General Assembly's exclusive rights under the Elections Clause of the United States Constitution."); *Keefer v. Biden*, – F. Supp. 3d –, 24-147, 2024 WL 1285538 at *7-10 (M.D. Pa. Mar. 26, 2024). Elected plaintiffs have no way around this conclusive precedent, which "flows naturally from bedrock standing requirements." *Yaw*, 49 F.4th at 314.

Further, Plaintiffs' interest in "federal rights to a fair and equal election," and in assuring that "state and local election officials comply with federal election laws and voter registration information verification requirements" is insufficient to confer standing. Am. Compl. ¶ 35. A generalized grievance that is "undifferentiated and common to all members of the public" is insufficient to establish standing. *Lujan*, 504 U.S. at 575. "[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975) (citation omitted); *see also Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336, 349 (3d Cir.), *vacated as moot by Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021).

The allegations before this Court are undifferentiated and generalized and therefore cannot support standing. Plaintiffs' claimed injury is that their right to vote or run for elected office in a "free and fair election" is somehow violated by the Defendants' speech. Am. Compl. ¶ 34. Such averments are plainly insufficient to confer standing. Because complaints of alleged "insecurity" affect all voters equally and are generalized grievances, they are incapable of conferring standing—the supposed harm affects all voters equally. *See Bognet*, 980 F.3d at 352 (dismissing vote "dilution" claims for lack of standing); *see also Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020) (dismissing claim based on interest that "only lawful ballots are counted" as generalized grievance insufficient for standing).

Interests that that "only lawful ballots are counted" or that "government be administered according to the law" are generalized interests that do not permit standing. *Wood*, 981 F.3d at 1314. And precedent "uniformly" holds that even an allegation that executive action violated a duly enacted statute "is not an injury for standing purposes." *Russell*, 491 F.3d at 134

There is nothing in the Amended Complaint (nor could there be) that identifies how any Plaintiff is affected by the conduct challenged in this case in a way that is any different from any other legislator or member of the public.

Nor are Plaintiffs' claims redressable in this action. The processes that Plaintiffs take issue with are administered by counties and the relief they seek is ultimately from counties. *See* 25 Pa.C.S. § 1328 (review of registration); 25 P.S. § 3146.8 (canvass of absentee ballots, including from military voters); *see also* Am. Compl., Prayer for Relief ¶¶ 3-4 (seeking relief from counties). While they describe relief from the Secretary— including that he advises the counties in accordance with Plaintiffs' mistaken view of the law—this is not an area in which the Secretary can compel conduct from counties officials. *See, e.g.*, *Zimmerman v. Schmidt*, 63 MAP 2024, 2024 WL 4284202, at *1 (Pa. Sept. 25, 2024) (finding Secretary is not an indispensable party in case challenging where absentee ballots are canvassed).

## II.    Plaintiffs Lack a Cause of Action

Next, Plaintiffs have no cause of action. This fact independently warrants dismissal. *See, e.g., Wisniewski v. Rodale, Inc.*, 510 F.3d 294,

308 (3d Cir. 2007) (affirming dismissal because statute did not create a private right of action).

Initially, Plaintiffs freely admit that the United States Constitution's Supremacy Clause provides no individual cause of action. *See* Am. Compl. ¶ 175 (acknowledging that the Supremacy Clause does not "confer a cause of action."); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015) (holding the same).

Likewise, HAVA generally "does not include a private right of action." *American Civil Rights Union v. Philadelphia City Commissioners*, 872 F.3d 175 (3d. Cit. 2017). Rather, "HAVA includes only two mechanisms for enforcement: (1) a civil action brought by the Attorney General, and (2) administrative complaint." *Id.* This case involves neither.

In fact, plaintiff PA Fair Elections has brought an administrative complaint raising the same issues, which is currently on appeal in Commonwealth Court. *See PA Fair Elections v. Pennsylvania Dept. of State*, No. 1512 C.D. 2023 (Pa. Cmwlth). Under both federal and state law, this administrative complaint process is the proper mechanism for addressing claims such as those alleged here. *See* 52 U.S.C. § 21112; 25

P.S. § 3046.2; 42 Pa.C.S.§ 763. There is no legal authority for attempting an end-run around that process by filing a separate case in federal court.

Likewise, Plaintiffs identify nothing in UOCAVA that invests in them a privately enforceable right. In fact, the statutory system includes a standalone enforcement section that assigns the Attorney General specific authority to bring actions. *See* 52 U.S.C. § 20307(a) (providing only that "[t]he Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as may be necessary to carry out this chapter."). Nothing in UOCAVA suggests Congress contemplated any alternatives.

Furthermore, to the extent that Plaintiffs assert that Defendants statements are inconsistent with Pennsylvania election law (an assertion which has no basis), they likewise have no federal cause of action, and their claims would be barred by the Eleventh Amendment to the United States Constitution. *See*, *Leer Elec., Inc. v. Pennsylvania, Dep't of Lab. & Indus.*, 597 F. Supp. 2d 470, 477 (M.D. Pa. 2009) ("[I]f the Court were to instruct the Pennsylvania officials on how to conform their conduct to Pennsylvania law, it would engage in a practice that 'conflicts directly with the principles of federalism that underlie the Eleventh

13

Amendment.'" (quoting *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

For this reason, Plaintiffs have failed to state a claim and the Amended Complaint should be dismissed on this basis.

## III.  Plaintiffs' Claims Lack Any Plausible Merit

Even if they had a cause of action, Plaintiffs are wrong on the law.

Plaintiffs cite to the Supremacy Clause seemingly to claim that the Secretary's guidance to county election officials is somehow "preempted" by HAVA. Am. Compl. ¶ 173-196. This argument is a non sequitur. Claims of preemption necessarily flow from the statutory text. *See, Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 14 (2013).

Here, the text of HAVA, UOCAVA, and Pennsylvania's election code, as well as the Defendant's statements, reveal no conflict—thus there can be no preemption. And Petitioners do not even attempt to identify any.

Plaintiffs have not and cannot cite any authority to show how the Department's statements could violate HAVA or UOCAVA. In fact, a plain reading of both HAVA and the Pennsylvania Election Code, both of which exempt UOCAVA-covered voters from identification requirements

14

imposed of other voters who register or vote by mail, supports the Department's understanding.

The plain language of HAVA provides that voter registration applications for an election for Federal office must include either a driver's license number, an "SSN4" or a statement that the registrant has neither. 42 U.S.C. § 21083(a)(5)(A)(i)&(ii). HAVA further states that it is up to the state to determine sufficiency of the information in accordance with its own law. § 21083(a)(5)(A)(iii).

This provision also establishes identification requirements for first-time voters who register by mail, but specifically exempts UOCAVA-covered voters from those requirements. § 21083(b)(3). Indeed, Petitioners flatly misread HAVA in their attempts to impose additional requirements on UOCAVA-covered voters that do not appear in the law. Specifically, Petitioners plead that "[i]f an individual does not possess a driver's license or social security number, the state may assign a unique number" upon voter registration, "but that individual may not vote in a Federal election unless they provide some other document to establish identity and eligibility." Am. Compl. ¶67. HAVA does not say this.

15

Rather, section 303(b) of HAVA, which sets the minimum identification documents for voters who registered by mail, expressly provides that it *does not* apply to UOCAVA voters. *See*, 52 U.S.C. § 21083(b)(3)(C)(i). And, while states can create additional identification requirements, Pennsylvania too has provided in the election code military and overseas voters are not subject to additional requirements.

Specifically, the Pennsylvania Election Code requires absentee and mail-in voters to provide identification by the sixth day after the election for their vote to count, but *exempts* UOCAVA-covered voters from this obligation.  Section 1308(i) of Pennsylvania's Election Code states: "Notwithstanding the provisions of this section, a qualified absentee elector shall not be required to provide proof of identification if the elector is entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act. . . ." 25 P.S. § 3146.8(i); *see also* 25 P.S. §§ 3146.2(j); 3146.5(c) (exempting UOCAVA-covered voters from identification requirements for absentee ballot applications).

Plaintiffs may not like the fact that the Election Code exempts UOCAVA-covered voters in this manner. But that does not create a federal cause of action or any claim against the Secretary. Current law

16

simply does not provide for the processes that Plaintiffs appear to seek. As such, Plaintiffs' claims cannot plausibly establish a right to relief, and the Complaint should therefore be dismissed.

## IV.   Plaintiffs' Claims are Presumptively Barred by Laches

Finally, Plaintiffs plead no facts to overcome the presumption that laches bars their claims.

As the Third Circuit recently reaffirmed, when an equitable claim is brought outside the most analogous statute of limitations, the court *must* presume that laches applies. *Kars 4 Kids, Inc. v. America Can!*, 98 F.4th 436, 444 (3d Cir. 2024) (holding that district court abused its discretion for failing to apply presumption). The *plaintiff* then "carries the burden of proving that his delay was excusable and that the delay did not prejudice the defendant." *Id.* (cleaned up).

In the absence of an identifiable cause of action, courts can assume that the most generous statute of limitations applies, which is the six years default under Pennsylvania law for civil actions. 42 Pa.C.S. § 5527(b). But the provisions of Pennsylvania law that Plaintiffs ultimately challenge—25 P.S. §§ 3146.2(j), 3146.5(c), 3146.8(i)—were

enacted by the Pennsylvania General Assembly in 2012. Act of Mar. 14, 2012, P.L. 195, No. 18, §§ 4, 6, 7.

As a result, Plaintiffs claims, such as they are, are presumptively barred by laches and Plaintiffs bear the burden of proving otherwise. *Kars 4 Kids Inc.*, 98 F.4th at 444. To satisfy their burden on delay, Plaintiffs here must show that "a reasonable person in [their] shoes would have waited to file suit." *Id.* at 444-45 (cleaned up). To satisfy their burden on prejudice, Plaintiffs here must show that the Department is "not prejudiced as a result of its delay in bringing suit." *Id.* at 447. Plaintiffs' complaint does neither.

First, Plaintiffs proffer no excuse for their delay. Nor do they provide any reason for bringing this action at the eleventh hour—after voting in the 2024 General Election has already commenced and *after* over 25,000 overseas ballots have been sent to voters. Am. Compl. ¶ 20. To the contrary, by Plaintiffs' own pleadings, they have known of the defendant's statements regarding UOCAVA and established state election law since at least 2022, yet chose to bring this action less than one month from the 2024 presidential election. Am. Compl. ¶ 127; *see Kars 4 Kids Inc.*, 98 F.4th at 445.

Second, Plaintiffs cannot show that the relief they request would not be prejudicial to the Department, election officials, and Pennsylvania voters.  Whether called "laches, the Purcell principle, or common sense," federal courts have consistently denied requests for late and onerous election changes to protect the orderly operation of elections. *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016); *accord e.g., Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) ("[L]ower federal courts should ordinarily not alter the election rules on the eve of an election."); *Bognet v. Secretary*, 980 F.3d 336, 363 (3d Cir. 2020), vacated as moot (affirming district court's denial of request for preliminary injunction based solely on timing of plaintiffs' request); *Stein v. Cortés*, 223 F. Supp. 3d 423, 437 (E.D. Pa. 2016) (denying request for a recount based on facts known to plaintiffs long before they filed); *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 404-05 (E.D. Pa. 2016) (denying request enjoin restrictions on qualified poll watchers that was filed just weeks before Election Day); *Pa. Democratic Party v. Republican Party of Pa.*, 16-5664, 2016 WL 6582659, at *5 (E.D. Pa. Nov. 7, 2016) (denying re-quest for injunctive relief because it was sought just before Election Day).

Indeed, just last night another district court in Pennsylvania denied a request for injunctive relief because balancing the equities includes "a requirement to use some common sense," and "[c]ommon sense tells the Court that we are less than one month from a Presidential general election." *West v. Pa. Dep't of State*, – F. Supp. 4th –, slip op. at 1, No. 24-1349, (W.D.Pa. Oct. 10, 2024). The court concluded that "tinkering with the mechanics of a national election at a late stage is not a wise idea," especially where doing so poses an "actual risk of harm" to election officials and voters. *Id.* at 2, 8.

These principles apply with full force here given the timing of Plaintiffs' action. Even worse, nothing about Plaintiffs' proposed "judicial fire drill" was necessary. *Republican Party of Pa.*, 218 F. Supp. 3d at 405. In fact, more than a year ago, Plaintiff "Pennsylvania Fair Elections" filed a HAVA administrative complaint addressing the same issues. Nearly a year ago, on November 21, 2023, the Office of General Counsel issued an adjudication in that matter, see Pls.' Ex. D, which Plaintiff then appealed to the Commonwealth Court of Pennsylvania, where it remains pending. Am. Compl. ¶ 135.

Clearly, Plaintiffs knew or should have known both about the administration of UOCAVA voters, and the administrative process under HAVA, many months or even years ago. This action thus could have, and, if Plaintiffs acted with diligence, should have been brought much earlier—without injecting chaos into an election process that is well underway.

Because Plaintiffs plead no excuse for bringing this action 14 years and six Congressional elections since the enactment of the state law provisions governing these elections, they cannot meet their burden to overcome laches. As such, their complaint should be dismissed.

## CONCLUSION

Because no Plaintiff has standing, the Amended Complaint should be dismissed under Rule 12(b)(1). Otherwise, the Amended Complaint should be dismissed with prejudice under Rule 12(b)(6) because Plaintiffs have failed to state a claim, and under Rule 12(b)(7) because Plaintiffs have failed to join indispensable parties.

October 11, 2024

Michael J. Fischer
Executive Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 831-2847
mjfischer@pa.gov

Respectfully submitted,

/s/ *Thomas P. Howell*

Thomas P. Howell (Bar No.
79527)
Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101

*Counsel for Secretary of the*
*Commonwealth Al Schmidt, and*
*Deputy Secretary Jonathan*
*Marks*

22

## **CERTIFICATES**

I hereby certify that a copy of this brief has been served on all counsel of record using the Court's CM/ECF system.

I further certify that this brief contains 3,938 words and therefore complies with Local Rule 7.8(b). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

October 11, 2024                    /s/ *Thomas P. Howell*
                                     Thomas P. Howell (Bar No. 79527)
                                     Deputy General Counsel
                                     333 Market Street, 17th Floor
                                     Harrisburg, PA 17101