UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Hon. Guy Reschenthaler, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Secretary Al Schmidt, *et al.*, <br><br> Defendants. | No. 1:24-cv-01671-CCC <br> Hon. Christopher C. Conner |

### **DEFENDANTS' PRE-HEARING MEMO**

In accordance with the Order of this Court dated October 11, 2024, Defendants Secretary Al Schmidt and Deputy Secretary Jonathan Marks submit this pre-hearing statement to clarify the issues to be presented at Argument.

*Defendants' Motion To Dismiss:* Defendants identified several deficiencies with Plaintiffs' Amended Complaint in their Motion to Dismiss, each of which is fatal to Plaintiffs' claims. Particularly, Plaintiffs lack standing, lack a cause of action, have waited too long to act, and have not sued the correct parties. In addition, their complaint evidences a foundational misunderstanding of the law. That is, Plaintiffs do not understand what the Help America Vote Act (HAVA)

does and does not require. Their recent letter to the Court, dated October 15, 2024, only further confirms their lack of understanding.

HAVA requires that states undertake particular actions at different points in time during the registration and voting process. The required actions may differ depending upon how voters register and submit their ballots.

1. HAVA requires states to create a computerized system of voter registration. 52 U.S.C. § 21083(a)(1)(A). That system must assign voters unique identifiers and must be coordinated with other agency databases. *Id*. States must regularly maintain that list. *Id*. § 21083(a)(2). As part of this process, registration applicants must provide either a driver's license number, the last four digits of their Social Security number or state that they do not have either number. *Id*. § 21083(a)(5)(A). However, HAVA mandates that the determination of whether the information provided is sufficient is to be made "in accordance with State law." *Id*. § 21083(a)(5)(A)(iii).

2. HAVA also establishes requirements relating to first time voters who previously registered by mail. *Id*. § 21083(b) (HAVA Section 303(b)). Under Section 303(b), with respect to such voters – that is,

those who register by mail and have not previously voted in Federal elections – states must require those who vote in person to present photo ID or other documentation of residency *when they vote*. *Id.* § 21083(b)(1)-(2)(A). With respect to such voters who vote by mail, states must require such voters to submit photo identification or other documentation *with their mail ballots*. *Id*

Such documentation is *not* required when, *inter alia,* the voter submitted photo ID or documentation when registering; or the voter is "entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act." *Id.* § 21083(b)(3).

Importantly, these requirements and exceptions in Section 303(b) relate to what states must do *when voters actually vote*. While the means by which voters register to vote informs what HAVA requires at the time of voting, Plaintiffs conflate these requirements and misstates both HAVA's requirements and the voting process.[1]

*Plaintiffs' October 15 Letter:* Based on the Department's public *ballot application file*, Plaintiffs' counsel makes various assertions.

---

[1] In particular, Plaintiffs appear to conflate "absentee ballot applications" with "voter registration applications." See October 14 letter at note 1.

First, Plaintiffs' counsel asserts in his letter that "Defendants have instructed counties that HAVA voter registration application identification information . . .is not required." This assertion is unsupported. See Ex. to Def.'s Mot. To Dismiss. Moreover, that Defendants do not require additional verification of UOCAVA *ballots* is completely consistent with HAVA (and Pennsylvania law). Of course, HAVA controls this result – under 303(b)(3)(C), no state must seek additional information from registered voters *(at the time they vote or request a ballot)* who are "entitled to vote by absentee ballot under UOCAVA." *Id.*

Plaintiffs next claim that the Department has instructed counties verification is not needed for "absentee *ballot applications* submitted by UOCAVA applicants." That is true. HAVA is clear that UOCAVA *voters* are exempt from such requirements when voting or requesting ballots.

Lastly, Plaintiff incorrectly asserts, apparently for the first time, that non-military UOCAVA voters *improperly* receive a ballot without registering. It is in fact true that certain non-military UOCAVA voters who do not intend to return to Pennsylvania are entitled to vote without

being "registered."  That is precisely what UOCAVA requires.  *See*, 52 U.S.C. § 20302 (state's responsibilities); § 20310(1) (definition of absent uniformed services voter); § 20310(5)(C) (definition of overseas voter). Because such voters do not intend to return to Pennsylvania, they may not register as Pennsylvania voters, but may nevertheless vote for "federal" offices.  *See*, 25 Pa.C.S. § 1302; 52 U.S.C. § 20310.

Ultimately, Plaintiffs have not made, and cannot make, any allegation that the Defendants' conduct runs afoul of any provision of law.  To the contrary, even if Plaintiffs properly invoked the jurisdiction of this court, or had joined proper parties, or pled a viable cause of action, or were diligent in filing this Complaint – none of which are the case – Plaintiffs remain wrong on the law, and the Amended Complaint should thus be dismissed.

*Plaintiffs' Injunction Motion:* Because the Amended Complaint suffers from multiple fatal flaws, it should be dismissed without the need to separately consider plaintiffs' motion for a temporary restraining order or preliminary injunction. Even if that were not the case, Plaintiffs cannot show a likelihood of success on the merits, as their underlying legal theory is based on their own confusion about

different requirements under HAVA. In addition, all of the other injunction factors—"irreparable harm" as well as "the potential for harm to others if relief is granted, and whether the public interest favors injunctive relief"—weigh heavily against injunctive relief in this case. *See Pennsylvania Pro. Liab. Joint Underwriting Ass'n v. Wolf*, 328 F. Supp. 3d 400, 407 (M.D. Pa. 2018).

Plaintiffs' claims of irreparable harm are completely speculative. Again, Plaintiffs are challenging practices that have been in place for years—including during prior elections in which Plaintiff Members of Congress prevailed. They have identified no evidence that any voters were improperly registered and have not shown any likelihood of harm from the practices they allege are occurring. As a result, they cannot satisfy this "gateway" factor. *See Id.*

The remaining factors—which merge when the government is the opposing party, *Delaware State Sportsmen's Ass'n, Inc. v. Delaware Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024)—also weigh strongly against Plaintiffs' injunction request. Plaintiffs'

requested relief[2] would impose a significant burden on non-party county officials, who would be required to go through all of the ballots they have previously received to identify and segregate those from UOCAVA voters as well as segregate UOCAVA ballots received going forward, and then perform a burdensome re-review of registration applications—all as they are administering the 2024 general election. And even more significantly, the requested relief would potentially disenfranchise thousands of voters who are qualified to vote under Pennsylvania law and entitled to the protections of UOCAVA[3], including members of our military and their families who make enormous sacrifices on behalf of our nation.  The inevitable result of Plaintiffs' requested burdensome,

---

[2] Plaintiffs' proposed order would require the Secretary to "direct" counties to take certain actions. As the Secretary has explained, he lacks the authority to direct the counties in how they process returned ballots. The Pennsylvania Supreme Court recently relied on this fact to dismiss two recent cases involving challenges to counties' vote-counting procedures. *See Zimmerman v. Schmidt*, --- A.3d ----, 2024 WL 4284202, at *1 (Pa. Sept. 25, 2024) ("The Petition for Review … seeks relief that, if warranted, could be granted solely by and through the County Boards of Elections."); *Black Political Empowerment Project v. Schmidt*, --- A.3d ----, 2024 WL 4181592, at *1 (Pa. Sept. 4, 2024).

[3] UOCAVA-covered voters are also entitled to additional protections under the Uniform Military and Overseas Voters Act.  *See* 25 Pa.C.S.A. § 3501 *et seq.*

rushed process would be that eligible, registered voters would be disenfranchised.

For all of these reasons, Plaintiffs' Motion for Preliminary Injunction should be denied and their Amended Complaint dismissed.

October 16, 2024

Michael J. Fischer
Executive Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 831-2847
mjfischer@pa.gov

Respectfully submitted,

/s/ *Thomas P. Howell*
Thomas P. Howell (Bar. No. 79527)
Deputy General Counsel
333 Market Street, 17th Floor
Harrisburg, PA 17101
(717) 460-6786
thowell@pa.gov

*Counsel for Secretary of the Commonwealth Al Schmidt, and Deputy Secretary Jonathan Marks*

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing was served on all counsel of record on October 16, 2024, by this Court's CM/ECF system.

/s/ *Thomas P. Howell*
THOMAS P. HOWELL