# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

| | |
|---|---|
| Hon. Guy Reschenthaler, a member of the U.S. House of Representatives, et al., | Civil No. 1:24-CV-01671-CCC |
| **Plaintiffs,** | |
| v. | **Plaintiffs' Memorandum of Law in Response to Motions to Dismiss** |
| Al Schmidt, in his official capacity as Secretary of the Commonwealth, et al., | |
| **Defendants.** | |

---

## Table of Contents

Table of Authorities ...................................................................................... ii

I.   The plaintiff Congressmen have Article III standing to assert their Supremacy Clause federal preemption claim. .............................................. 1

II.  This Court has federal question jurisdiction. ............................................. 7

III. The *Purcell* principle does not apply. ...................................................... 9

IV.  Laches does not apply. .......................................................................... 12

V.   Pennsylvania's 67 counties are not necessary, nor indispensable, parties as prospective declaratory or injunctive relief is redressable in their absence. ...................................................................................... 14

VI.  The Plaintiffs' claims are plausible because UOCAVA and HAVA preempt the DOS's directives and guidance. ............................................ 19

Conclusion ............................................................................................... 20

# Table of Authorities

Page(s)

## Cases

*Andino v. Middleton,*
141 S.Ct. 9 (2020) ........................................................................................... 9

*Arizona v. Inter Tribal Council of Arizona, Inc.,*
570 U.S. 1 (2013) ........................................................................................... 10

*Black Political Empowerment Project v. Schmidt,*
2024 WL 4181592 (Pa. 2024) ........................................................................ 17

*Black Political Empowerment Project,*
2024 WL 4002321 (Pa. Cmwlth. 2024) .......................................................... 17

*Burke v. Gateway Clipper,*
supra, 441 F.2d ............................................................................................. 12

*Carson v. Simon,*
978 F.3d 1051 (8th Cir. 2020) .............................................................. 2, 3, 5, 10

*Christ the King Manor, Inc. v. Sec 'y U.S. Dep't of Health & Human Servs.,*
730 F.3d 291 (3d Cir. 2013) ............................................................................ 8

*City of Los Angeles v. Barr,*
929 F.3d 1163 (9th Cir. 2019) ......................................................................... 4

*Democratic National Committee v. Wisconsin State Legislature,*
141 S.Ct. 28 (2020) ............................................................................... 9, 10, 11

*Douglas v. Indep. Living Ctr. of S. California, Inc.,*
565 U.S. 606 (2012) ......................................................................................... 8

*General Refractories Co. v. First State Ins. Co.,*
500 F.3d 306 (3rd Cir. 2007) ......................................................................... 14

*Green Party of Tenn. v. Hargett,*
767 F.3d 533 (6th Cir. 2014) ........................................................................... 4

*Gruca v. U.S. Steel Corp.*,
    495 F.2d 1252 (C.A.3 (Pa.) 1974) ................................................................ 12

*In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*,
    241 A.3d 1058, 663 Pa. 283 (Pa. 2020) ....................................................... 18

*International Union, United Auto., Aerospace & Agric. Implement Workers v. Brock*,
    477 U.S. 274 (1986) ........................................................................................ 9

*Kim v. Hanlon*,
    99 F.4th 140 (3d Cir. 2024) ............................................................................ 9

*Lewis v. Alexander*,
    685 F.3d 325 (3d Cir.2012) ............................................................................ 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 1

*Lutheran Home at Kane v. Dept. of Human Services*,
    318 A.3d 164 (Pa. Cmmw. 2024) ................................................................. 6

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) ........................................................................... 3

*N.W. Youth Services, Inc. v. Com., Dept. of Pub. Welfare*,
    66 A.3d 301 (Pa. 2013) ................................................................................... 7

*Nelson v. Warner*,
    12 F.4th 376 (4th Cir. 2021) ........................................................................... 4

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
    514 U.S. 645 (1995) ...................................................................................... 10

*Pavek v. Donald J. Trump for President, Inc.*,
    967 F.3d 905 (8th Cir. 2020) ........................................................................... 4

*Preston v. Heckler*,
    734 F.2d 1359 (9th Cir. 1984) ........................................................................ 4

*Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.*,
    123 F.3d 111 (3d Cir. 1997) ........................................................................... 9

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ................................................................................................ 9

*Raines v. Byrd*,
521 U.S. 811 (1997) ......................................................................................... 1, 5

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
140 S. Ct. 1205 (2020) ........................................................................................ 9

*Rucho v. Common Cause*,
—— U.S. ——, 139 S. Ct. 2484, 204 L.Ed.2d 931 (2019) ............................ 10

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*,
401 F.3d 123 (3rd Cir.  2005) ........................................................................... 12

*Shaw v. Delta Air Lines, Inc.*,
463 U.S. 85 (1983) .......................................................................................... 7, 8

*Shays v. Fed. Election Comm'n*,
414 F.3d 76 (D.C. Cir. 2005) ........................................................................... 4, 6

*Soc'y v. Green Spring Health Servs., Inc.*,
280 F.3d 278 (3d. Cir. 2002) .............................................................................. 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ......................................................................................... 1, 2

*St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. V.I.*,
218 F.3d 232 (3d Cir.2000) ................................................................................. 8

*Yaw v. Delaware River Basin Comm'n*,
49 F.4th 302 (3d Cir. 2022) ................................................................................ 1

*Ziccarelli v. Allegheny Cnty. Bd. of Elections*,
2021 WL 101683 n.6 (W.D. Pa. Jan. 12, 2021) ................................................. 6

**Statutes**

28 U.S.C. § 1331 ................................................................................................... 7

42 U.S.C. § 1973ff .............................................................................................. 15

52 U.S.C. § 20302(a) ........................................................................................... 15

52 U.S.C. § 20302(a)(a)(2) .................................................................................. 19

52 U.S.C. § 20509 (NVRA) ................................................................................ 16

52 U.S.C. § 21083 (HAVA) ................................................................................ 15

52 U.S.C. § 21083(a)(1)(B) ............................................................... 16, 18, 19, 20

52 U.S.C. § 21083(a)(5)(A)(i-iii) ............................................................2, 3, 19, 20

52 U.S.C. § 21084 ........................................................................................2, 20

Pennsylvania Constitution article I, section 5 ................................................... 17

U.S. Const. art. I, § 4, cl. 1 ................................................................................ 10

**Rules**

Federal Rule of Civil Procedure 19 ............................................................14, 16

**Other Authorities**

Public Law 99-410 ............................................................................................ 15

The Department of State's (DOS's) unpersuasive motion to dismiss arguments are:  no Article III standing; claims not redressable because counties are necessary or indispensable parties; no cause of action; failure to state a claim with plausible merit; and laches.  The Intervenors Democratic National Committee and the Pennsylvania Democratic Party move to dismiss on similarly unpersuasive grounds such as: no Article III standing; no private cause of action; laches and *Purcell* principle; and the DOS guidance does not conflict with HAVA.  Both motions should be denied.

## I.    The plaintiff Congressmen have Article III standing to assert their Supremacy Clause federal preemption claim.

Part of the Article III case-or-controversy requirement is the requirement that plaintiffs have standing to sue. *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 310–11 (3d Cir. 2022) citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must establish three elements: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

To show an injury in fact, the "first and foremost of standing's three elements," a plaintiff must show an "invasion of a legally protected interest" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quoting _Lujan v. Defs. of Wildlife_, 504 U.S. 555, 560 (1992)). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing

standing and must "clearly … allege facts demonstrating each element." *Id.* at 338 (citations and internal quotation marks omitted).

As for the plaintiff Congressmen,- they are the candidates seeking election to federal office in November 2024 and in future elections. As candidates, they stand in a different position than other voters who will cast a ballot. The candidates cannot attain their respective federal-elected office without participating in Pennsylvania's state established election process. Hence, candidates, through that same federal election process, must obtain a tally of votes greater than their respective opponent(s). Therefore, the candidates have a concrete and particularized interest in ensuring that the final vote tally accurately reflects the legally valid votes cast. The candidate has an interest in <u>legitimately</u> winning or losing.

The threat of Pennsylvania failing to exclude ineligible UOCAVA applicants is an actual, imminent invasion of the Congressional candidate's legally protected interest because an inaccurate vote tally is a concrete and particularized injury to a federal candidate. *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020).

Congress intended to protect federal candidates from this type of injury with HAVA's preemption clause preempting inconsistent state laws, which violate HAVA's minimum standards, 52 U.S.C. § 21084.  And, HAVA's preemption provision applies to the requirements of 52 U.S.C. § 21083(a)(5)(A)(i-iii) for voter registration information verification which applies to UOCAVA voters.

In *Carson,* the appellate court recognized that the federal candidates in that case, presidential Electors, had a cognizable interest in ensuring that the final vote tally accurately reflect[ed] the legally valid votes cast. *Id.* An inaccurate vote tally is a concrete and particularized injury to federal candidates. *Id.* Indeed, the Congressmen must rely upon an accurate vote tally to achieve at least a claim to hold the federal office sought. A count of votes that includes legally invalid ballots is a particularized harm to the federal candidate. Notably, the harm cannot be undone in a post-election challenge; there is no process or procedure to identify and remove invalid tallied ballots.

The federal candidates also argued in *Carson,* and accepted by the court to establish standing, that the Secretary's use of a consent decree made the federal candidates' injury certainly impending, because the consent decree conflicted with the Legislature's mandates. *Id.* In the present case, the same is true. The Defendants' policy makes the Congressional candidates' injuries certainly impending because the policy conflicts with federal election law, HAVA and UOCAVA, during the Plaintiffs' respective election contests.

Essentially, if an allegedly unlawful state election policy makes the competitive landscape worse for a federal candidate than it would otherwise be if the policy were declared unlawful, those injured parties have the requisite concrete, non-generalized harm to confer standing. *Mecinas v. Hobbs*, 30 F.4th 890, 898 (9th Cir. 2022). Competitive standing recognizes the injury that results from being forced to

participate in an "illegally structure[d] competitive environment," *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 87 (D.C. Cir. 2005), a type of harm that the federal courts have identified in a variety of different contexts. *See, e.g., City of Los Angeles v. Barr*, 929 F.3d 1163, 1173 (9th Cir. 2019); *Preston v. Heckler*, 734 F.2d 1359, 1365 (9th Cir. 1984). Accordingly, a number of circuit courts have come to the same conclusion that candidates or parties have competitor standing. *See Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 907 (8th Cir. 2020) (per curiam); *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 544 (6th Cir. 2014); *see also Nelson v. Warner,* 12 F.4th 376, 384 (4th Cir. 2021).

The Defendants and Intervenors ignore the injury the Congressmen alleged as described above and as alleged in the amended complaint. *See e.g.,* Amend. Compl. ¶¶ 36–40, 159 (candidate participation in current and plans to participate in future elections); ¶ 17 (inclusion of ineligible ballots affect ultimate tally of votes regarding election outcome); ¶¶ 34, 111, 118, 138 (state policy deviating from federal law referred to and characterized as "illegal" election structure); ¶¶ 155, 158, 160 (state election structure created through state policy, and candidates forced to participate in that structure). *See* Defs. Memo. to Dismiss at 11, R. Doc. 30, at 15. And, the intervenors' memorandum supporting the motion to dismiss makes blatant, unconvincing assertions that the amended complaint fails to make allegations that are supported by law. *See e.g.,* Intervenors Memo. at 8–10, R. Doc. 29, 14–16.

Furthermore, the Defendants' reliance upon *Raines v. Byrd* and the accompanying arguments are misplaced. Def. Memo. to Dismiss at 8, R. Doc. 30, at 12. First, *Raines* addressed the issue of "legislative standing." *Raines,* 521 U.S. 811, 820 (1997). There, the Supreme Court noted that the act being challenged did not single out the plaintiff congressmen. *Id.* The claim was an "institutional injury," meaning the House or Senate. *Id.* Second, the claims were made as "members of Congress" and not in any "private capacity," but an injury that, "in a sense," runs with the "Members seat." *Id.* In other words, the Defendants are arguing from the inaccurate perspective of a generalized interest of existing representatives holding office making claims to their "right to vote or run for elected office." Def. Memo. to Dismiss at 9–10, R. Doc. at 13–14. That description does not fit this case.

Contrary to the Defendants' argument that the alleged illegal election structure "affect[s] all voters equally and are generalized grievances," voters can choose whether or not to cast ballots. Defs. Memo. to Dismiss at 10, R. Doc. 30, at 14. If an ineligible voter does cast a ballot, it is impossible to determine whether that particular ballot diluted the vote of an eligible voter's ballot. However, candidates are subject to the established and alleged illegal election process, and it is the *tally* of ballots that directly causes which candidate prevails. *Carson*, 978 F.3d at 1058.  *See* Plts. Compl. ¶¶ 18, 180, 183. If the election process allows ineligible ballots to be *tallied*, the harm is directed only to the candidates who are subject to and forced to participate in an "illegally

structure[d] competitive environment" which will ultimately determine who will hold the elected federal office. *Id.*; *Shays*, 414 F.3d 76, 87 (D.C. Cir. 2005).

The intervenors, DNC-PDP, suggest that the Defendants' edict regarding the verification of absentee voter registrations under UOCAVA to state election-officials as mere "guidance" and therefore, not state policy, is misplaced. Intervenors Memo. at 12, R. Doc. 29, at 18 citing *Ziccarelli v. Allegheny Cnty. Bd. of Elections,* 2021 WL 101683, at *5 n.6 (W.D. Pa. Jan. 12, 2021). There, the court's footnote relates to state election laws and the agency's interpretation of those laws. *Lutheran Home at Kane v. Dept. of Human Services,* 318 A.3d 164, 179 (Pa. Cmmw. 2024) (citing to three categories of an agency's interpretation of its regulations, ambiguous statutes; non-legislative rules).

The issue in this case is the Defendants' misinterpretation of an unambiguous *federal* law mandate under UOCAVA and HAVA.  The Defendants' directives and guidance conflict with UOCAVA and HAVA.  So, the Defendants' directives and guidance are preempted by UOCAVA and HAVA—according to the Supremacy Clause.  To be sure, in certain circumstances, a guidance document may be intended not to have a binding effect.  However, here, where the Defendants' directives and guidance are communicated to state election-officials  who are integrated into the voter registration information verification process, DOS's guidance is state policy.  In fact, a guidance document can be binding state policy when the agency acts as if the document issued is controlling in the field, if it treats the document in the same

manner as it treats a legislative rule, and if it leads private parties or public officials to believe the document is binding. *See e.g., N.W. Youth Services, Inc. v. Com., Dept. of Pub. Welfare,* 66 A.3d 301, 314–15 (Pa. 2013).

The final two elements for standing are met. The harm is directly traceable to DOS. DOS initiated the state policy at issue. Schmidt as the Commonwealth's chief election official. DOS's state policy is directed to state election officials who are integrated into the voter registration information verification process. The fact that counties tally the votes is of no consequence as the intervenors DNC-PDP suggest. Intervenors Memo. at 12, R. Doc. 29, at 18. The effect of the *final* tallies of ballots cast determine the winner or loser of a federal office, and is directly attributed to DOS's state policy. Hence, if prospective declaratory and injunctive relief is not granted, state election officials would necessarily be obligated to follow the Secretary's directives and guidance.

## II.     This Court has federal question jurisdiction.

This Court has jurisdiction under 28 U.S.C. § 1331 for Supremacy Clause federal preemption claims. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."). DOS argues that the Congressmen alleged that they "freely admit that the United States Constitution's

Supremacy Clause provides no individual cause of action." Defs. Memo. to Dismiss at 12, R. Doc. 30, at 16, citing to Amend. Compl. ¶ 175. DOS uses this interpretation of what might be averred to as a legal conclusion to launch an argument regarding private rights of action under HAVA and UOCVA. *Id.* at 12–14, R. Doc. 30, at 15–18.

DOS failed to read the full paragraph, which does refer to the ability of federal courts to issue injunctive relief when federal law preempts state regulations or here, a state policy. In this sense, the Supremacy Clause does create an independent right of action where a party alleges preemption of state law by federal law. *See Shaw,* 463 U.S. at 96 n. 14; *see also St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. V.I.,* 218 F.3d 232, 240 (3d Cir.2000) (''[A] state or territorial law can be unenforceable as preempted by federal law even when the federal law secures no individual substantive rights for the party arguing preemption.); *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.,* 730 F.3d 291, 317 (3d Cir. 2013). There is nothing to indicate that *Shaw* is no longer binding on this Court. *Lewis v. Alexander,* 685 F.3d 325, 346 n. 20 (3d Cir.2012) (even though the dissent in *Douglas v. Indep. Living Ctr. of S. California, Inc.,* 565 U.S. 606, 618 (2012) "strongly suggested that the Supremacy Clause does not provide a cause of action when Congress has declined to provide one, the Court's previous decision in *Shaw v. Delta Air Lines,* 'remains binding on us.'").

Likewise, PA Fair Elections has standing. Associations may have standing by asserting claims stemming from injuries they directly sustain. *See, e.g., Pa. Psychiatric. Soc'y v. Green Spring Health Servs., Inc.,* 280 F.3d 278, 283 (3d. Cir. 2002). Absent injury

to itself, an association may pursue claims solely as a representative of its members. *See, e.g., Public Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111 (3d Cir. 1997). By allowing associational standing, courts "recognize[ ] that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *International Union, United Auto., Aerospace & Agric. Implement Workers v. Broc*k, 477 U.S. 274, 290 (1986). Here, PA Fair Elections has Article III standing. *See generally,* Amend. Compl. ¶¶ 35, 173, 185.

## III.    The *Purcell* principle does not apply.

The Intervenors unpersuasively argue that the *Purcell* principle applies. Intervenors Memo. at 16-17, R. Doc. 29, 22-23. Plaintiffs agree that the *Purcell* principle—that federal courts should usually refrain from interfering with state election laws, policies or customs in the lead up to an election—is well-established. *See Purcell v. Gonzalez,* 549 U.S. 1, 127 (2006) (per curiam). The *Purcell* principle is reflected in subsequent Supreme Court  decisions. *See, e.g.,  Democratic National Committee v. Wisconsin State Legislature*, 141 S.Ct. 28, 30–31 (2020); *Andino v. Middleton*, 141 S.Ct. 9, 10 (2020); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (per curiam).  The Third Circuit explained in the recent case, *Kim v. Hanlon*, 99 F.4th 140 (3d Cir. 2024), that "*Purcell* is a consideration, not a prohibition, and it is just one among other considerations specific to election cases that we must weigh for injunctive relief[,]... in addition to the traditional considerations for injunctive relief." *Id.* at 160.  To be sure, "[e]lection rules must be

9

clear and judges should normally refrain from altering them close to an election. *Purcell* protects the status quo." *Carson v. Simon*, 978 F.3d 1051, 1062 (8th Cir. 2020).

But, the Constitution recognizes something else for Congressional elections. The design of electoral procedures is, at bottom, a job for the state legislature and for "Congress" who "may at any time by Law make or alter such Regulations."  U.S. Const. art. I, § 4, cl. 1, *see also Rucho v. Common Cause*, ⸺ U.S. ⸺, 139 S. Ct. 2484, 2495, 204 L.Ed.2d 931 (2019); *cf. DNC*, ⸺ U.S. ⸺, 141 S.Ct. at 29–30 (Gorsuch, J., concurring in denial of application for stay).  Further, in Elections Clause cases, there is no starting presumption that Congress does not intend to supplant state law, *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654 (1995), because the source of congressional power is the Elections Clause and not some other provision of the Constitution. As the Supreme Court has held, "Because the power the Elections Clause confers is none other than the power to pre-empt, the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Arizona v. Inter Tribal Council of Arizona, Inc.,* 570 U.S. 1, 14–15 (2013).

Here, the status quo--Congress's duly-enacted UOCAVA and HAVA voter registration information requirements for UOCAVA voters—was disrupted by DOS disregarding voter registration information verification requirements for UOCAVA voters.  When the constitutionally mandated locus for federal election decisions is

disregarded, whether by a federal court, a state court, a state agency, or a state official, the same rationale that works to prevent election interference by federal courts also works to prevent interference by other entities as well. *See DNC*, ⸺ U.S. ⸺, 141 S.Ct. at 31–32 (Kavanaugh, J., concurring in denial of application for stay) (defending appellate courts stepping in close to an election to remedy violations of *Purcell*).

The *Purcell* principle is a presumption against disturbing the status quo. The question here is who sets the status quo?  In this case, under the Elections Clause, Congress set the status quo by enacting UOCAVA's and HAVA's voter registration information requirements for UOCAVA voters.  The state Defendants upset the status quo by directives, guidance and actions to not complete voter registration information requirements for UOCAVA voters—these same requirements are completed for non-UOCAVA voters.

Therefore, it is the Court's duty, consistent with *Purcell*, to at least preserve the possibility of restoring the status quo. The consequences of prospective declaratory or injunctive relief and the concerns over resulting election administration issues and loss of public confidence in the election that animate the *Purcell* principle are not lost. But, even acknowledging that, the challenges that will stem from prospective declaratory or injunctive relief are preferable to a post-election scenario where ballots from non-verified  and ineligible UOCAVA voters, sponsored by Iran, are intermingled with ballots counted according to a legally valid verification process.  This injury could not be undone by a post-election challenge as the ballots cannot be removed from the

tally after the election because ballot secrecy would prevents the tracing after the invalid ballots are separated from the envelopes and intermingled with valid ballots.

## IV. Laches does not apply.

The Defendants and intervenors have also raised laches.  Defs. Memo. to Dismiss at 17-21; R. Doc. 30, 21-25; Intervenors Memo. at 15-16, R. Doc. 29, 21-22. Laches consists of two elements which Defendants and intervenors must both prove: (1) inexcusable delay in bringing suit, and (2) prejudice to the defendant as a result of the delay. *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.,* 401 F.3d 123, 138 (3rd Cir.  2005).  "The length of delay, while not mandating the outcome, does control burdens of proof. If a plaintiff sleeps on his rights for a period of time greater than the applicable statute of limitations, then 'the plaintiff (must) . . . come forward and prove that his delay was excusable and that it did not . . . prejudice the defendant.'" *Gruca v. U.S. Steel Corp.,* 495 F.2d 1252, 1259 (C.A.3 (Pa.), 1974) quoting *Burke v. Gateway Clipper,* supra, 441 F.2d at 949.

In this case, laches does not apply because there is no inexcusable delay and there is no prejudice to defendants.  The initial complaint was filed on September 30, 2024.  The amended complaint (and the original compliant) expressed concern about foreign nationals interfering with falsified FPCA for ballots to unduly influence U.S. elections. R.Doc.1, Compl. ¶ 18; R.Doc.  Am. Compl. ¶ 19.

The U.S. Department of Justice on September 27, 2024, unsealed an indictment of three members of the Iranian Republican Guard Corps (IRGC) who had

successfully hacked a presidential candidate's campaign.  Source:

https://www.justice.gov/opa/pr/three-irgc-cyber-actors-indicted-hack-and-leak-

operation-designed-influence-2024-us (last visited: Oct. 16, 2024).  The DOJ

announced that the activity "was part of Iran's continuing efforts to stoke discord,

erode confidence in the U.S. electoral process, and unlawfully acquire information

relating to current and former U.S. officials that could be used to advance the malign

activities of the IRGC, including ongoing efforts to avenge the death of Qasem

Soleimani, the former commander of the IRGC."  *Id.* Similarly, two Iranian nationals,

who are currently wanted by the FBI, were charged with interfering in the 2020

election.  The Iranians were charged with successfully breaching at least one statewide

voter registration database and attempting to breach voter registration systems in

eleven other states.  *Id.* Using data from their successful Alaska breach, they created

thousands of fraudulent UOCAVA applications and federal write-in absentee

ballots.  *Id.*  The IRGC has demonstrated a knowledge of the UOCAVA

vulnerabilities and a willingness to violate the law to interfere in the 2024 election. *Id.*

Based on these facts, there is no inexcusable delay from the time the U.S.

Department of Justice unsealed the indictment on September 27 and when the

complaint was filed on September 30.  It is a total of 3 days.  The Defendants have

had the same information since September 27, but have not yet repealed their

federally-preempted directives and guidance on UOCAVA voters to prevent

interference by IRGC or similar groups.  And, in turn, there is no prejudice in the

three-day delay because Defendants are interested too in stopping IRGC or similar groups from interfering in the UOCAVA voting and unlawfully impacting the election.

Finally, laches cannot apply to dismiss Plaintiffs' claims in their entirety because the Plaintiffs seek relief for the 2026 election and beyond.  With respect to those future elections, there is no untimeliness and there is no prejudice.

**V.      Pennsylvania's 67 counties are not necessary, nor indispensable, parties as prospective declaratory or injunctive relief is redressable in their absence.**

Defendants' motion to dismiss included Rule 12(b)(7) governing the failure to join all 67 counties as indispensable parties.  Federal Rule of Civil Procedure 19 specifies the circumstances in which the joinder of a particular party is compulsory. The Court must first determine whether the absent counties should be joined as "necessary" parties under Rule 19(a).  *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3rd Cir. 2007). Under Rule 19(a), the absent counties are not necessary parties because (1) in their complete absence, complete relief regarding the state defendants' directives and guidance can be accorded among those already parties and (2) the counties have no plausible interest relating to the subject of the action—the legality of the state defendants' directives and guidance—to be impaired or impeded by the Court's judgment.

First, the absent counties are not necessary parties under Rule 19(a) because complete relief regarding the state defendants' directives and guidance can be

accorded among those already parties even though the counties are absent.  The federal and state laws show that the counties are not the implementers of UOCAVA and HAVA in Pennsylvania. So, the counties' presence as a party is not necessary to afford complete relief regarding the state defendants' directives and guidance.

Instead, federal and state law make the Secretary of the Commonwealth the chief election official for UOCAVA and HAVA.  Under 25 P.S. § 3503, the Secretary "the official in the Commonwealth responsible for implementing this chapter and the Commonwealth's responsibilities under the Uniformed and Overseas Citizens Absentee Voting Act (Public Law 99-410, 42 U.S.C. § 1973ff et seq.)." The statute is consistent with UOCAVA. Under 52 U.S.C. § 20302(a) (UOCAVA), the federal law declares that "each State shall—…(6) in addition to any other method of registering to vote or applying for an absentee ballot in the State, establish procedures— (A) for absent uniformed services voters and overseas voters to request by mail and electronically voter registration applications and absentee ballot applications with respect to general, special, primary, and runoff elections for Federal office in accordance with subsection (e)."

Indeed, 25 P.S. § 1201 makes the DOS responsible for developing, establishing, implementing and administering SURE—the HAVA-required "Statewide Uniform Registry of Electors."   Again, state law is consistent with 52 U.S.C. § 21083 (HAVA): "[E]ach State, acting through the chief State election official, shall implement…a

15

single, uniform, official, centralized, interactive computerized statewide voter registration list."[1]

Under HAVA and state law, the Secretary is also responsible for facilitating access to driver's license and social security administration data used for the UOCAVA and HAVA voter registration information verification. *See* 52 U.S.C. § 21083(a)(1)(B) (federal requirements for agreements with state motor vehicle authority and Commissioner of Social Security).  This data is used by the Secretary, not the counties, to verify (match) the registration applicant's driver's license information or social security number with the registration application. The Secretary also emails the ballots to federal only UOCAVA voters.  So, because the State is the implementer of UOCAVA and HAVA and implements the UOCAVA voter identification information verification, the state defendants are necessary parties under Rule 19(a) for a federal preemption challenge of the state defendants' directives and guidance, but the counties are not necessary parties.

Second, the absent counties are not necessary parties under Rule 19(a) because the counties have no plausible interest relating to the subject of the action—the legality of the Defendants' directives and guidance.  The Defendants instituted the

---

[1] Consistently, the National Voter Registration Act, 52 U.S.C. § 20509 (NVRA), has a similar provision, "Each State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities under this chapter."  Likewise, 25 P.S. § 1323 provides, "The secretary has the primary responsibility for implementing and enforcing the driver's license voter registration system created under this section."

election policies and directives—not the counties.  To be sure there may be indirect consequences to the counties if the Court's judgment affects the Defendants; UOCAVA and HAVA procedures.  But, that is a consequence of the Court's decision, not an "interest" in the subject of the action.

Two cases involving the counties as necessary or indispensable parties are distinguishable.  First, in *Black Political Empowerment Project v. Schmidt*, 2024 WL 4181592, at *1 (Pa. 2024), the Pennsylvania Supreme Court vacated the Commonwealth Court decision for absence of the counties as parties.  But, the claims in *Black Political Empowerment Project* involved state law claims determining "whether two provisions of the Pennsylvania Election Code that require electors of the Commonwealth of Pennsylvania, under 25 P.S. §§ 3146.6(a) and 3150.16(a) (dating provisions), to date the declaration of the elector printed on the second, or outer, envelope of absentee and mail-in ballots violate the free and equal elections clause of article I, section 5 of the Pennsylvania Constitution, Pa. Const. art. I, § 5.  *Black Political Empowerment Project*, 2024 WL 4002321, at *1 (Pa. Cmwlth. 2024), vacated by *Black Political Empowerment Project*, 2024 WL 4181592 (Pa. 2024).  And, the dating provisions directly involved the counties because they received the ballots which needed to be dated.  *See, e.g.,* 25 P.S. § 3150.16 ("(c)… a completed mail-in ballot must be received in the office of the county board of elections…").

The Plaintiffs' federal preemption claims are distinguishable from *Black Political Empowerment Project* because the Plaintiffs' federal preemption claims are based on the

Secretary's UOCAVA and HAVA directives and guidance issued in the Secretary's role under federal and Pennsylvania law as the chief implementer of UOCAVA and HAVA.  Here again, the counties have no interest in a federal preemption claim against the Secretary's UOCAVA and HAVA directives and guidance as the chief implementer of UOCAVA and HAVA.

Likewise, in *In re Canvass of Absentee and Mail-in Ballots of November 3, 2020 General Election*, 241 A.3d 1058, 1078, 663 Pa. 283, 318 (Pa. 2020), the application of 25 P.S. § 3146.6 required filling out the ballot envelope.  In that decision, the Pennsylvania Supreme Court noted that the "Secretary has no authority to order the sixty-seven county boards of election to take any particular actions with respect to the receipt of ballots." *Id.,* n. 6.  Again, this decision involves a state law directly regulating county boards and the receipts of ballots. Whereas, the present case involves federal preemption claims against the Secretary's UOCAVA and HAVA directives and guidance issued in the Secretary's role under federal and Pennsylvania law as the chief implementer of UOCAVA and HAVA.  As mentioned above, the Secretary controls the process for UOCAVA voter registration information verification because the Secretary, not the counties, implements UOCAVA and HAVA including verifying the voter registration information by matching the UOCAVA driver's license information and social security numbers data bases and emailing UOCAVA ballots. *See* 52 U.S.C. § 21083(a)(1)(B) (state agreements required for accessing driver's license data from

state motor vehicle authority and social security numbers from the Social Security

Administration).

## VI. The Plaintiffs' claims are plausible because UOCAVA and HAVA preempt the DOS's directives and guidance.

The Defendants and Intervenors make unpersuasive arguments that Plaintiffs'

claims are not plausible and that DOS's directives and guidance do not conflict with

UOCAVA and HAVA.  Defs. Memo. to Dismiss at 17-21; R. Doc. 30, 21-25;

Intervenors Memo. at 15-16, R. Doc. 29, 21-22. These arguments on the merits

overlap with the briefing concerning the motion for preliminary injunction. So,

Plaintiffs will be more concise in their argument on the merits here.

The Defendants and Intervenors err by claiming no federal preemption.  There

is a conflict between DOS's directives and guidance, on one hand, and UOCAVA and

HAVA, on the other hand. UOCAVA requires states to first determine if a voter

registration applicant is qualified to receive those voting privileges. The federal law

requires all states to "accept and process…any *otherwise valid* voter registration

application and absentee ballot application…" [52 U.S.C. § 20302(a)(a)(2)] before

triggering the privileges for UOCAVA eligible voters. (Emphasis added). To verify

identity and eligibility and to determine if an application is otherwise valid, HAVA

establishes the minimum standards. 52 U.S.C. § 21083(a)(5)(A)(i-iii)(verification of

voter registration information). Applicants who seek to vote in a federal election must

provide, at the time of registration, a valid driver's license number. *Id*. If the individual

has not been issued a driver's license, they may use the last four digits of their social security number. For applicants who have no DLN and who have not been issued a SSN, HAVA has a Special Rule that a State can assign them a unique identifying number and verify their identity and eligibility using other approved documents. *Id.* HAVA has a preemption clause for inconsistent state laws, violating minimum standards, 52 U.S.C. § 21084, which applies to 52 U.S.C. § 21083(a)(5)(A)(i-iii).

In direct conflict with federal and state law, DOS has issued directives and guidance to state election-officials to exempt UOCAVA applicants entirely from any verification requirements under 52 U.S.C. § 21083(a)(5)(A)(i-iii). Without such verification of UOCAVA voters, Pennsylvania elections could be subject to manipulation by foreign nations or others seeking to disrupt the election process.

## Conclusion

The Defendants motion to dismiss should be denied.

Dated: October 17, 2024

/s/Erick G. Kaardal
Erick G. Kaardal (WI No. 1035141)
Elizabeth A. Nielsen (PA No. 335131)*
Mohrman, Kaardal & Erickson, PA
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
kaardal@mklaw.com
nielsen@mklaw.com
*Attorneys for Plaintiffs*
*Applications for Admission pending

/s/Karen DiSalvo
Karen DiSalvo (PA No. 80309)
Election Research Institute
Mohrman, Kaardal & Erickson
1451 Quentin Road, Suite 232
Lebanon, PA 17042
kd@election-institute.com
*Attorney for Plaintiffs*

## Use of AI Technology Certification

Counsel attests that appropriate steps to verify whether AI technology systems have been used in preparation of this submission and if so, appropriate steps were taken, to the best of counsel's ability, to verify the truthfulness and accuracy of facts and citations of that content before submission to this Court. This submission did rely upon the ordinary or customary research tools and other available research sources such as, but not limited to, Westlaw or Lexis.

Dated: October 17, 2024

/s/Erick G. Kaardal
Erick G. Kaardal (WI No. 1035141)
Elizabeth A. Nielsen (PA No. 335131)*
Mohrman, Kaardal & Erickson, PA
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
kaardal@mklaw.com
nielsen@mklaw.com
*Attorneys for Plaintiffs*
*Applications for Admission pending


/s/Karen DiSalvo
Karen DiSalvo (PA No. 80309)
Election Research Institute
Mohrman, Kaardal & Erickson
1451 Quentin Road, Suite 232
Lebanon, PA 17042
kd@election-institute.com
*Attorney for Plaintiffs*