# UNPUBLISHED OPINIONS

**Pursuant to Local Rule 7.8(a)**

Land v. Delaware River Basin Commission, Not Reported in Fed. Supp. (2016)

2016 WL 7256945

2016 WL 7256945
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Wayne LAND and Mineral Group, LLC, Plaintiff,

v.

DELAWARE RIVER BASIN
COMMISSION, Defendant,
and
Delaware Riverkeeper Network and
Maya K. Van Rossum, the Delaware
Riverkeeper, Interveners-Defendants

3:16-CV-00897
|
Filed 12/15/2016

### Attorneys and Law Firms

Christopher R. Nestor, Overstreet & Nestor, LLC, Harrisburg, PA, David R. Overstreet, Overstreet & Nestor, LLC, Pittsburgh, PA, Jeffrey Belardi, Belardi Law Offices, Scranton, PA, Joseph Robert Rydzewski, Spall, Rydzewski & Anderson, P.C., Hawley, PA, for Plaintiff.

Jordan B. Yeager, Curtin & Heefner LLP, Doylestown, PA, Kenneth J. Warren, Warren Environmental Counsel LLP, Bryn Mawr, PA, John J. Zimmerman, Zimmerman & Associates, Potomac, MD, for Defendant/Intervenors-Defendants.

### MEMORANDUM OPINION

Robert D. Mariani, United States District Judge

 **\*1** Presently before the Court are two "Motions for Permission to Appear, File Brief, and Make Oral Argument, if necessary, as Amicus Curiae on Behalf of the Plaintiff." (Docs. 37, 53). The first motion was filed by non-parties Lackawaxen Honesdale Shippers Association, Northern Wayne Property Owner's Alliance, Inc., and Landowner Advocates of New York, Inc., (Doc. 37), and the second motion was filed by non-parties County of Wayne and the Wayne Economic Development Council. (Doc. 53). For the reasons that follow, the motions will be granted in part and denied in part.

### I. INTRODUCTION AND PROCEDURAL HISTORY

On May 17, 2016, Plaintiff Wayne Land & Mineral Group LLC filed a Complaint against Defendant Delaware River Basin Commission. (Doc. 1). In the Complaint, Plaintiff asks the Court to enter a declaratory judgment holding that the Defendant lacks jurisdiction or the authority to require it to seek prior approval for Plaintiff's intended plan to construct a well pad and drill a natural gas well on property which Plaintiff owns in Wayne County, Pennsylvania (75 acres of which is located in the Delaware River Basin).

The Delaware Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper, filed a motion to intervene on July 5, 2016, (Doc. 10), which the Court granted on September 12, 2016. (Doc. 26). Thereafter, non-parties Lackawaxen Honesdale Shippers Association, Northern Wayne Property Owner's Alliance, Inc., and Landowner Advocates of New York, Inc. filed the instant motion on October 13, 2016. (Doc. 37). Non-parties County of Wayne and the Wayne Economic Development Council filed their motion on November 30, 2016. (Doc. 53).

### II. ANALYSIS

"Meaning friend of the court, *amicus curiae* has historically been used to describe an impartial individual who suggests the interpretation and status of the law, gives information concerning it, and whose function is to advise in order that justice may be done, rather than to advocate a point of view so that a cause may be won by one party or another." *Sciotto v. Marple Newtown Sch. Dist.*, 70 F. Supp. 2d 553, 554 (E.D. Pa. 1999) (internal citation and quotation marks omitted).

Amici status is typically granted where the following conditions are present: (1) petitioner has a 'special interest' in the particular case, *see Waste Management of Pa. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995); (2) petitioner's interest is not represented competently or at all in the case, *see Liberty Lincoln v. Ford Marketing Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993); (3) the proffered information is timely and useful, *see Hoptowit v. Ray*, 682 F.3d 1237, 1260 (9th Cir. 1982); and (4) petitioner is not partial to a particular outcome in the case, *see Yip v. Pagano*, 606 F. Supp. 1566 (D.N.J. 1985), *but see Hoptowit*, 682 F.2d at 1260 ("there is no rule ... that amici be totally disinterested.").

Land v. Delaware River Basin Commission, Not Reported in Fed. Supp. (2016)

2016 WL 7256945

*Id* at 555.

Courts in this Circuit have found that participation as *amicus* at the level of the trial court, as opposed to the appellate court, "is rather more the exception than the rule." *Abu-Jamal v. Price*, Civ. A. No. 95-618, 1995 WL 722518, at *1 (W.D. Pa. Aug. 25, 1995); *see also Yip*, 606 F. Supp. at 1568 ("At the trial level, where issues of fact as well as law predominate, the aid of *amicus curiae* may be less appropriate than at the appellate level."). Nevertheless, "[t]he extent, if any, to which an *amicus curiae* should be permitted to participate in a pending action is solely within the broad discretion of the district court." *Waste Management*, 162 F.R.D. at 36 (citations omitted); *see also In re Nazi Era Cases Against German Defendants Litig.*, 153 Fed.Appx. 819, 827 (3d Cir. 2005) ("[A] district court's decision to accept or reject an amicus filling is entirely within the court's discretion.").

### A. Lackawaxen Honesdale Shippers Association, Northern Wayne Property Owner's Alliance, Inc., & Landowner Advocates of New York, Inc.

**\*2** The Lackawaxen Honesdale Shippers Association is "a non-Profit Association organized and existing under the laws of the State of Pennsylvania for the purpose of making available, promoting and protecting interests of railroad users in Wayne County and Pike County Pennsylvania." (Doc. 37-1, at 1). Thomas Shepstone, the manager of the Lackawaxen Honesdale Shippers Association, is further authorized to act on behalf of not-for-profit corporations Northern Wayne Property Owners Alliance, Inc. and Landowner Advocates of New York, Inc. [1] Both the Defendant and the Intervenors-Defendants oppose the motion. (Docs. 41, 42).

Turning to the four factors identified in *Sciotto*, the Court first notes that it is the movants burden to demonstrate that it has a "particularized kind of special interest" appropriate for *amici* status. *Sciotto*, 70 F. Supp. 2d at 555. According to the movants, "[t]he question at issue in this case is one that is of vital interest to the Movants and to its members and the general public in that the outcome of this case will significantly affect property rights and values, railroad use, industry growth, business and employment and regional commerce in Wayne and Pike Counties, Pennsylvania and New York's Southern Tier." (Doc. 37, at 2). They further allege that "resolution of the action will have a vital impact

on the manner of which members may use their property rights as deeded to them or pay for and use rail service, receive fair and just compensation for their property rights, retain employment and industries in their region and for the members financial well-being, and to succeed in assisting established business and possible growth of new businesses in these areas." (Doc. 37-1, at 2). The Court finds that the movants have articulated a sufficient interest in the litigation and therefore have satisfied the first factor.

Second, the Court finds that the movants interests— specifically those pertaining to railroads, railroad uses, and landowners in the Southern Tier of New York—do not appear to be represented in this matter. Third, the Court finds that the proffered information to be both timely and potentially useful to the resolution of the issues before the Court, and rejects Defendant's argument that the motion is untimely because "[b]riefing on the Motion to Dismiss is complete, and reopening the briefing would delay a ruling." (Doc. 42, at 8).

Finally, the Court considers whether the movant is partial to a particular outcome. Defendant and the Intervenors-Defendants oppose the motion on the basis that the movants are not neutral parties and therefore should not be permitted to file an amicus brief, directing the Court to the affidavit of Thomas Shepstone. (Doc. 41, at 5). The Intervenors-Defendants note that "Mr. Shepstone is an advocate for the shale gas industry. His previous employers include Energy in Depth, an organization dedicated to promoting shale gas exploration. Mr. Shepstone currently works at Natural Gas Now which, as its name suggests advocates for natural gas development." [2] (Doc. 45, at 5). Accordingly, the Defendant and Intervenors-Defendants maintain that the movant's motion must be denied because they are partial to a particular outcome.

**\*3** When a movant "has a specific pecuniary interest," *Sciotto*, 70 F. Supp. 2d at 555, in a party's perspective of a particular case, or where the "amici represents business interests that will be ultimately and directly affected by the court's ruling on the substantive matter before it, amicus participation is not appropriate." *Id.* (internal citation and quotation marks omitted). However, "[w]hile the partiality of an *amicus* is a factor to consider in deciding whether to allow participation, there is no rule ... that amici must be totally disinterested." *Waste Management*, 162 F.R.D. at 36 (internal citation and quotation marks omitted). Indeed, "[p]arties with pecuniary and policy interests have been regularly allowed to

Land v. Delaware River Basin Commission, Not Reported in Fed. Supp. (2016)

2016 WL 7256945

appear as *amici*." *United States v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002).

Upon consideration of the relevant factors, the Court will exercise its discretion and grant in part and deny in part the motion as follows: non-parties Lackawaxen Honesdale Shippers Association, Northern Wayne Property Owner's Alliance, Inc., and Landowner Advocates of New York, Inc. may file a joint brief, not to exceed ten pages, as *amicus curiae* on behalf of the Plaintiff. No other participation will be permitted.

### B. County of Wayne & Wayne
### Economic Development Council

Non-parties County of Wayne and the Wayne Economic Development Council, through the same counsel as non-parties Lackawaxen Honesdale Shippers Association, Northern Wayne Property Owner's Alliance, Inc., and Landowner Advocates of New York, Inc., also requests leave to appear as *amicus* on behalf of the Plaintiff and assert that they do so "to protect their governing authority and the property rights of its residents as duly elected members of Wayne County." (Doc. 54, at 4). Both the Defendants and Intervenors-Defendants oppose the motion. (Docs 57, 60).

Applying the four *Sciotto* factors identified above, the Court first finds that the movants have some interest in the litigation, although the Court questions whether the interest is sufficiently specialized and concrete. Second, the Court finds that the movants' interest may not be adequately represented in this matter, but notes that the movants and Plaintiff appear to share the same or similar interests. Third, the Court finds that the movants' submission is timely and that it may have some usefulness to the resolution of matters before the Court. Finally, the Court notes that, although the movants may be partial to a particular outcome, that is not a *per se* bar to participation as *amicus*. Accordingly, the Court will exercise its discretion and grant in part and deny in part the movants motion as follows: the County of Wayne and Wayne Economic Development Council may file a joint brief, not to exceed ten pages, as *amicus curiae* on behalf of the Plaintiff. No other participation will be permitted. [3]

### III. <u>CONCLUSION</u>

For the reasons set forth above, the motions will be granted in part and denied in part. A separate order follows.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 7256945

## Footnotes

1  Nowhere in the Movants submissions do they identify the purposes of Northern Wayne Property Owners Alliance, Inc. or Landowner Advocates of New York, Inc. However, Defendant notes that the Northern Wayne Property Owners Alliance Inc., "is an association of property owners who have leased natural gas and/or mineral interests to energy companies," (Doc. 42, at 3), whereas Landowner Advocates of New York, Inc. is an organization that consists of "referenced landowners in the Southern Tier of New York." (*Id.* at 11).

2  The Intervenors-Defendants further note that Mr. Shepstone "refers to the Governor of the State of New York, Andrew Cuomo, as 'Corruptocrat' and accuses the Governor of running the state 'like a mob family.' " (Doc. 41, at 5). Mr. Shepstone has also referred to the Intervenor-Defendants "as 'a bitter fringe group' which has 'morphed into a cult of personality,' " and has argued "that 'fractivism' is a 'mental illness.' " *Id.* Mr. Shepstone is further alleged to refer "to the National Resources Defense Council as a 'den of thieves,' " and has referred to "a Geisinger Health study on natural gas development as a 'hit job' orchestrated by a doctor" he refers to "as a 'radical,' a 'renewables utopian' and a 'shale hater' who has 'produced one junk science study after another.' " (*Id.* at 5-6).

**Land v. Delaware River Basin Commission, Not Reported in Fed. Supp. (2016)**

2016 WL 7256945

3    The Third Circuit has noted that, as a general rule, an amicus *curiae* may only participate in oral argument "for extraordinary reasons." *Am. Coll. of Obstetricians & Gynecologists Pennsylvania Section v. Thomburgh*, 699 F.2d 644, 646 (3d Cir. 1983) (citing Fed. R. App. P. 29). Because all of the movants have failed to identify any "extraordinary reasons" necessitating their participation in oral argument, the Court will deny the motions in this respect.

---

**End of Document**                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4406909 (Table)
Only the Westlaw citation is currently available.
Supreme Court of Pennsylvania.

REPUBLICAN NATIONAL COMMITTEE and
Republican Party of Pennsylvania, Petitioners

v.

Al SCHMIDT, in His Official Capacity as Secretary
of the Commonwealth, and All 67 County Boards of
Elections (Adams County Board of Elections; Allegheny
County Board of Elections; Armstrong County Board of
Elections; Beaver County Board of Elections; Bedford
County Board of Elections; Berks County Board of
Elections; Blair County Board of Elections; Bradford
County Board of Elections; Bucks County Board of
Elections; Butler County Board of Elections; Cambria
County Board of Elections; Cameron County Board of
Elections; Carbon County Board of Elections; Centre
County Board of Elections; Chester County Board of
Elections; Clarion County Board of Elections; Clearfield
County Board of Elections; Clinton County Board
of Elections; Columbia County Board of Elections;
Crawford County Board of Elections; Cumberland
County Board of Elections; Dauphin County Board
of Elections; Delaware County Board of Elections;
Elk County Board of Elections; Erie County Board of
Elections; Fayette County Board of Elections; Forest
County Board of Elections; Franklin County Board of
Elections; Fulton County Board of Elections; Greene
County Board of Elections; Huntingdon County Board of
Elections; Indiana County Board of Elections; Jefferson
County Board of Elections; Juniata County Board of
Elections; Lackawanna County Board of Elections;
Lancaster County Board of Elections; Lawrence
County Board of Elections; Lebanon County Board of
Elections; Lehigh County Board of Elections; Luzerne
County Board of Elections; Lycoming County Board
of Elections; McKean County Board of Elections;
Mercer County Board of Elections; Mifflin County
Board of Elections; Monroe County Board of Elections;
Montgomery County Board of Elections; Montour
County Board of Elections; Northampton County Board
of Elections; Northumberland County Board of Elections;
Perry County Board of Elections; Philadelphia County
Board of Elections; Pike County Board of Elections;
Potter County Board of Elections; Schuylkill County
Board of Elections; Snyder County Board of Elections;
Somerset County Board of Elections; Sullivan County
Board of Elections; Susquehanna County Board of
Elections; Tioga County Board of Elections; Union
County Board of Elections; Venango County Board
of Elections; Warren County Board of Elections;
Washington County Board of Elections; Wayne County
Board of Elections; Westmoreland County Board
of Elections; Wyoming County Board of Elections;
and York County Board of Elections), Respondents

No. 108 MM 2024
|
October 5, 2024

## ORDER

PER CURIAM

**\*1  AND NOW,** this 5th day of October, 2024, Petitioners'
Application for the Exercise of King's Bench or Extraordinary
Jurisdiction is hereby **DENIED**. *See Stilp v. Hafer*, 553 Pa.
128, 718 A.2d 290, 292 (1998) ("Laches .. bars relief when
a complaining party is guilty of want of due diligence in
failing to promptly institute an action to the prejudice of
another."); *Kelly v. Commonwealth*, 663 Pa. 114, 240 A.3d
1255 (2020) (lack of due diligence demonstrated where action
could have been brought at an earlier date and prejudice to
voters would result from disruptive late filing). King's Bench
jurisdiction will not be exercised where, as here, the alleged
need for timely intervention is created by Petitioners' own
failure to proceed expeditiously and thus, the need for timely
intervention has not been demonstrated. *See In re Bruno,*
627 Pa. 505, 101 A.3d 635, 670 (2014) ("[T]he Court will
generally employ the King's Bench authority when the issue
requires timely intervention by the court of last resort of the
Commonwealth and is one of public importance."). [1]

Further, Petitioners' Application for the Exercise of King's
Bench jurisdiction over *Genser v. Butler County Board of
Elections*, 1074 & 1085 C.D. 2024, 2024 WL 4051375,
*appeal granted in part*, 2024 WL 4248971 (Pa. Sept., 20,
2024), is **DENIED**, as this Court has assumed appellate
jurisdiction of that matter. The Application for Leave to
Amend Answer filed by Respondents Allegheny, Bucks,

Chester, Montgomery and Philadelphia is **GRANTED**. Petitioners' Application for Relief to File an Exhibit Under Seal and Application for Relief to File Supplemental Response to Application for Leave to Intervene are **DENIED**. The Applications of Faith A. Genser, Frank P. Matis, Center for Coalfield Justice, Washington Branch NAACP, Bruce Jacobs, Jeffrey Marks, June Devaughn Hython, Erika Worobec, Sanda Macioce, Kenneth Elliott, David Dean, the Democratic National Committee and the Pennsylvania Democratic Party to Intervene are **DISMISSED AS MOOT**.

Justice Brobson files a concurring statement in which Justice Mundy joins.

JUSTICE BROBSON, concurring

 **\*2** I agree with the *per curiam* disposition of this matter. As this Court stated in *New PA Project Education Fund v. Schmidt* (Pa., No. 112 MM 2024, filed Oct. 5, 2024) (PCO), "[t]his Court will neither impose nor countenance substantial alterations to existing laws and procedures during the pendency of an ongoing election." [1]

Petitioners do raise some important questions with respect to the authority of county boards of election to create and implement their own "notice and cure" procedures under the Election Code [2] absent express legislative authority to do so and, if they do, whether the varied "notice and cure" practices and policies from county-to-county violate Article I, Section 5 [3] and/or Article VII, Section 6 [4] of the Pennsylvania Constitution. That said, the 2024 General Election is underway. Petitioners, however, could have pursued these challenges in a more-timely fashion. Deciding these questions at this point would, in my view, be highly disruptive to county election administration. Moreover, I can see the potential need to develop a factual record in this matter, which could prove difficult in the compressed timeframe available to us.

The decision to deny the application, however, does not mean that these important questions should not be decided in advance of future elections. Petitioners, or anyone else with standing for that matter, may present these challenges after the impending election for consideration by an appropriate court with appropriate parties in the ordinary course.

Justice Mundy joins this concurring statement.

**All Citations**

Slip Copy, 2024 WL 4406909 (Table)

---

## Footnotes

1    In September 2022, approximately two months before the General Election, Petitioners filed a petition for review in the Commonwealth Court's original jurisdiction against the acting Secretary of the Commonwealth and all sixty-seven County Boards. In that case, as here, they challenged the implementation of county-level notice and cure procedures for defective absentee and mail-in ballots. Ultimately, the Commonwealth Court dismissed the action, concluding that it lacked jurisdiction over Petitioners' claims. *Republican Nat'l Comm. v. Schmidt* (Pa. Cmwlth., No. 447 M.D. 2022 at 28, filed March 23, 2023) (unreported decision) (concluding that "jurisdiction for an action challenging a [c]ounty [b]oard's development and implementation of notice and cure procedures properly lies in the respective [c]ounty's court of common pleas."). Three election cycles have since passed, and the Petitioners have not challenged any of the county notice and cure policies in a court of common pleas. Petitioners filed their instant Application on September 18, 2024.

1    *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006) (per curiam) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase."); *See also Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) ("Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so.").

2     Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2601-3556.

3     "Elections shall be free and equal; and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." Pa. Const. art. I, § 5.

4     "All laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the State ...." Pa. Const. art. VII, § 6.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 2053773
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

MARYLAND ELECTION
INTEGRITY, LLC, et al., Plaintiffs,

v.

MARYLAND STATE BOARD
OF ELECTIONS, Defendant.

Civil Case No.: SAG-24-00672
|
Signed May 8, 2024

**Attorneys and Law Firms**

C. Edward Hartman III, Hartman Attorneys at Law,
Annapolis, MD, for Plaintiffs.

Daniel Michael Kobrin, Office of the Attorney General, Civil
Litigation, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

Stephanie A. Gallagher, United States District Judge

**\*1** Presently pending before this Court are Plaintiffs'
Motion for a Temporary Restraining Order and Preliminary
Injunction, ECF 20, and Defendant's Motion to Dismiss
Plaintiffs' Amended Complaint, ECF 24. Plaintiffs' Motion
seeks to prevent Defendant Maryland State Board of
Elections from administering or certifying the 2024 primary
and general elections until they are rendered secure and
compliant with federal and state law. Defendant's Motion
seeks to dismiss the case for lack of subject matter
jurisdiction. This Court has reviewed the relevant briefing
and exhibits. ECF 25, 31, 43. [1] No hearing is necessary. *See*
Loc. R. 105.6 (D. Md. 2023). For the following reasons,
Defendant's Motion is granted and Plaintiffs' Motion is denied
as moot.

## I. BACKGROUND

On April 8, 2024, Plaintiffs Maryland Election Integrity,
LLC ("Maryland Election Integrity") and United Sovereign
Americans, Inc. ("United Sovereign Americans") filed an
Amended Complaint against Defendant Maryland State
Board of Elections. ECF 16.

Maryland Election Integrity is a Maryland limited liability
company containing members who are registered voters in
Maryland. *Id.* ¶ 9. The company was "created for the purpose
of resolving violations of Maryland law and restoring trust
in Maryland Elections." *Id.* ¶ 49. Kate Sullivan, although
not named as a Plaintiff, is a member of Maryland Election
Integrity and a resident of Baltimore County. *Id.* ¶ 10. She
canvassed Baltimore County and found allegedly inaccurate
voter registration records. *Id.* She claims to be "personally
injured" by the inaccurate records, which "allowed otherwise
ineligible voters to vote, thus diluting her vote." *Id.* ¶ 46.
Similarly, other members of Maryland Election Integrity
claim that their votes have been diluted. *Id.* ¶ 197. United
Sovereign Americans is a nonprofit corporation incorporated
in Missouri. *Id.* ¶ 2. The company "is not seeking a distinct
form of relief" from that sought by Maryland Election
Integrity. *Id.* ¶ 13.

In their Amended Complaint, Plaintiffs allege that Defendant
violated certain provisions of the National Voter Registration
Act ("NVRA"), 52 U.S.C. §§ 20501, 20507, Help America
Votes Act ("HAVA"), 52 U.S.C. §§ 21081, and Maryland
election code, MD. CODE ANN., ELEC. §§ 3-101 to 3-102,
3-502 to 3-5034, 9-102 to 9-103. Specifically, Plaintiffs
assert (1) inaccurate voter registration records in violation of
NVRA and Maryland code, ECF 16 ¶¶ 24–62, (2) erroneous
votes cast in the 2020 and 2022 general elections that
exceed the permissible error rates set out in HAVA and
Maryland code, *id.* ¶¶ 63–83, (3) the failure to review source
code underlying voter machines in violation of HAVA's
certification requirements and Maryland regulations, *id.* ¶¶
84–99, (4) the use of modems that compromise the security
of voting machines in violation of HAVA and Maryland
code, *id.* ¶¶ 100–128, and (5) the failure to provide voters
an opportunity to correct blank ballots, undervotes, and
overvotes in violation of HAVA, *id.* ¶¶ 156–184. In addition
to these election-related allegations, Plaintiffs allege that
Defendant refused to provide audit logs and configuration
reports in violation of Maryland's Public Information Act,
MD. CODE ANN., GEN PROVIS. § 4-103. ECF 16 ¶¶ 129–
155.

**\*2** Regarding the fifth claim pertaining to blank ballots,
Plaintiffs allege that "a high number of blank ballots were cast
in Baltimore County, creating the fear and threatened injury
that [Kate Sullivan's] ballot was cast blank without notice to
her." *Id.* ¶ 168. Regarding the last claim pertaining to public
records, Plaintiffs allege that requests for audio logs and

configuration reports "were made," but that the documents were "not produced." *Id.* ¶¶ 126, 147, 178, 183.

On April 15, 2024, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction, largely reflecting the allegations in their Amended Complaint and accompanied by dozens of exhibits. ECF 20. Defendant filed a motion to dismiss the Amended Complaint on April 22, ECF 24, and the Brennan Center for Justice at New York University School of Law ("Brennan Center") filed a motion for leave to file a brief as *amicus curiae* in support of Defendant's motion to dismiss on April 25, ECF 28. [2]

## II. LEGAL STANDARD

When a Rule 12(b)(1) motion contests the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction rests with the plaintiff. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). A challenge to jurisdiction may be either facial, *i.e.*, the complaint fails to allege facts upon which subject matter jurisdiction can be based, or factual, *i.e.*, jurisdictional allegations of the complaint are not true. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *Richmond*, 945 F.2d at 768. In determining whether jurisdiction exists, the district court regards the pleadings' allegations as mere evidence and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Richmond*, 945 F.2d at 768.

Where a plaintiff lacks standing to pursue a claim, the court lacks subject matter jurisdiction. *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 786 (4th Cir. 2019) ("If a party does not have standing, then there is no federal jurisdiction, and 'the only function remaining to the court is that of announcing the fact and dismissing the cause.' " (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868))). Standing requires a plaintiff to possess "a legally cognizable interest, or 'personal stake' in the outcome of the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (quoting *Camreta v. Greene*, 563 U.S. 692, 701 (2011)).

## III. DISCUSSION

Despite Plaintiffs' numerous assertions of problems with Maryland's voting system, this Court can begin and end its analysis with Plaintiffs' standing. "To ensure that the Federal Judiciary respects the proper—and properly limited—role of the courts in a democratic society, a plaintiff may not invoke federal-court jurisdiction unless he can show a personal stake in the outcome of the controversy." *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (internal citations and quotation marks omitted). "A federal court is not a forum for generalized grievances, and the requirement of such a personal stake ensures that courts exercise power that is judicial in nature." *Id.* (internal citations and quotation marks omitted).

Article III of the U.S. Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2. "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations and quotation marks omitted). To invoke federal jurisdiction, a plaintiff must establish the three "irreducible" minimum requirements of Article III standing: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560).

**\*3** The Amended Complaint names two companies as Plaintiffs: United Sovereign Americans and Maryland Election Integrity. ECF 16 ¶¶ 1–2. Such organizational plaintiffs can satisfy the standing requirements either in their own right to seek judicial relief for injury to themselves, or as representatives of their members who have been harmed. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013).

Plaintiffs lack standing to seek relief for injuries to themselves. An organization "may suffer an injury [in its own right] when a defendant's actions impede its efforts to carry out its mission." *Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)). However, an organization "that seek[s] to do no more than vindicate [its] own value preferences through the judicial process" cannot establish standing. *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, 843 F. App'x 493, 495 (4th Cir. 2021) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 740 (1972)). Here, Maryland Election Integrity was "created for the purpose of resolving violations of Maryland law and restoring trust in Maryland Elections." ECF 16 ¶ 49. Although the company's mission might theoretically be impeded by the alleged voting violations, the company does

not appear to conduct any regular activities for achieving that mission besides bringing the instant lawsuit and conducting investigations to support the lawsuit. Therefore, the alleged harm is "simply a setback to the organization's abstract social interests" rather than a "concrete and demonstrable injury to the organization's activities." *Havens Realty*, 455 U.S. at 379. United Sovereign Americans similarly lacks standing in its own right because it "is not seeking a distinct form of relief" from the relief sought by Maryland Election Integrity. ECF 16 ¶ 13.

Plaintiffs also lack standing as representatives of their members. To maintain such standing, they must show that the "members would otherwise have standing to sue in their own right." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). But United Sovereign Americans does not purport to represent any individual members. *See* ECF 16 ¶ 2. Maryland Election Integrity, on the other hand, consists of members who are registered voters in Maryland, including Kate Sullivan. *Id.* ¶¶ 9–10. Plaintiffs allege that the Defendant's actions have "resulted in dilution of [those members'] votes and ... concrete harm to [their] rights to vote." *Id.* ¶¶ 46, 197. But for election law cases, the Supreme Court has "long recognized that a person's right to vote is individual and personal in nature." *Gill*, 585 U.S. at 65 (internal citations and quotation marks omitted). Thus, "voters who allege facts showing disadvantage to themselves as individuals have standing to sue to remedy that disadvantage." *Id.* at 65–66 (internal citations and quotation marks omitted). Here, Plaintiffs have not shown disadvantage to members of Maryland Election Integrity as individuals because the Amended Complaint lacks any information about whether Kate Sullivan or other members actually voted in any Maryland election, much less how Defendant's actions helped defeat their supported candidates or causes.

**\*4** To the extent that Plaintiffs are simply alleging that Defendant did not act in accordance with the law in administering the elections, any injury from those actions would accrue to every citizen and would not be particularized to members of Maryland Election Integrity. "[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 754 (1984)); *see also United States v. Hays*, 515 U.S. 737, 743 (1995) ("[W]e have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as

sufficient for standing to invoke the federal judicial power."). In short, Plaintiffs allege no concrete or particularized injury to members of Maryland Election Integrity but simply generalized grievances applicable to the community as a whole. Courts routinely find such grievances insufficient to demonstrate standing to sue. *See Moore v. Circosta*, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) ("[T]he notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing."); *Iowa Voter All. v. Black Hawk Cnty.*, 515 F. Supp. 3d 980, 991 (N.D. Iowa 2021) ("Because plaintiffs cannot show how the counties' alleged violations compromised the integrity of the election such that they were injured in a personal and individual way, their injury is undifferentiated from the injury to any other citizen."); *see also O'Rourke v. Dominion Voting Sys. Inc.*, No. 20-CV-03747, 2021 WL 1662742, at \*6–8 (D. Colo. Apr. 28, 2021) (collecting cases dismissing allegations of election fraud for failure to show standing), *aff'd*, No. 21-1161, 2022 WL 1699425 (10th Cir. May 27, 2022), *cert. denied sub nom. O'Rourke v. Dominion Voting Sys.*, No. 22-305, 2022 WL 17408191 (U.S. Dec. 5, 2022).

In addition to alleging standing based on a vote dilution theory, Plaintiffs allege that Kate Sullivan has standing to raise the issue that "a high number of blank ballots were cast in Baltimore Count, creating the fear and threatened injury that her ballot was cast blank without notice to her." ECF 16 ¶ 168. But such "threatened injury must be certainly impending to constitute injury in fact." *Beck v. McDonald*, 848 F.3d 262, 272 (4th Cir. 2017) (quoting *Clapper*, 568 U.S. at 410). Here, the mere hypothetical possibility of a past, speculative injury does not give rise to a certainly impending injury.

Finally, Plaintiffs allege that requests for configuration reports and audit logs "were made" under Maryland's Public Information Act. ECF 16 ¶¶ 126, 147, 178, 183. But it is not clear whether Kate Sullivan or any member of Maryland Election Integrity made the requests. Such information is needed to show a redressable injury in fact because the Public Information Act only provides a cause of action to a person who is "denied inspection of a public record ...." MD. CODE ANN., GEN. PROVIS. § 4-362.

In sum, Plaintiffs lack standing to bring their claims and this Court therefore lacks subject matter jurisdiction. Plaintiffs' claims are dismissed without prejudice. *See S. Walk*, 713 F.3d

at 185 ("[A] court that lacks jurisdiction has no power to ... dispose of a claim on the merits").

**IV. CONCLUSION**
For the reasons stated above, Defendant's Motion to Dismiss, ECF 24, will be granted. Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, ECF 20, will be denied as moot.[3] The Brennan Center's Motion for Leave, ECF 28, will also be denied. The case will be closed. A separate Order follows.

**All Citations**

Slip Copy, 2024 WL 2053773

---

## Footnotes

1    Defendant has not yet filed its reply in support of its motion to dismiss, but this Court finds it unnecessary to consider the reply to resolve the issues presented.

2    This Court denies the motion for leave because it does not provide information relevant to the issue of standing, on which this Court bases its ruling.

3    Even if Plaintiffs had standing, this Court would deny their motion for a temporary restraining order and preliminary injunction as barred by laches. "Laches is an equitable doctrine that can be raised by a defendant as an affirmative defense to a claim, and requires that the defendant show (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Dann Ocean Towing, Inc.,* 756 F.3d 314, 318 (4th Cir. 2014) (internal citations and quotation marks omitted). First, Plaintiffs have lacked diligence and have delayed unreasonably in filing suit. Plaintiffs' claims stem from their canvassing of voters and analysis of Maryland's voter registration database regarding the 2020 and 2022 general elections. But they did not canvass voters until September, 2023 to November, 2023, ECF 20-19 ¶ 34, and they obtained snapshots of the database from August, 2021 to July, 2023, ECF 20-8 at 3. Further, Plaintiffs did not bring suit until March, 2024. ECF 1. Second, this lack of diligence would result in prejudice and significant disruption to Defendant's planning and implementation of the primary elections if injunctive relief were granted. Mail-in ballots have already been printed and processed. ECF 25-1 ¶¶ 7–10. Early voting is almost concluded, and the primary election is in less than one week.

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

🏴 KeyCite Blue Flag – Appeal Notification
Appeal Filed by  DAWN KEEFER, ET AL v. PRESIDENT UNITED
STATES OF AMERICA, ET AL,  3rd Cir.,  April 23, 2024

2024 WL 1285538
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Dawn KEEFER, et al., Plaintiffs,

v.

Joseph R. BIDEN, et al., Defendants.

Civil No. 1:24-CV-00147
|
Signed March 26, 2024

**Synopsis**
**Background:** Pennsylvania state representatives and senator
brought action against United States President, Pennsylvania
Governor, and various state officials, alleging that certain
executive actions regarding voter registration violated
the Electors and Elections Clauses of the Constitution.
Defendants moved to dismiss for lack of standing and failure
to state a claim.

**Holdings:** The District Court, Jennifer P. Wilson, J., held that:

[1] plaintiffs lacked Article III standing as individual
legislators to bring action for violation of Electors and
Elections Clauses, and

[2] plaintiffs lacked Article III standing as candidates to bring
action for violation of Electors and Elections Clauses.

Motion granted.

**Procedural Posture(s):** Motion to Dismiss for Lack of
Standing.

West Headnotes (13)

**[1]** **Federal Courts** 🔑 Pleadings and motions
The court, in determining whether it has subject-
matter jurisdiction, must decide whether the
allegations on the face of the complaint, taken

as true, allege facts sufficient to invoke the
jurisdiction of the district court. Fed. R. Civ. P.
12(b)(1).

**[2]** **Federal Courts** 🔑 Pleadings and motions
**Federal Courts** 🔑 Evidence; Affidavits
Challenges to subject matter jurisdiction may be
facial or factual. Fed. R. Civ. P. 12(b)(1).

**[3]** **Federal Courts** 🔑 Pleadings and motions
A facial attack on subject matter jurisdiction
challenges whether jurisdiction has been
properly pled and requires the court to only
consider the allegations of the complaint and
documents referenced therein and attached
thereto, in the light most favorable to the
plaintiff. Fed. R. Civ. P. 12(b)(1).

**[4]** **Federal Courts** 🔑 Evidence; Affidavits
**Federal Courts** 🔑 Presumptions and burden
of proof
When defendant sets forth factual attack on
subject matter jurisdiction, court is free to
weigh evidence and satisfy itself whether it has
power to hear case; no presumptive truthfulness
attaches to plaintiff's allegations, and existence
of disputed material facts will not preclude
trial court from evaluating for itself merits of
jurisdictional claims. Fed. R. Civ. P. 12(b)(1).

**[5]** **Constitutional Law** 🔑 Nature and scope in
general
**Federal Civil Procedure** 🔑 In general;
injury or interest
Ensuring that a plaintiff has Article III standing
serves to prevent the judicial process from
being used to usurp the powers of the political
branches, and confines the federal courts to a
properly judicial role. U.S. Const. art. 3, § 2, cl. 1.

**[6]** **Federal Civil Procedure** 🔑 In general;
injury or interest

**Federal Civil Procedure** <span>Causation; redressability</span>

Article III standing requires that the plaintiff, who bears the burden of establishing these elements, prove: (1) an injury-in-fact; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by a favorable decision. U.S. Const. art. 3, § 2, cl. 1.

**[7]**    **Federal Civil Procedure** <span>Pleading</span>

When standing is challenged at pleading stage, plaintiff must clearly allege facts demonstrating each element.

**[8]**    **Federal Civil Procedure** <span>In general; injury or interest</span>

An injury-in-fact, as required for Article III standing, must be an invasion of a legally protected interest that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. U.S. Const. art. 3, § 2, cl. 1.

**[9]**    **Federal Civil Procedure** <span>In general; injury or interest</span>

A particularized injury, as required for Article III standing, must affect the plaintiff in a personal and individual way. U.S. Const. art. 3, § 2, cl. 1.

**[10]**    **Federal Civil Procedure** <span>In general; injury or interest</span>

As required for Article III standing, any threatened injury must be certainly impending. U.S. Const. art. 3, § 2, cl. 1.

**[11]**    **States** <span>Judicial intervention; immunity</span>

**United States** <span>Judicial intervention; immunity</span>

Pennsylvania state representatives and senator alleged injuries to institutional rights of Pennsylvania General Assembly as a whole, and thus lacked Article III standing as individual legislators to bring action against United States President, Pennsylvania Governor, and various state officials, alleging that certain executive actions regarding voter registration violated the Electors and Elections Clauses of the Constitution; plaintiffs did not allege that they specifically, as individuals, suffered harm because of executive actions at issue, and instead alleged harm to authority of Assembly to establish times, places, and manner of elections as provided by Constitution, and there was no allegation plaintiffs had suffered injury any different than any other member of Assembly. U.S. Const. art. 1, § 4, cl. 1; U.S. Const. art. 2, § 1, cl. 2; U.S. Const. art. 3, § 2, cl. 1.

More cases on this issue

**[12]**    **Federal Courts** <span>Standing</span>

The fact that a party has standing in state court does not mean that they have standing in federal court, as Article III standing limits the power of federal courts and is a matter of federal law. U.S. Const. art. 3, § 2, cl. 1.

**[13]**    **States** <span>Judicial intervention; immunity</span>

**United States** <span>Judicial intervention; immunity</span>

Pennsylvania state representatives and senator lacked Article III standing as candidates to bring action against United States President, Pennsylvania Governor, and various state officials, alleging that certain executive actions regarding voter registration violated the Electors and Elections Clauses of the Constitution, where plaintiffs had not alleged any particular harm to their candidacies as result of any executive actions taken by any defendants, and instead made only vague, generalized allegation that elections, generally, would be undermined. U.S. Const. art. 1, § 4, cl. 1; U.S. Const. art. 2, § 1, cl. 2; U.S. Const. art. 3, § 2, cl. 1.

More cases on this issue

**Attorneys and Law Firms**

Erick G. Kaardal, Pro Hac Vice, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, Karen T. DiSalvo, Election Research Institute, Lebanon, PA, Jase Panebianco, Pro Hac Vice, Richard Lawson, Pro Hac Vice, Jessica Elizabeth Hart Steinmann, Pro Hac Vice, America First Policy Institute - Constitutional Litigation Partnership, Washington, DC, Patricia Nation, Pro Hac Vice, Constitutional Litigation Partnership, Washington, DC, for Plaintiffs Representative Dawn Keefer, Representative Timothy Bonner, Representative Barry Jozwiak, Representative Barbara Gleim, Representative Joseph Hamm, Representative Wendy Fink, Representative Robert Kauffman, Representative Stephanie Borowicz, Representative Donald (Bud) Cook, Representative Paul (Mike) Jones, Representative Joseph D'Orsie, Representative Charity Krupa, Representative Leslie Rossi, Representative David Zimmerman, Representative Robert Leadbeter, Representative Daniel Moul, Representative Thomas Jones, Representative David Maloney, Representative Timothy Twardzik, Representative David Rowe, Representative Joanne Stehr, Representative Aaron Berstine, Representative Kathy Rapp, Senator Cris Dush.

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, for Plaintiffs Mark Gillen, Jill Cooper, Marla Brown.

Kuntal Cholera, DOJ-Civ, Washington, DC, for Defendants Joseph R. Biden, United States, U.S. Department of Agriculture, Tom Vilsack, U.S. Department of Health and Human Services, Xavier Becerra, U.S. Department of State, Antony Blinken, U.S. Department of Housing and Urban Development, Marla Fudge, U.S. Department of Energy, Jennifer Granholm, U.S. Department of Education, Dr. Miguel Cardona.

Erich Thomas Greiner, PA Office of Attorney General, Harrisburg, PA, Jacob Boyer, Michael Fischer, PA Office of General Counsel, Harrisburg, PA, for Defendants Josh Shapiro, Al Schmidt, Jonathan Marks.

David Craig, Pro Hac Vice, Sofia DeVito, Pro Hac Vice, Stewart Whitson, Pro Hac Vice, The Foundation for Government Accountability, Naples, FL, Walter S. Zimolong, Zimolong LLC, Villanova, PA, for Amicus Foundation for Government Accountability.

**MEMORANDUM**

JENNIFER P. WILSON, United States District Judge

**\*1** This lawsuit, brought by twenty-six Pennsylvania State Representatives and one Pennsylvania Senator, [1] challenges certain executive actions regarding voter registration taken by both United States President Joseph R. Biden and various federal officials [2] and Pennsylvania Governor Joshua Shapiro and various state officials [3] on the ground that these executive actions violate both the Electors and Elections Clauses of the United States Constitution. (Doc. 18.) Before the court are the motions to dismiss for failure to state a claim and lack of jurisdiction filed by the Federal and State Defendants. (Docs. 40, 46.) [4] The motions to dismiss will be granted because this court does not have subject matter jurisdiction due to Plaintiffs' lack of standing to raise the claims at issue. [5]

**BACKGROUND AND PROCEDURAL HISTORY**

**\*2** Plaintiffs challenge an Executive Order issued by President Biden, an announcement by Governor Josh Shapiro, and a "directive" issued by Former Pennsylvania Governor Tom Wolf, all regarding various aspects of voter registration. (Doc. 18.) Plaintiffs allege that these three executive actions have violated their individual Constitutional rights under the Electors and Elections Clauses of the United States Constitution. (*Id.* at ¶67.)

The Electors Clause provides as follows:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

U.S. CONST. art. II, § 1, cl. 2. The Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators." U.S. CONST. art. I, § 4, cl. 1.

Plaintiffs allege that:

> [U]nder the Electors Clause, the Elections Clause and the Pennsylvania Constitution, the Pennsylvania state legislators, as part of two associations called the senate and the house of representatives respectively, may enact laws, subject to the Governor's veto, to regulate the times, places, and manner of Presidential and Congressional elections. Thus, Plaintiffs, as individual state legislators, have federal rights under the Elections Clause and the Electors Clause to oversee and participate in making legislative decisions regulating the times, places, and manner of federal actions.

(Doc. 18, ¶¶ 49, 50.)

Regarding the Federal Defendants, Plaintiffs challenge Executive Order 14019 ("EO 14019"),[6] which, they allege "requires all federal agencies to develop a plan to increase voter registration, and increase voter participation, or get out the vote ... efforts." (Id. at ¶ 70.) Plaintiffs allege that HHS, HUD, Department of Energy, USDA, and U.S. General Services Administration ("GSA"),[7] have implemented voter registration plans in accordance with EO 14019 and have registered voters in Pennsylvania in accordance with these plans. (Id. at ¶¶ 72–84.) Plaintiffs contend that EO 14019

> directs *all* non-independent executive agencies to engage in voter registration and to solicit and facilitate third-party organizations to conduct voter

registration on agency premises, including those located in the state of Pennsylvania, so it is certain that other agencies are carrying out similar efforts without disclosing their unlawful activities to the public or to the Pennsylvania Legislature.

(Id. at ¶ 85.) Plaintiffs allege that EO 14019 requires all federal agencies to "identify and partner with specified partisan third party organizations[,]" "distribute voter registration and vote-by-mail ballot application forms[,]" "assist applicants in completing voter registration and vote-by-mail ballot application forms[,]" "solicit third-party organizations and directs state officials to provide voter registration services on agency premises." (Id. at ¶¶ 86–90.)

Plaintiffs contend that "all agency action in conformity with [EO] 14019 is without congressional delegation or funding, and conducted merely by executive fiat[,]" and that "all federal agency actions in conformity with [EO] 14019 are unauthorized by law." (Id. at ¶¶ 102, 103.) Plaintiffs further allege that EO 14019 is not in conformity with Pennsylvania's voter registration scheme, as provided by Pennsylvania law. (Id. at ¶¶ 107, 108.)

**\*3** In Count I, Plaintiffs request a declaratory judgment that EO 14019 is unconstitutional because it "nullifies the votes of the individual legislators, nullifies the enactment of the Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights, and jeopardizes candidates' rights to an election free from fraud and abuse." (Id. at ¶ 178.) Plaintiffs also allege that they are suffering "an injury-in-fact because the Executive Order denies them a voting opportunity to which the Constitution entitles them." (Id. at ¶ 179.) In sum, the Plaintiffs allege that EO 14019 unlawfully attempts to regulate the registration of Pennsylvania electors and, thus, "[t]he order should not be permitted to nullify the state legislators' power to enact laws, subject to the Governor's veto power, regarding the regulation of the times, places, and manner of federal elections." (Id. at ¶ 186.) In Count II, Plaintiffs challenge EO 14019 under the Administration[8] Procedure Act ("APA") as substantively arbitrary and capricious and contrary to Constitution or statute. (Id. at ¶¶ 194–201.) In Count III, Plaintiffs challenge EO 14019 as procedurally arbitrary and capricious for failing

to comply with notice and comment procedures under the APA. (*Id.* at ¶¶ 202–21.)

Regarding the State Defendants, Plaintiffs challenge two executive actions. First, Plaintiffs challenge Governor Shapiro's 2023 announcement that "he was unilaterally implementing automatic voter registration in Pennsylvania." (*Id.* at ¶ 109.) Plaintiffs allege that "[b]eginning on September 19, 2023, Commonwealth residents obtaining new or renewed driver licenses and ID cards have been and continue to be automatically registered to vote by the Pennsylvania Department of Transportation unless they opt out of doing so." (*Id.* at ¶ 110.) Plaintiffs allege that the "regulatory schema of elections" set forth by the legislature requires an "application" to register to vote, which requires an overt action by the applicant. (*Id.* at ¶¶ 115–119.) In sum, Plaintiffs argue that Governor Shapiro's directive to the Department of Transportation to change the process for applying to vote in conjunction with applying for a driver's license violates Pennsylvania's established procedures, codified at 25 PA. CON. STAT. ANN. §§ 1321, 1323, 1327. Plaintiffs allege that "Governor Shapiro's directive to the Pennsylvania Department of Transportation, and its implementation, is inconsistent with existing laws, and as such, is not legally authorized." (*Id.* at ¶ 128.)[9]

In Count IV, Plaintiffs bring a claim under 42 U.S.C. § 1983 against Governor Shapiro seeking an injunction "enjoining and prohibiting [his] automatic voter registration regime" as unconstitutional because it nullifies the legislators' vote and the enactments of the State Legislature, violates the Electors and Elections Clauses, "diminishes the influence of the individual legislators," and "deprives [them] of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an elections free from fraud and abuse." (Doc. 18, ¶ 215.) Plaintiffs also allege that the announcement "denies Plaintiffs a voting opportunity to the acceptance [or] rejection of a voter registration schema, that under the U.S. and Pennsylvania Constitutions can only originate in the Pennsylvania legislature or U.S. Congress." (*Id.* at ¶ 216.)

The second state executive action that Plaintiffs challenge is a 2018 "Directive Concerning HAVA-Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications" ("2018 Directive") issued under former Governor Tom Wolf. (*Id.* at ¶ 139.) This challenge is brought against Secretary of the Commonwealth Al Schmidt and Deputy Secretary for Elections Jonathan

Marks. (*Id.*) The 2018 Directive "directs Pennsylvania counties to register applicants even if an applicant provides invalid identification." (*Id.* at ¶ 140.) Plaintiffs allege that this directive violates Pennsylvania law, specifically 25 PA. CONS. STAT. ANN § 1328. (*Id.* at ¶¶ 144–46.) Further, Plaintiffs allege that the directive, which "direct[s] the counties to process incomplete or inconsistent voter applications like all other applications violates clear provisions of Pennsylvania law[,]" and as such, "undermines the state legislature as the 'entity assigned particular authority by the Federal Constitution' to regulate the times, places, and manner of Presidential and Congressional elections." (*Id.* at ¶¶ 154, 155.)

**\*4** In Count V, Plaintiffs bring a claim under 42 U.S.C. § 1983, asking the court to enjoin and prohibit the 2018 Directive "and similar guidance" as unconstitutional because it nullifies the legislators' vote and the enactments of the State Legislature, violates the Electors and Elections Clauses, "diminishes the influence of the individual legislators" and "deprives [them] of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an elections free from fraud and abuse." (Doc. 18, ¶ 223.) Plaintiffs also allege that the 2018 Directive denied them "their U.S. constitutional right to vote on and direct election policy, established under both the Elections Clause and Electors Clause." (*Id.* at ¶ 226.)

Underlying all counts, Plaintiffs allege they have standing as state legislators because they "are injured by Defendants when [Defendants] exercise positive regulatory authority over election practices that circumvent or usurp the authority of the legislature." (*Id.* at ¶ 160.) Specifically, Plaintiffs allege they have "been denied the opportunity to exercise their constitutionally vested authority to cast their legislative vote on affirming or rejecting those new regulatory regimes." (*Id.* at ¶ 162.) Plaintiffs also allege they have standing as candidates who will suffer the harm of having to compete in "elections [that] have been interfered with by unlawful regulations" and "where their opponents have been provided an unlawful advantage." (*Id.* at ¶¶ 171, 172.) Finally, Plaintiffs allege they have standing as citizens, taxpayers, and voters. (*Id.* at ¶¶ 174, 175.)

Plaintiffs initiated this lawsuit by filing a complaint on January 25, 2024. (Doc. 1.) Thereafter, they filed the operative amended complaint and simultaneously filed a motion for preliminary injunction. (Docs. 18, 19.)[10] Federal Defendants filed a motion to dismiss for failure to state a claim and lack of

jurisdiction on March 1, 2024. (Doc. 40.) Federal Defendants also filed a brief in opposition to the motion for preliminary injunction on the same date. (Doc. 41.) State Defendants filed a brief in opposition to the motion for preliminary injunction on March 1, 2024. (Doc. 42.) Plaintiffs filed reply briefs to State Defendants and Federal Defendants briefs in opposition on March 15, 2024. (Docs. 44, 45.) On March 20, 2024, State Defendants filed a motion to dismiss and brief in support. (Docs. 46, 47.) Accordingly, the issue of standing is ripe for review.

### STANDARD OF REVIEW

 **[1]** **[2]** **[3]** **[4]** Defendants seek dismissal of the complaint pursuant to *Federal Rule of Civil Procedure 12(b) (1)* for lack of subject-matter jurisdiction. The court, in determining whether it has subject-matter jurisdiction, must decide "whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Taliaferro v. Darby Twp. Zoning Bd.*, *458 F.3d 181, 188 (3d Cir. 2006)* (quoting *Licata v. U.S. Postal Serv.*, *33 F.3d 259, 260 (3d Cir. 1994)*). Rule 12(b) (1) challenges may be "facial" or "factual." *See Mortensen v. First Fed. Sav. & Loan Ass'n*, *549 F.2d 884, 891 (3d Cir. 1977)*. A facial attack challenges whether jurisdiction has been properly pled and requires the court to "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs., Inc. v. United States*, *220 F.3d 169, 176 (3d Cir. 2000)* (citing *Mortensen*, *549 F.2d at 891.*) Conversely, when a defendant sets forth a factual attack on subject-matter jurisdiction, "the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case.... 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.' " *Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, *227 F.3d 62, 69 (3d Cir. 2000)* (quoting *Mortensen*, *549 F.2d at 891*).

 **\*5**  In this instance, Defendants argue Plaintiffs do not have standing and present the court with a facial attack on subject matter jurisdiction. As a result, the court will "only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc.*, *220 F.3d at 176* (citing *Mortensen*, *549 F.2d at 891.*)

### DISCUSSION

Both the Federal and State Defendants argue that the amended complaint must be dismissed for lack of subject matter jurisdiction because Plaintiffs lack standing to pursue their claims. Plaintiffs argue they have standing because the complaint alleges "that the Elections and Electors' Clauses' references to 'legislature' confer rights onto the individual state legislators." (Doc. 21, p. 10.) On this basis, Plaintiffs contend that their individual rights as state legislators are injured by the executive actions at issue because those actions are an "exercise [of] positive regulatory authority over election practices that circumvent[s] or usurp[s] the authority of the legislature." (Doc. 18, ¶ 160.) Essentially, Plaintiffs argue they have each been injured individually because they have "been denied the opportunity to exercise their constitutionally vested authority to cast their legislative vote on affirming or rejecting those new regulatory regimes." (*Id.* at ¶ 162.)

Plaintiffs present various arguments to support their theory of individual legislator standing. First, Plaintiffs analogize their membership in the legislature to various other types of entities, such as a corporation, arguing that as "the purpose of extending rights to corporations is to protect the rights of the people associated with the corporation[,]" so too the "purpose of the Elections Clause and Electors Clause ... is to protect the privileges and rights of the individual state legislators." (Doc. 21, p. 9.) Plaintiffs also analogize a state legislature to a militia and the press, as "entities" made up of real persons who have the right to defend their participation in the entity. (Doc. 44, pp. 10, 11.)

Second, Plaintiffs rely on *Coleman v. Miller*, *307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939)*, *Moore v. Harper*, *600 U.S. 1, 27, 143 S.Ct. 2065, 216 L.Ed.2d 729 (2023)*, [11] and their assertion that the Pennsylvania Supreme Court has authorized "individual state legislators to bring legislative usurpation claims." (Doc. 21, p. 10.) (citing *Fumo v. City of Phila.*, *601 Pa. 322, 972 A.2d 487, 491 (2009)*). Plaintiffs also argue that they have standing as candidates for office who potentially may run in an unlawfully-operated election. (*Id.* at 12.) Plaintiffs argue that they are injured by the executive actions because "it results in the registration of voters outside of [Pennsylvania's] carefully constructed and constitutionally-authorized registration regime." (Doc. 45, p. 14.) Finally, Plaintiffs argue they have standing as citizens, taxpayers, and voters. (Doc. 21, p. 13.)

**\*6** In response, Federal Defendants argue that, under Supreme Court case law, "individual members [of a legislature] lack standing to assert the institutional interests of a legislature." (Doc. 41, p. 11.) (citing *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 139 S. Ct. 1945, 1954, 204 L.Ed.2d 305 (2019)). In support of this argument, Federal Defendants contend that Plaintiffs' alleged injury, usurpation of the authority to regulate elections conferred upon state legislatures, is not meaningfully distinguishable from the institutional injuries alleged in *Raines v. Byrd*, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), *Goode v. City of Phila.*, 539 F.3d 311 (3d Cir. 2008), and *Yaw v. Delaware River Basin Comm.*, 49 F.4th 302 (3d Cir. 2022). In each of these cases, the Supreme Court and Third Circuit, respectively, found that individual legislators did not have standing to bring a challenge to an action that allegedly injured the legislature as a whole. (Doc. 41, pp. 11–13.) In sum, Federal Defendants argue that the alleged injury "concerns the right to vote of '*all Members* of' the Pennsylvania Legislature 'equally,' and so it is precisely the type of non-particularized, 'institutional injury' that is insufficient for legislator standing." (*Id.* at 13) (emphasis in original). [12]

In response to Plaintiffs' argument regarding their potential standing as candidates, Federal Defendants argue that the amended complaint "contains no concrete allegations establishing that the EO will have a material impact on the votes cast in Plaintiffs' particular districts, and that this impact will harm Plaintiffs' electoral prospects." (*Id.* at 15.)

State Defendants' arguments regarding institutional injury and legislative standing largely mirror those of Federal Defendants and rely on the same body of case law. (*See* Doc. 42, pp. 12–19.) State Defendants additionally note that the declarations attached to the amended complaint simply state that Defendants have violated the law and provide no individualized allegation of injury, the amended complaint contains no allegation of "how any Plaintiff is affected by the conduct challenged in this case in a way that is any different from any other member of Pennsylvania's General Assembly [,]" and the amended complaint contains no allegation that "legislative powers have been usurped" because "[n]either changes to a registration application nor instructions to counties–both done under statutorily assigned authority–stops the General Assembly from passing any laws regarding either topic." (*Id.* at 17–19.)

### A. Article III Standing

**[5]** Pursuant to Article III of the United States Constitution, federal courts are constrained to resolve only "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines*, 521 U.S. at 818, 117 S.Ct. 2312 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976)). Ensuring that a plaintiff has Article III standing " 'serves to prevent the judicial process from being used to usurp the powers of the political branches,' and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) (citations omitted).

**[6]** **[7]** Article III standing requires that the plaintiff, who bears the burden of establishing these elements, prove: (1) an injury-in-fact; (2) that is fairly traceable to the defendant's conduct; and (3) that is likely to be redressed by a favorable decision. *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). When standing is challenged at the pleading stage, "the plaintiff must 'clearly ... allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

**[8]** **[9]** **[10]** As to the first element, an injury-in-fact must be " 'an invasion of a legally protected interest' that is 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). A particularized injury must "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130. Further, any threatened injury must be "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).

### 1. Plaintiffs Lack Standing as Legislators

**\*7** The seminal case regarding legislative standing is the Supreme Court's decision in *Raines v. Byrd*, 521 U.S. 811, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). There, members of the U.S. Congress who voted against the Line Item Veto Act sued the Secretary of the Treasury and the Director of the Office of Management and Budget, asserting that the Line Item Veto Act was unconstitutional because it altered "the legal and practical effect of all votes [the members] may cast on bills[,]" divested the members "of their constitutional role in the repeal of legislation," and altered "the constitutional

balance of powers between the Legislative and Executive branches[.]" *Id.* at 816, 117 S.Ct. 2312.

The Supreme Court held that the members who filed suit did not have standing because they did not allege any "injury to themselves as individuals," rather "the institutional injury they allege is wholly abstract and widely dispersed, and their attempt to litigate this dispute at this time and in this form is contrary to historical experience." *Id.* at 829, 117 S.Ct. 2312 (citations omitted). The Court held that the members who filed suit failed to allege an injury to themselves as individuals because they had "not been singled out for specially unfavorable treatment as opposed to other Members of their respective bodies[,]" and they only alleged that the Act caused "a type of institutional injury (the diminution of legislative power), which necessarily damages all Members of Congress and both House of Congress equally." *Id.* at 821, 117 S.Ct. 2312. Further, the Court noted that the members did not allege a deprivation of "something to which they *personally* are entitled–such as their seats as Members of Congress after their constituents had elected *them.*" *Id.*

The Court also distinguished one prior case that addressed the issue of legislator standing, *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939). In *Coleman*, the Kansas State Senate was split twenty to twenty on the passage of the child labor amendment to the federal constitution. *Id.* at 436, 59 S.Ct. 972. The Lieutenant Governor then cast a tie-breaking vote, and the twenty losing Senators sued to challenge "the right of the Lieutenant Governor to cast the deciding vote in the Senate." *Id.* The Supreme Court held that the twenty senators who voted against ratification had standing to sue because they had "a plain, direct and adequate interest in maintaining the effectiveness of their votes." *Id.* at 438, 59 S.Ct. 972. The *Coleman* Court further explained that the Kansas senators had "set up and claimed a right and privilege under the Constitution of the United States to have their votes given effect and the state court has denied that right and privilege." *Id.*

The *Raines* Court limited the holding and application of *Coleman*, stating that *Coleman* stands "for the proposition that legislators whose votes would have been sufficient to defeat (or enact) a specific legislative Act have standing to sue if that legislative action goes into effect (or does not go into effect), on the ground that their votes have been completely nullified." *Raines*, 521 U.S. at 823, 117 S.Ct. 2312. Thus, the *Raines* court held that the members in that case did not have standing under *Coleman* because they did not allege "that they

voted for a specific bill, that there were sufficient votes to pass the bill, and that the bill was nonetheless deemed defeated." *Id.* at 824, 117 S.Ct. 2312.

The Supreme Court has considered legislator standing twice since *Raines*. In *Arizona State Legislature v. Arizona Independent Redistricting Comm.*, 576 U.S. 787, 792, 135 S.Ct. 2652, 192 L.Ed.2d 704 (2015), the entire Arizona State Legislature sued to challenge the constitutionality of a voter-adopted initiative which established an independent commission charged with drawing and adopting redistricting maps, arguing that giving this authority to an independent commission is contrary to the Elections Clause's directive that the legislature of each state shall determine the times, places, and manner of elections. In *Arizona*, the defendants challenged the plaintiffs' standing under *Raines*, but the Supreme Court held that the legislature, as a whole and authorized by an internal vote, had standing to redress the alleged institutional injury suffered by the legislature as a whole. *Id.* at 802, 135 S.Ct. 2652. Ultimately, the court held that the voter initiative at issue "would 'completely nullif[y]' any vote by the Legislature, now or 'in the future,' purporting to adopt a redistricting plan." *Id.* at 804, 135 S.Ct. 2652 (citing *Raines*, 521 U.S. at 823–24, 117 S.Ct. 2312). [13]

**\*8** Conversely, in *Va. House of Delegates*, the Supreme Court held that only one house of a bicameral state legislature did not have standing to sue on behalf of the legislature as a whole. *Va. House of Delegates*, 139 S. Ct. at 1952. First, the Court noted that it is possible for a state to designate its House of Representatives as its agent, which would be sufficient to confer standing to vindicate the state's interests. *Id.* at 1951–52. Per the *Va. House of Delegates* Court, a state may authorize the "House to litigate on the State's behalf, either generally or in a defined class of cases." *Id.* at 1952. The Court held that Virginia had not done so in that case. *Id.* Second, the Court considered whether the House of Representatives had legislator standing under *Raines*. The Court held that the "Virginia constitutional provision the House [challenges] allocates redistricting authority to the 'General Assembly,' of which the House constitutes only a part." *Id.* at 1953. Thus, the Court held the case was more similar to *Raines* because "[j]ust as individual members lack standing to assert the institutional interests of a legislature, a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." *Id.* at 1953–54 (citations omitted).

The Third Circuit has decided cases in line with *Raines*, most recently in *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302 (3d Cir. 2022). In *Yaw*, a group of Pennsylvania Senators sued the Delaware River Basin Commission, arguing that the ban on fracking at issue in that case "deprived [them] of their lawmaking authority relative to millions of Pennsylvanians residing within the 6,000 square miles of Sovereign territory subsumed by the Basin and any legislation, now or in the future, on this subject has been nullified." *Id.* at 311. Relying on a review of the same cases discussed above, the Third Circuit held that "this argument runs headlong into the well-established principle that individual legislators lack standing to assert institutional injuries belonging to the legislature as a whole." *Id.* The Third Circuit held that the alleged injuries were "classic examples of institutional injuries because they sound in a general loss of legislative power that is 'widely dispersed' and 'necessarily damages all [members of the General Assembly] ... equally.' "[14] *Id.* at 314 (citing *Raines*, 521 U.S. at 821, 117 S.Ct. 2312) (alterations in original). The Third Circuit noted that the plaintiffs "alleged no injury to themselves as individuals[,]" and had not "been authorized to represent the interests of these institutions in court." *Id.* at 314. Finally, the Third Circuit noted that, under the theory presented by plaintiffs, "*any* individual legislator would have standing to challenge *any* federal statute or regulation ... that, under the Constitution's Supremacy Clause, has a preemptive effect on state lawmaking. Article III does not sweep so broadly." *Id.* at 315 (citation omitted).

**[11]** Here, Plaintiffs attempt to circumvent the institutional injury issue by asserting that the Elections and Electors Clauses give them an "individual" right which they are seeking to vindicate. However, as the descriptions of their alleged injuries make clear, they are seeking to vindicate injuries that would be suffered by the Legislature as a whole.[15] Just as in the binding precedent described above, Plaintiffs here do not allege that they specifically, as individuals, are suffering a harm because of the executive actions at issue. Rather, the harm is to the authority of the Pennsylvania General Assembly to establish the times, places, and manner of elections as provided by the Constitution. Moreover, Plaintiffs claim that they, as "real persons who are part of an exclusive entity, the state legislature of Pennsylvania[, ... have] a right to protect [their] individual [ ] constitutional rights and privileges to participate in making laws regarding the manner of elections [ ]." (Doc. 44, p. 7.) Just as the Third Circuit concluded in *Yaw*, this claim sweeps too broadly. If every state legislator has an individual right to vindicate their right to "participate in making laws,"

then the standing requirement of a particularized injury would be rendered meaningless because *every* legislator would suffer an injury in the same way. *See Yaw*, 49 F.4th at 314.

**\*9** Further, there is no allegation that these specific Plaintiffs have suffered an injury that is any different than any other member of the Pennsylvania General Assembly. Thus, Plaintiffs have alleged only an institutional injury resulting from "a general loss of legislative power[.]" *Yaw*, 49 F.4th at 314. Additionally, unlike in *Coleman*, Plaintiffs here have not suffered a complete nullification of their vote, such that they no longer can legislate in the election field. Plaintiffs' argument that they "have no ability to undo the executive actions through ordinary legislation[,]" and that the laws they already have passed "have been nullified and overridden by the executive actions[,]" overstates the matter, as none of the executive actions challenged in this case remove or divest any authority from the legislature in creating voting regulations within the state, such as in *Arizona*. Should the General Assembly wish to counter any of the alleged effects of the challenged executive actions, the executive actions do not constrain them from doing so. Moreover, as in *Arizona*, should the Pennsylvania General Assembly, as a whole, wish to challenge these executive actions as contrary to law and usurping its authority, the General Assembly may do so. However, these twenty-seven Plaintiffs, may not seek to vindicate that institutional injury without the approval of the institution. Therefore, Plaintiffs are seeking to assert an injury to the institutional rights of the Pennsylvania General Assembly, which they cannot do as individual legislators.[16]

The court recognizes that Plaintiffs rely on *Kerr v. Hickenlooper*, 744 F.3d 1156 (10th Cir. 2014) ("*Kerr I*") to support their argument that an individual legislator has standing to challenge a specific law that "has stripped the legislature of its rightful power." *Id.* at 1167. However, as noted by State Defendants, although Plaintiffs state that the judgment in *Kerr I* was "vacated on other grounds," it was, in fact, vacated on the issue of standing after the Supreme Court decided *Arizona*. *See Hickenlooper v. Kerr*, 576 U.S. 1079, 135 S.Ct. 2927, 192 L.Ed.2d 956 (2015). On remand, the Tenth Circuit looked again at the issue of whether individual legislator plaintiffs had standing to claim that a state constitutional amendment "deprive[d] them of their ability to perform the 'legislative core functions of taxation and appropriation.' " *Kerr v. Hickenlooper II*, 824 F.3d 1207, 1215 (10th Cir. 2016) ("*Kerr II*"). In *Kerr II*, the Tenth Circuit explicitly held that "the legislator-plaintiffs assert only an institutional injury, and thus lack standing

to bring this action." Accordingly, the decision in *Kerr II* provides no support to Plaintiffs.

 **[12]** Finally, to the extent that Plaintiffs argue they have standing based on Pennsylvania law, this same argument was dismissed by the Third Circuit in *Yaw*. Whether it is true or not that individual legislators have standing under Pennsylvania law, the *Yaw* court held that "[t]he fact that a party has standing in state court does not mean that they have standing in federal court....Article III standing 'limits the power of *federal* courts and is a matter of *federal* law. It does not turn on state law, which obviously cannot alter the scope of the federal judicial power.' " *Yaw*, 49 F.4th at 316 (citing *Protect Our Parks, Inc. v. Chi. Park Dist.*, 971 F.3d 722, 730–31 (7th Cir. 2020)).

 **\*10** Accordingly, the court concludes that, in reality, Plaintiffs allege an institutional injury to the power of the Pennsylvania General Assembly as a whole to legislate the times, places, and manner of elections. As such, Plaintiffs, as individual legislators, do not have standing because they have not alleged any particular injury that is not also suffered by each member of the Pennsylvania General Assembly.

### B. Plaintiffs Lack Standing as Candidates

Plaintiffs also argue they have standing as candidates. (Doc. 18, ¶¶ 169–173; Doc. 21, pp. 11, 12; Doc. 45, pp. 12–15). Plaintiffs argue that "Defendants' actions collectively undermine the integrity of Pennsylvania's elections by introducing procedures that were not provided by the Legislature." (Doc. 21, p. 12.) They further argue that implementation of these executive actions results in "the pool of Pennsylvania voters [being] manipulated by legally unauthorized, deceptive practices, undermining the integrity of elections across the Commonwealth." (Doc. 45, p. 15.)

Federal Defendants argue that this injury is not "certainly impending[,]" as required by Article III and *Clapper v.*

*Amnesty Int'l USA*, 568 U.S. 398, 401, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013), and the "Complaint contains no allegations describing how Plaintiffs' candidacies will 'certainly' be harmed by the EO." (Doc. 41, p. 15.) State Defendants argue that "Plaintiffs fail to identify any concrete or particularized way that eligible electors registering to vote injures them in any of these [candidates, citizens, taxpayers, and voters] capacities." (Doc. 42, p. 19 n.6)

 **[13]** The court agrees with the Federal and State Defendants that Plaintiffs have not alleged any particular harm to their candidacies as a result of any executive actions taken by any defendant. A vague, generalized allegation that elections, generally, will be undermined, is not the type of case or controversy that this court may rule on under Article III. *See Toth v. Chapman*, 2022 WL 821175, at \* 7 (M.D. Pa. March 16, 2022) Accordingly, Plaintiffs do not have standing as candidates. [17]

### CONCLUSION

Plaintiffs do not have standing to assert the institutional injuries they raise here. Plaintiffs argue they have been granted an "individual" right in the Electors and Elections Clauses of the U.S. Constitution, but binding precedent obligates this court to reject this argument. The injuries that Plaintiffs allege are suffered equally by each Pennsylvania legislator. As such, Plaintiffs have not alleged any individualized and particularized harm. Accordingly, Plaintiffs do not have standing to pursue their challenges to the executive actions at issue in this lawsuit, and their amended complaint is dismissed. An order follows.

### All Citations

--- F.Supp.3d ----, 2024 WL 1285538

---

## Footnotes

The Plaintiffs in this matter are Representatives Dawn Keefer, Timothy Bonner, Barry Jozwiak, Barbara Gleim, Joseph Hamm, Wendy Fink, Robert Kauffman, Stephanie Borowicz, Donald (Bud) Cook, Paul (Mike) Jones, Joseph D'Orsie, Charity Krupa, Leslie Rossi, David Zimmerman, Robert Leadbetter, Daniel Moul, Thomas Jones, David Maloney, Timothy Twardzik, David Rose, Joanne Stehr, Aaron Berstine, Kathy Rapp, Jill Cooper, Marla Brown, Mark Gillen, and Senator Cris Dush. They are referred to collectively as "Plaintiffs."

2    The individual federal government Defendants, all sued in their official capacity, are as follows: President Joseph R. Biden, Secretary of Agriculture Tom Vilsack, Secretary of Health and Human Services Xavier Becerra, Secretary of State Antony Blinken, Secretary of Department of Housing and Urban Development Marcia Fudge, Secretary of Energy Jennifer Granholm, and Secretary of Education Dr. Miguel Cardona. Plaintiffs also name the United States, U.S. Department of Agriculture ("USDA"), U.S. Department of Health and Human Services ("HHS"), U.S. Department of State ("State Department"), U.S. Department of Housing and Urban Development ("HUD"), U.S. Department of Energy, and U.S. Department of Education as defendants. Collectively, the foregoing people and entities will be referred to as "Federal Defendants."

3    The individual state government Defendants, all sued in their official capacities, are Governor Joshua Shapiro, Secretary of the Commonwealth Al Schmidt, and Deputy Secretary for Elections and Commissions Jonathan Marks. They are referred to collectively as "State Defendants."

4    State Defendants filed their motion to dismiss on March 20, 2024. (Doc. 46.) Although this motion is not fully briefed, the issue of standing has been fully addressed in the context of Plaintiffs' motion for injunctive relief, such that the court can address the issue of standing with no further briefing.

5    The court also notes that Plaintiffs filed a motion for preliminary injunction on February 16, 2024. (Doc. 19.) Because Plaintiffs do not have standing to bring the claims asserted in this lawsuit, the motion for preliminary injunction will be denied as moot in a separate order.

6    EO 14019 went into effect on March 7, 2021.

7    GSA is not a named defendant in this action.

8    The court notes that 5 U.S.C. § 706 is more commonly referred to as the Administrative Procedure Act.

9    Plaintiffs also allege that the state legislature has previously declined to pass automatic voter registration laws, most recently in January 2023, as support for their claim that this action by the Governor nullifies their votes. (*Id.* at ¶¶ 132, 133.)

10   On February 23, 2024, the Foundation for Government Accountability filed a motion for leave to file an amicus brief, which was granted on February 26, 2024. (Docs. 29, 33.) The amicus brief was filed on February 26, 2024, and the court reviewed the amicus brief in considering the motions to dismiss. (Doc. 34.)

11   Plaintiffs' reliance on *Moore v. Harper* consists of quoting the language from the decision stating: "[t]he legislature acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution." 600 U.S. at 27, 143 S.Ct. 2065. Plaintiffs rely on this quotation to support their theory that because they are members of "the entity assigned particular authority by the Federal Constitution [,]" they possess an individual right that gives them standing to vindicate that right in the federal courts. (Doc. 21, p. 10.)

12   Both Plaintiffs and Federal Defendants address standing globally and make no separate arguments based on the cause of action. Therefore, the court will do the same.

13   On the merits in *Arizona*, the Supreme Court held that "the Elections Clause permits the people of Arizona to provide for redistricting by independent commission[,]" and denied the Legislature's appeal. *Id.* at 813, 135 S.Ct. 2652.

14   The alleged injuries in *Yaw* included suspending law in the Commonwealth, displacing/suspending the Commonwealth's "comprehensive statutory scheme," attempting to "exercise legislative authority exclusively vested in the General Assembly," wholly nullifying "any present or future legislative action," depriving Commonwealth citizens of the "right to be governed by their duly-elected representatives," diluting the rights

of the citizens of the Commonwealth "to choose their own officers for governmental administration," and diminishing the "legislative powers of the Senate Plaintiffs." *Id.* at 313–14.

15    For example, Plaintiffs allege that EO 14019 "nullifies the votes of the individual legislators, nullifies the enactment of the Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights, and jeopardizes candidates' rights to an election free from fraud and abuse." (Doc. 18, ¶ 178.) They allege the automatic voter registration announcement by Governor Shapiro "nullifies the votes and diminishes the influence of the individual legislators, nullifies the enactments of the State Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an election free from fraud and abuse." (*Id.* at ¶ 215.) And, they allege the HAVA directive by Secretary Schmidt "nullifies the votes and diminishes the influence of the individual legislators, nullifies the enactments of the State Legislature, violates the Electors Clause, violates the Elections Clause, deprives the legislators of their particular rights in exercising constitutional powers specifically delegated to them, and jeopardizes candidates' rights to an election free from fraud and abuse." (*Id.* at ¶ 223.)

16    The court notes that there is no allegation that they have been authorized to undertake this action on behalf of the General Assembly as a whole. Plaintiffs argue that they have been "authorized" by the State to undertake litigation in a "class of cases" under *Va. House of Delegates*. (Doc. 45, p. 11.) Plaintiffs claim that Pennsylvania case law holding that legislators "are granted standing to challenge executive actions when specific powers unique to their functions under the constitution are diminished or interfered with[,]" shows that they have been authorized to litigate on the state's behalf in "a defined class of cases." (*Id.* citing *Wilt v. Beal*, 26 Pa.Cmwlth. 298, 363 A.2d 876, 881 (1976) and *Va. House of Delegates*, 139 S. Ct. at 1952)). This is incorrect. The Supreme Court in *Va. House of Delegates* pointed to state statutes, such as in Indiana, where the legislature, through statute, had authorized itself to "employ attorneys other than the Attorney General to defend any law enacted creating legislative or congressional districts for the State of Indiana." 139 S. Ct. at 1952 (citing Ind. Code § 2-3-8-1 (2011)). Holding that a certain party has standing to pursue a certain case does not equate to the state authorizing that party to bring all actions on its behalf.

17    Plaintiffs also alleged they have standing as citizens, taxpayers, and voters. (Doc. 18, p. 29.) As noted by both Defendants, these claims are entirely speculative, and Plaintiff does not argue these bases of standing beyond their motion in support of preliminary injunction. (Doc. 41, p. 16; Doc. 47, p. 22 n.4.) Accordingly, the court concludes that Plaintiffs have not established standings on any of these grounds either.

---

**End of Document**                                        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 686359
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.

WISCONSIN VOTERS ALLIANCE, et al., Plaintiffs,

v.

Vice President Michael R. PENCE, et al., Defendants.

Civil Action No. 20-3791 (JEB)
|
Signed 02/19/2021

**Attorneys and Law Firms**

Erick G. Kaardal, Mohrman, Kaardal, & Erickson, P.A.,
Minneapolis, MN, for Plaintiffs.

**ORDER**

JAMES E. BOASBERG, United States District Judge

**\*1** On January 7, 2021, this Court ordered Plaintiffs'
counsel, Erick G. Kaardal, Esq., to show cause why it should
not refer him to the Committee on Grievances for his filings
in this matter. Represented by his own counsel, Kaardal has
now responded. See ECF No. 22 (OSC Response). As he
has not sufficiently allayed the Court's concerns regarding
potential bad faith, it will refer the matter to the Committee
via separate letter so that it may determine whether discipline
is appropriate.

The Court will not rebut each point Kaardal's Response
makes, including those pertaining to the flimsiness of the
underlying basis for the suit, but it will note several of the
numerous shortcomings that the Committee may wish to
consider. First, Kaardal's Declaration, which accompanies
the Response, spends most of its time supporting the suit's
theory on the unconstitutionality of the federal and state
statutes at issue. See ECF No. 22-1, Exh. B (Declaration
of Erick G. Kaardal, Esq.) at 15–42. Yet, it neither
acknowledges nor addresses a significant criticism from the
Court's Memorandum Opinion: "After explicitly disclaiming
any theory of fraud, see ECF No. 1 (Complaint), ¶ 44
('This lawsuit is not about voter fraud.'), Plaintiffs spend
scores of pages cataloguing every conceivable discrepancy or
irregularity in the 2020 vote in the five relevant states, already
debunked or not, most of which they nonetheless describe as
a species of fraud. E.g., id., at 37–109." ECF No. 10 (Mem.

Op.) at 2. The only reason the Court can see for the Complaint
to spend 70+ pages on irrelevant allegations of fraud, not
one instance of which persuaded any court in any state to
question the election's outcome, is political grandstanding.
The Response never explains otherwise.

Second, the Opinion wondered how this Court could possibly
have personal jurisdiction over the fifteen battleground-state
officials (all of whom serve in states that former President
Donald J. Trump lost), who were sued in their official
capacities. Id. at 4. The Declaration offers some thoughts on
potential jurisdiction, but none is availing. First, it correctly
notes that a suit against a state official in his official capacity
can be regarded as a suit against a state itself. See Kaardal
Decl. at 6. Yet, the very block quotation the Declaration
excerpts, see id., conveniently omits the next sentence in the
cited opinion, which states: "But the D.C. Circuit has held that
the District of Columbia's long-arm statute does not apply to
states themselves." Trump v. Comm. on Ways & Means, 415
F. Supp. 3d 98, 106 (D.D.C. 2019) (emphasis added) (citation
omitted). Second, it is true that in certain limited cases, a
suit against a state official in her official capacity may be
considered a suit against her in her individual capacity for
purposes of the D.C. long-arm statute. West v. Holder, 60 F.
Supp. 3d 190, 194 (D.D.C. 2014) (citation omitted). What
the Declaration again does not explain, however, is how the
state-official Defendants had any contact with the District of
Columbia so as to render them subject to that long-arm statute,
let alone be consistent with due process. This is thus another
point that may require attention from the Committee.

**\*2** Third, the Court questioned the timing of the Complaint
and its accompanying Motion for Preliminary Injunction. See
Mem. Op. at 6. In other words, if Plaintiffs were in good
faith challenging the constitutionality of federal and state
statutes that have long been on the books, why wait until two
weeks before the electoral votes were to be counted? The
Declaration says that counsel waited because of ripeness and
mootness concerns, see Kaardal Decl. at 5–6, but that makes
little sense. Plaintiffs' theory is that the challenged state
statutes are facially unconstitutional because each expressly
provides for a method of certification other than by the state
legislature itself. This claim, just like the one attacking the
federal election statutes, could have been brought any time
over the past years (or, in some cases, decades). It is fanciful
that counsel needed to worry whether states would in fact
take the allegedly unlawful action of certifying their election
results without the state legislature's involvement, as state
statutes required them to do just that. To wait as counsel did

smacks once again of political gamesmanship and may be relevant to the Committee.

Fourth, the Declaration spends time listing the efforts to serve all Defendants in accordance with the Court's Minute Order of December 23, 2020. See Kaardal Decl. at 12–14. This misses the forest for the trees, however. The Motion sought to have the Court enjoin the January 6, 2021, counting of the electoral votes. See ECF No. 4 (PI Mem.) at 45 ("The Court should issue the preliminary injunction prior to January 6, 2021, when federal Defendants meet to count the Presidential electors to elect a President and Vice President, because the Plaintiffs have met the factors required."). That means that the Court would have had to hold a hearing and issue an opinion before that date, but Plaintiffs were still in the process of serving Defendants on January 4. See Kaardal Decl. at 13. A suit that truly wished a merits opinion before January 6 would have given notice to all Defendants as soon as (or before) the Complaint and Motion were filed on December 22, 2020. See Fed. R. Civ. P. 65(a)(1). Plaintiffs never did this or ever contacted the Court about a hearing prior to its January

4 Opinion, leading the Court to conclude that they wished only to file ==a sweeping Complaint filled with baseless fraud allegations and tenuous legal claims== to undermine a legitimate presidential election.

The Court ends by underlining that the relief requested in this lawsuit is staggering: to invalidate the election and prevent the electoral votes from being counted. When any counsel seeks to target processes at the heart of our democracy, the Committee may well conclude that they are required to act with far more diligence and good faith than existed here.

The Court, accordingly, ORDERS that Plaintiffs' counsel shall be referred to the Committee on Grievances. It expresses no opinion on whether discipline should be imposed or, if so, what form that should take.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 686359

---

© 2024 Thomson Reuters. No claim to original U.S. Government Works.