**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

Hon. Guy Reschenthaler et al,

                Plaintiffs,

      v.

Secretary Al Schmidt et al,

                Defendants.

Case No. 1:24-cv-01671
Hon. Christopher C. Conner

**BRIEF OF *AMICUS CURIAE* SECURE FAMILIES INITIATIVE IN**
**SUPPORT OF DEFENDANTS**

## **<u>TABLE OF CONTENTS</u>**

<u>Pages</u>

INTEREST OF AMICUS CURIAE ........................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................................1

ARGUMENT ........................................................................................................5

I.     The Relief Plaintiffs Seek Will Disenfranchise Pennsylvanians Serving in the Military and Living Overseas in the 2024 Election. ...............5

II.    Requiring Additional Verification of Voter Identity Would Add to the Already Significant Barriers to Voting Overseas, Undermining Congressional Intent in Passing UOCAVA. ....................................................7

        A.    UOCAVA Voters Already Face Significant Barriers to Voting...........8

        B.    Requiring Verification of Voter Identity Would Further Deter and Interfere with Voting from Overseas............................................12

        C.    Requiring Identification Is Inconsistent with Congress's Intent to Protect Military and Overseas Voters. ...........................................15

CONCLUSION ...................................................................................................16

i

# TABLE OF AUTHORITIES

**Pages**

## Statutes

25 PA. CONS. STAT. § 2642(k)..................................................................6, 7

25 Pa. Cons. Stat. § 2814(a)..................................................................13

25 PA. CONS. STAT. § 3515 ..................................................................10

52 U.S.C. § 20302(a)(8)(A) ..................................................................7

52 U.S.C. § 21083(b)(3)(C)(i) ..............................................................16

Help America Vote Act, 52 U.S.C.A. § 21082..........................................5

Pub. L. No. 107-107 (2011), 115 Stat. 1012 (2001) ..................................15

## Other Authorities

*2020 Overseas Citizen Population Analysis Report*, FEDERAL VOTING
   ASSISTANCE PROGRAM (Sept. 2021),
   https://www.fvap.gov/uploads/FVAP/Reports/OCPA-2020-Final-
   Report_20220805.pdf ...............................................................9, 10, 11

*2020 Post-Election Voting Survey: Active Duty Military*, FEDERAL
   VOTING ASSISTANCE PROGRAM (2021),
   https://www.fvap.gov/uploads/FVAP/Reports/FVAP_ADM-
   Technical-Report-2020_FINAL_20210831.pdf......................................9, 11, 12

*2020 Report to Congress*, FEDERAL VOTING ASSISTANCE PROGRAM
   (2021), https://www.fvap.gov/uploads/FVAP/Reports/FVAP-2020-
   Report-to-Congress_20210916_FINAL.pdf...........................................11

Birth Abroad – Register Your Child as a U.S. Citizen, U.S. EMBASSY
   AND CONSULATE GENERAL OF THE NETHERLANDS,
   https://nl.usembassy.gov/birth-abroad-register-your-child-as-a-u-s-
   citizen/...................................................................................................13

Birth Abroad and Eligibility for U.S. Citizenship, U.S. EMBASSY &
   CONSULATES IN MEXICO,
   https://mx.usembassy.gov/passports/births/ ...........................................13

#124654244v1

Donald Stephen Inbody, *Grand Army of the Republic or Grand Army of the Republicans?: Political Party and Ideological Preferences of American Enlisted Personnel* (Aug. 2009) (Ph.D dissertation, University of Texas at Austin), https://repositories.lib.utexas.edu/items/596313fa-4545-4735-8a75-299c5b91fe8a ............................................................................ 4

*Elections Data*, COMMONWEALTH OF PENNSYLVANIA, https://www.pa.gov/en/agencies/vote/elections/elections-data.html ................... 6

H.R. Rep. No. 99-765 (1986) *reprinted in* 1986 U.S.C.C.A.N. 2009 ................ 8, 15

*Housing America's Military Families*, BIPARTISAN POLICY CENTER (2023), https://bipartisanpolicy.org/event/housing-americas-military-families/ .................................................................................... 9

Josh Kelety, *How Do Pennsylvania service Members and Others Who Are Overseas Vote?*, NBC 10 PHILADELPHIA (Oct. 1, 2024), https://www.nbcphiladelphia.com/news/local/pennsylvania-service-members-overseas-vote/3986006/?os=wtmbTQtAJk9ya&ref=app .................................. 6

Kim Parker, Anthony Cilluffo & Renee Stepler, *6 Facts About the U.S. Military and Its Changing Demographics*, PEW RESEARCH CENTER (Apr. 13, 2017), https://www.pewresearch.org/fact-tank/2017/04/13/6-facts-about-the-u-s-military-and-its-changing-demographics/ ......................................................................... 4

Niall McCarthy, *U.S. Military Voting Intention in 2016 and 2020*, STATISTA (Sept. 1, 2020), https://www.statista.com/chart/22761/us-military-voting-intention-in-the-november-election/ .................................................................. 4

*Pennsylvania Counties Notice and Cure Policies*, ACLU (Last updated Oct. 3, 2024), https://www.aclupa.org/en/pennsylvania-counties-notice-and-cure-policies ................................................................ 10

SOCIAL SECURITY ADMINISTRATION OFFICE OF THE INSPECTOR GENERAL, A-03-09-29115, *Quick Response Evaluation, Accuracy of the Help America Vote Verification Program Responses* (June 2009), https://oig-files.ssa.gov/audits/full/A-03-09-29115.pdf ......................... 14

#124654244v1

*State of the Military Voter*, FEDERAL VOTING ASSISTANCE PROGRAM,
   https://www.fvap.gov/info/reports-surveys/StateoftheMilitaryVoter ................11

*States with Signature Cure Process*, NATIONAL CONFERENCE OF
   STATE LEGISLATURES (Last updated Oct. 9, 2024),
   https://www.ncsl.org/elections-and-campaigns/table-15-states-
   with-signature-cure-processes ............................................................................9

#124654244v1

## INTEREST OF AMICUS CURIAE

Secure Families Initiative ("SFI") is a nonpartisan 501(c)(4) not-for-profit organization comprising military spouses and family members that advocates for federal and state policies to increase accessibility for absentee voters, especially registered military-affiliated and overseas voters. SFI also educates and registers those voters and engages in non-partisan "get-out-the-vote" efforts for military voters in all elections. In light of this mission, SFI has a strong interest in ensuring that their members in Pennsylvania, as well as all military and overseas Americans voting in Pennsylvania, are not unduly burdened in exercising their right to vote. Drawing on the experiences of its staff and the military and overseas voters they serve, SFI aims to inform the Court how the unjustifiable and poorly thought-out emergency relief Plaintiffs request would disenfranchise these voters.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Only a few short weeks before the November 5, 2024 General Election and long after military and overseas voters began receiving and returning their ballots, Plaintiffs seek emergency relief that would upend the voting process for Pennsylvanians casting ballots from outside the country or out of state, and disenfranchise many eligible voters—including voters serving the United States of America in the armed forces and their families posted overseas. Specifically, Plaintiffs seek an injunction segregating and prohibiting the counting of ballots from

U.S citizens voting in Pennsylvania pursuant to the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") "until the identity and eligibility of the applicant can be verified." Am. Compl. at 42, ECF No. 23; *see also* Proposed Order, ECF No. 8. Nothing in Plaintiffs' submissions explains how such proposed verification could possibly occur before the final results of the 2024 election are certified. The answer is obvious: it could not, thus risking disenfranchisement of these federally protected voters.

Plaintiffs' demand for such relief is grounded in their belated assertion that, contrary to longstanding state law and practice, federal law requires that the registrations of UOCAVA-protected voters be deemed invalid if voters cannot prove that they provided specific identification verification when registering to vote. Defendants and Intervenors have already explained why this claim fails as a matter of law. *See, e.g.*, Brief in Opp. of Motion for Temp. Restraining Order by Democratic National Convention, ECF No. 29; Brief in Support of Motion to Dismiss by Secretary Schmidt and Deputy Secretary Marks, ECF No. 30; Mem. of Law by Democratic National Convention, ECF No. 41; Mem. of Law by Secretary Schmidt and Deputy Secretary Marks, ECF No. 50. *Amicus* SFI submits this brief to stress the substantial irreparable harm Plaintiffs' requested relief would inflict on its members and other eligible overseas and military voters, many of whom have already received or even returned their ballots under the longstanding and well-

established rules and practices Plaintiffs seek to upend. It is manifestly unfair to demand that these voters—who, by definition, are not as readily available to "cure" alleged deficiencies with their ballot—suddenly comply with newly imposed verification requirements based on a lawsuit not filed until after federal law requires their ballots be distributed and long after many of them registered to vote following the rules and procedures in place at the time.

Beyond the present exigency, Plaintiffs' proposed additional registration hurdle is bad law and bad policy. It would add to the already substantial barriers faced by military and overseas Americans seeking to vote in Pennsylvania and nationwide, risking the permanent disenfranchisement of the very voters Congress sought to specially protect through UOCAVA and the 2009 statute amending UOCAVA, the Military and Overseas Voter Empowerment Act ("MOVE"), both of which require states to allow U.S. citizens serving in the military or living overseas to vote absentee in federal elections.

*Amicus* SFI submits this brief not to favor one political party or another but rather to safeguard the voices of the broad coalition of voters it represents. UOCAVA voters are U.S. citizens who are active members of the Uniformed Services, the Merchant Marines, the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, their eligible family members, and any other U.S. citizens residing outside the United States.

3

Military and overseas voters represent a diverse swath of society. In terms of race and ethnicity, demographics among military members largely reflect the country as a whole.[1] In terms of party preference, military members are far from a monolith. According to survey results, they were near-evenly split among the two prominent presidential candidates in the 2020 federal election[2] and, historically, enlisted personnel are about three times more likely to identify as Independents than their civilian counterparts.[3] United States citizens living abroad, including members of the military and their families, deserve a voice in their government's electoral process. Congress has made its agreement with this principle clear through federal legislation such as UOCAVA and MOVE. Plaintiffs' effort to undermine these important goals and congressional intent by disenfranchising military and overseas voters in Pennsylvania should be roundly rejected.

---

[1] Kim Parker, Anthony Cilluffo & Renee Stepler, *6 Facts About the U.S. Military and Its Changing Demographics*, PEW RESEARCH CENTER (Apr. 13, 2017), https://www.pewresearch.org/fact-tank/2017/04/13/6-facts-about-the-u-s-military-and-its-changing-demographics/.

[2] Niall McCarthy, *U.S. Military Voting Intention in 2016 and 2020*, STATISTA (Sept. 1, 2020), https://www.statista.com/chart/22761/us-military-voting-intention-in-the-november-election/.

[3] Donald Stephen Inbody, *Grand Army of the Republic or Grand Army of the Republicans?: Political Party and Ideological Preferences of American Enlisted Personnel*, 100 (Aug. 2009) (Ph.D dissertation, University of Texas at Austin), https://repositories.lib.utexas.edu/items/596313fa-4545-4735-8a75-299c5b91fe8a.

4

**ARGUMENT**

Plaintiffs are attempting to improperly impose verification and identification requirements on UOCAVA voters, while also asking this Court to "[i]ssue an order for injunction requiring county election officials to segregate UOCAVA ballots returned for the 2024 election until the identity and eligibility of the applicant can be verified as required under HAVA[4] and state law." Am. Compl. at 42. Plaintiffs' position and requested relief will not only disenfranchise U.S. citizens, but also unduly burden a population that Congress intended to protect.

**I.      The Relief Plaintiffs Seek Will Disenfranchise Pennsylvanians Serving in the Military and Living Overseas in the 2024 Election.**

Plaintiffs ask this Court to prohibit county officials from counting UOCAVA ballots until the identity and eligibility of UOCAVA applicants can be verified. Am. Compl. at 42. Undoubtedly, relief at this stage in the election cycle and on this timeline will disenfranchise voters, including military servicemembers and their families who have already cast their ballots in good faith.

This brief is filed just 15 days from Election Day. According to Plaintiffs, Pennsylvania has already sent out over 25,000 ballots to overseas voters. Am. Compl. ¶ 20. And other data suggest that the state has already received

---

[4] Help America Vote Act, 52 U.S.C.A. § 21082.

approximately 16,000[5] returned ballots from UOCAVA voters. Under the Pennsylvania Election Code, county boards of election must certify the election results "no later than the third Monday following the . . . election"—this year, by November 25, 2024. 25 PA. CONS. STAT. § 2642(k). Plaintiffs have not—and cannot—articulate any process for carrying out the additional identity-verification requirement they propose in the short weeks that remain before the state deadline for certifying the election. By definition, UOCAVA voters are less available to "cure" any alleged deficiencies in their registration or ballots. They cannot simply present themselves at their county election office, for example, to provide additional identification documents. And they may experience substantial mail delays. Any

---

[5] This number is an estimate based on publicly available information. Pennsylvania reports daily totals for absentee & mail-in ballots through its voter data portal. While UOCAVA ballots fall under the absentee ballot category, the data portal does not break out totals specifically for UOCAVA ballots. However, according to a spokesperson for the PA Department of State, as of September 24, 2024, "11,922 military and overseas Pennsylvania voters had an approved mail ballot application for the 2024 general election." Josh Kelety, *How Do Pennsylvania service Members and Others Who Are Overseas Vote?*, NBC 10 PHILADELPHIA (Oct. 1, 2024), https://www.nbcphiladelphia.com/news/local/pennsylvania-service-members-overseas-vote/3986006/?os=wtmbTQtAJk9ya&ref=app. Based on an archived version of the voter data portal, there were 44,193 total absentee ballots approved as of September 25, 2024 at 8AM. *Elections Data*, COMMONWEALTH OF PENNSYLVANIA, https://www.pa.gov/en/agencies/vote/elections/elections-data.html. Therefore, the ratio of UOCAVA ballots to total absentee ballots is approximately 26.98%. Applying that ratio to the total number of absentee ballots as of October 17, 2024 at 8AM (59,701) gives an estimate of 16,107 UOCAVA ballots.

new process for UOCAVA voters would necessarily require a lengthy timeline and carefully considered procedures to account for UOCAVA voters' specific needs.

Yet, Plaintiffs' proposed order suggests that the Court order county election officials to "provide a meaningful opportunity for the applicant to correct or to provide the information required" and "provide the deadline for receipt of the information." Proposed Order at 3. Plaintiffs fail to explain what that "meaningful opportunity" would consist of or even what an appropriate deadline would be. *Id.* That is because no such meaningful opportunity is possible under the current timeline. Indeed, by requiring the transmission of UOCAVA ballots 45 days before an election, Congress has spoken on what a "meaningful" timeline must be to allow UOCAVA voters to receive and respond to election communications. 52 U.S.C. § 20302(a)(8)(A). But there is now only a month before Pennsylvania's election results certification deadline. 25 PA. CONS. STAT. § 2642(k). Given their inexcusable delay, Plaintiffs' complaint amounts to a request that this Court invalidate legitimately cast ballots and disenfranchise Pennsylvanians who are and were eligible to vote at the time they registered and voted.

## II. Requiring Additional Verification of Voter Identity Would Add to the Already Significant Barriers to Voting Overseas, Undermining Congressional Intent in Passing UOCAVA.

Even under an ordinary timetable, Plaintiffs' unwarranted demands for additional identification and verification requirements for UOCAVA voters would

pile onto the already numerous barriers UOCAVA voters face when voting overseas, undermining Congress's intent in passing UOCAVA.

### A.    UOCAVA Voters Already Face Significant Barriers to Voting.

Voting from overseas is challenging for Pennsylvanians. When deliberating over the merits of enacting UOCAVA, Congress found that one reason why military and overseas citizens faced difficulties voting was because States had enacted legal and administrative obstacles that "discourage[d] or confuse[d] overseas citizens." H.R. REP. NO. 99-765, at 9 (1986), *reprinted* in 1986 U.S.C.C.A.N. 2009, 2012. Despite laws like UOCAVA and MOVE, such difficulties persist, both across the nation and in Pennsylvania.

Unlike the thirty-one states that provide some form of email, fax, or online ballot return, Pennsylvania requires UOCAVA voters to physically mail in their absentee ballots. A physical ballot requirement imposes additional burdens on military and overseas voters. For example, if military and overseas voters receive an electronic absentee ballot, they will need printer access to return the ballot. However, in 2020, 29% of active-duty military members did not have "reliable access to a

printer."[6] In addition, about 60% of servicemembers do not live on a military base,[7] and may have to travel to reach a post office to return their ballot. Finally, a physical mail-in requirement necessarily requires military and overseas voters to budget additional time to ensure that their ballot is timely received, especially given the unreliability of some foreign postal services.[8]

Further, Pennsylvania's existing patchwork of "notice and cure" procedures for correcting ballot errors that otherwise prevent a ballot from counting are often completely non-existent or insufficient for UOCAVA voters.[9] "Notice and cure" procedures allow county officials to notify absentee voters if their ballot envelope is

---

[6] *2020 Post-Election Voting Survey: Active Duty Military*, FEDERAL VOTING ASSISTANCE PROGRAM 28 (2021), https://www.fvap.gov/uploads/FVAP/Reports/FVAP_ADM-Technical-Report-2020_FINAL_20210831.pdf [hereinafter *2020 Post-Election Survey*].

[7] *Housing America's Military Families*, BIPARTISAN POLICY CENTER (2023), https://bipartisanpolicy.org/event/housing-americas-military-families/.

[8] *2020 Overseas Citizen Population Analysis Report*, FEDERAL VOTING ASSISTANCE PROGRAM 15 (Sept. 2021), https://www.fvap.gov/uploads/FVAP/Reports/OCPA-2020-Final-Report_20220805.pdf (noting that roughly 20% of OCPS [Overseas Citizens Population Survey] respondents "reported that the postal system in their country was somewhat or very unreliable") [hereinafter *Overseas Citizens Population Survey*].

[9] *States with Signature Cure Process*, NATIONAL CONFERENCE OF STATE LEGISLATURES (Last updated Oct. 9, 2024), https://www.ncsl.org/elections-and-campaigns/table-15-states-with-signature-cure-processes.

#124654244v1

defective and give those voters a chance to cure any defects.[10] Pennsylvania's individual counties decide how to implement such procedures, if they implement them at all.[11] Out of Pennsylvania's sixty-seven counties, at least sixteen give no notice or opportunity to cure deficient absentee ballots; five counties have not published or made available any policies either way; and while ten counties do provide notice of deficiencies, instead of receiving an opportunity to cure, absentee voters must appear at the polling place *in person* to vote using a provisional ballot.[12] This latter option is plainly unavailable for most UOCAVA voters due to the required international travel, and effectively prevents them from curing deficiencies in their ballots.

These and other existing barriers already disenfranchise many overseas voters. In 2020, over 20% of active-duty military members reported that they wanted to vote but were unable to do so.[13] Of that group, 54% stated that they did not vote because they "had difficulty requesting an absentee ballot," and 43% reported that

---

[10] While Pennsylvania has enshrined additional statutory protections preventing UOCAVA ballots from being discarded due to immaterial defects, *see* 25 PA. CONS. STAT. § 3515, UOCAVA voters remain burdened by Pennsylvania's insufficient notice and cure policies for those defects that are deemed material.

[11] *Pennsylvania Counties Notice and Cure Policies*, ACLU (Last updated Oct. 3, 2024), https://www.aclupa.org/en/pennsylvania-counties-notice-and-cure-policies.

[12] *Id*.

[13] *Overseas Citizens Population Survey*, *supra* note 8, at 38.

10

their "absentee ballot did not arrive at all."[14] In addition, 43% of those military members who wanted to vote but were unable reported that they had "difficulty registering to vote," while 40% cited voting process complications as reasons they were deterred from voting.[15] Regarding overseas voters more generally, out of those who responded to the Federal Voting Assistance Program's ("FVAP") Overseas Citizens Population Survey ("OCPS"), 82% of those who did not return a ballot in 2020 did not vote because of "difficulties completing the process."[16]

There is no question that such procedural hurdles deprive Americans who desire to participate in elections of the opportunity to do so. According to the FVAP's Post-Election Voting Survey of Active-Duty Military, 67% of active-duty service members were interested in voting during our last presidential election in 2020.[17] Similarly, OCPS, a survey "distributed to overseas citizens who requested an absentee ballot,"[18] found that 89% of respondents were "very interested in the

---

[14] *2020 Post-Election Survey*, *supra* note 6, at 39.

[15] *Id.*

[16] *2020 Report to Congress*, FEDERAL VOTING ASSISTANCE PROGRAM 17 (2021), https://www.fvap.gov/uploads/FVAP/Reports/FVAP-2020-Report-to-Congress_20210916_FINAL.pdf.

[17] *State of the Military Voter*, FEDERAL VOTING ASSISTANCE PROGRAM, https://www.fvap.gov/info/reports-surveys/StateoftheMilitaryVoter.

[18] *Overseas Citizens Population Survey*, *supra* note 8, at 168.

11

2020 General Election."[19] Notwithstanding this interest, participation among UOCAVA-eligible voters remained lower than among the general population. For example, according to the same survey, in 2020, only 47% of active-duty service members participated (compared to 74% of the civilian population).[20]

### B.   Requiring Verification of Voter Identity Would Further Deter and Interfere with Voting from Overseas.

Plaintiffs' demand to require additional verification of and identification from UOCAVA applicants prior to accepting their ballots will only further heighten difficulties associated with voting from abroad, risking both deterring Pennsylvania voters from exercising their right to vote and increasing the likelihood of perceived errors that will be used as excuses to spoil the ballots of Pennsylvanians who do attempt to vote from overseas.

*First*, Plaintiffs fail to recognize that UOCAVA voters may not have access to the forms of identification they demand. Depending on how long they have been overseas or how often they have moved, UOCAVA voters may have long-expired driver's licenses or have lost their driver's licenses or social security cards; UOCAVA voters may also not have driver's licenses from the correct state, despite being legal residents. Separately, UOCAVA voters are also less likely to have these

---

[19] *Id.* at 35.

[20] *2020 Post-Election Survey*, *supra* note 6, at 12.

required documents in the first place. Children born abroad are not automatically enrolled with the Department of Social Services. Instead, following certification of a child's citizenship, parents may separately apply for a social security number.[21] If the parents decide not to apply, the child is without a social security number, yet will still be eligible to vote at the age of eighteen. So, for example, a military family's child who was born abroad, whose last U.S. residence was in Pennsylvania and who intends to return to the state is an eligible Pennsylvania voter but could nonetheless lack a social security number. *See* 25 Pa. Cons. Stat. § 2814(a). The same is true for state-issued ID and driver's licenses; a voter born or living abroad long-term will rarely have a reason to obtain a state-issued identification.

*Second*, even if military and overseas voters have this documentation, verification processes can be unreliable, especially when it comes to verifying social security numbers. In 2009, the Office of the Inspector General produced a report to evaluate and "assess the accuracy of the verification responses provided by the Help

---

[21] *See*, *e.g.*, Birth Abroad – Register Your Child as a U.S. Citizen, U.S. EMBASSY AND CONSULATE GENERAL OF THE NETHERLANDS, https://nl.usembassy.gov/birth-abroad-register-your-child-as-a-u-s-citizen/ (noting that social security numbers are separate and must be applied to after a child's citizenship has been registered); Birth Abroad and Eligibility for U.S. Citizenship, U.S. EMBASSY & CONSULATES IN MEXICO, https://mx.usembassy.gov/passports/births/ (same).

#124654244v1

America Vote Verification (HAVV) program."[22] That report found that "[b]ecause of the limitations of the matching criteria established by the legislation, the HAVV program may indicate a no-match when a match does in fact exist in SSA [Social Security Administration] records."[23] The report concluded that "the high no-match response rate and the inconsistent verification responses could hinder the States' ability to determine whether applicants should be allowed to vote."[24] For most voters, a failed SSA match will simply require showing some form of identification (including e.g., a utility bill) at the polls. But if military and overseas voters are relying on their social security numbers (which many will since they will often lack state driver's licenses or IDs), their vote may be discounted, leaving this population with limited recourse to correct the error. As a result, Plaintiffs' proposal jeopardizes the ability of United States citizens living abroad to participate in our elections.[25]

---

[22] SOCIAL SECURITY ADMINISTRATION OFFICE OF THE INSPECTOR GENERAL, A-03-09-29115, *Quick Response Evaluation, Accuracy of the Help America Vote Verification Program Responses* 1 (June 2009), https://oig-files.ssa.gov/audits/full/A-03-09-29115.pdf.

[23] *Id.* at 4.

[24] *Id.*

[25] Moreover, as discussed in Part I, *supra*, for the 2024 election, Plaintiffs have not suggested any method to timely verify identification in a way that won't disenfranchise eligible populations.

#124654244v1

**C.     Requiring Identification Is Inconsistent with Congress's Intent to Protect Military and Overseas Voters.**

Plaintiffs' proposed additional verification and identification requirements for UOCAVA applicants undercut Congress's clear intent "to facilitate absentee voting" for this population, especially given the realities of voting from abroad. H.R. Rep. No. 99-765, at 5.

In passing UOCAVA, a bipartisan act, Congress expressed its unequivocal intent to protect military and overseas voters, and to facilitate their ability to participate in elections. When first enacted, UOCAVA sought "to facilitate absentee voting by United States citizens, both military and civilian, who are overseas." *Id.* Indeed, when Congress later passed the National Defense Authorization Act for Fiscal Year 2002, it reiterated this desire to protect military and overseas voters: it was the "sense of Congress" to ensure that election officials are "aware of the importance of the ability of each . . . uniformed services voter to exercise the right to vote" and "perform [their] duties as an election administrator with the intent to ensure that each uniformed services voter receives the utmost consideration and cooperation when voting . . . and that each valid ballot cast by such a voter is duly counted." Pub. L. No. 107-107 (2011), 115 Stat. 1012, 1274 (2001).

By enacting UOCAVA and subsequent legislation, Congress has expressed a clear desire to protect military and overseas voters in exercising their right to vote. Plaintiffs' position conflicts with Congress's intent. Indeed, as Defendants have

#124654244v1

explained in their briefing, where certain proof of identification is otherwise required, federal law *exempts* UOCAVA voters from complying. Under HAVA, UOCAVA voters are exempted from the identification and verifying requirements for first-time voters who registered by mail. 52 U.S.C. § 21083(b)(3)(C)(i). In addition to supporting Defendants' position on the merits, these exemptions also demonstrate a clear intent on Congress's part to alleviate burdens on UOCAVA voters. Plaintiffs ignore Congress by fabricating new hurdles for overseas voters.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should not require additional verification or proof of identification for UOCAVA applicants in Pennsylvania and deny Plaintiffs' sought-after relief.

16

Dated:  October 21, 2024                    Respectfully submitted,

By:     */s/ Margaret Spitzer Persico*
_____

Margaret Spitzer Persico, Pa. Bar No.
320178
Timothy J. Ford,* Pa. Bar No. 325290
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Tel: (215) 575-7000
Fax: (215) 754-4603
mpersico@dilworthlaw.com
tford@dilworthlaw.com

Danielle Lang*
Valencia Richardson*
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
dlang@campaignlegalcenter.com
vrichardson@campaignlegalcenter.com

Corey Stoughton*
Alexandra G. Butler*
SELENDY GAY PLLC
1290 Avenue of the Americas
New York, NY 10104
Tel: (212) 390-9000
cstoughton@selendygay.com
abutler@selendygay.com

*Attorneys for Amicus Curiae, Secure Families Initiative*

*Petition for Special Admission pending*

17

## CERTIFICATIONS

I, Margaret Spitzer, hereby certify that a copy of this brief has been served on all counsel of record using the Court's CM/ECF system.

I further certify that this brief contains 3,440 words, not including the table of contents, table of authorities, signature block and certifications, and 4,050 including the same, and therefore complies with Local Rule 7.8(b)(2). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief.

October 21, 2024                                     By: */s/ Margaret Spitzer* _____
                                                          Margaret Spitzer Persico

18