IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Hon. Guy Reschenthaler, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Secretary Al Schmidt, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-01671 <br> Hon. Christopher C. Conner |

BRIEF OF *AMICUS CURIAE* AMERICA FIRST LEGAL
FOUNDATION IN SUPPORT OF PLAINTIFFS

Walter S. Zimolong, Esquire
ZIMOLONG, LLC
Attorney I.D. 89151
wally@zimolonglaw.com
PO Box 552
Villanova, PA 19085-0552
Tele: 215-665-0842

Laura Stell*
AMERICA FIRST
LEGAL FOUNDATION
Attorney I.D. 334806
611 Pennsylvania Ave. SE #231
Washington, DC 20003
Tel: (202) 836-7958
laura.stell@aflegal.org

## INTEREST OF AMICUS CURIAE

America First Legal Foundation ("AFL") is a nonpartisan 501(c)(3) nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and encourage public knowledge and understanding of the law and individual rights guaranteed under the United States Constitution and the laws of the United States. AFL's mission includes promoting government transparency and accountability by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media, including social media platforms, all to educate the public. In alignment with its mission, AFL has a strong interest in ensuring election integrity nationwide, which necessarily includes swing-states like the Commonwealth of Pennsylvania. If the Commonwealth proceeds in its unlawful election practices, the legal votes of not only Pennsylvanians, but all of America's voters could be disenfranchised due to the nationwide implications of a Presidential Election.

In 2002, Congress passed the Help America Vote Act ("HAVA"), Pub. L. No. 107-252, Oct. 29, 2022, 116 Stat. 1666. Among other things, HAVA was designed to "establish minimum standards for States and units of local governments with responsibility for the administration of Federal elections." *Id.* Under HAVA, a State may not accept or process an application for voter registration unless the application includes either a valid driver's license number or the last 4 digits of the applicant's social security number. 52 U.S.C. § 21083(a)(5)(A)(i)(I) and (II). HAVA then requires that local election officials verify the requisite identifying information against state and federal databases. 52 U.S.C. § 21083(a)(5).

However, the Commonwealth of Pennsylvania maintains a voter registration system that blatantly violates this federal law. In 2018, the Secretary of the Commonwealth directed all 67 county boards of election to ignore HAVA's verification mandate and to register *any* applicant to vote even if an applicant's driver's license number or the last four digits of his social security number is invalid or cannot be verified. So, in addition to the unlawful guidance and directives discussed by Plaintiffs, the 2018 guidance further evidences a longstanding pattern of Commonwealth

officials defying clear federal verification mandates, further pressing the exigency of the Court's intervention to ensure that Pennsylvania only afford those voters who are "otherwise valid" pursuant to federal law to utilize the privileges under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. § 20301 *et seq. Id.* at § 20302(a)(2).

The plain language of HAVA clearly requires that for those applicants who have a driver's license or a social security number, that state election officials verify those credentials to be valid prior to registering a person to vote. The Commonwealth's 2018 directive, along with the guidance and directives referenced by Plaintiffs, are in clear and direct opposition to HAVA and leave the Commonwealth vulnerable to bad actors, both foreign and domestic, who might seek to benefit from the successful registration of fraudulent voters to cast illegal ballots that could be outcome determinative in the November 5, 2024 election. Accordingly, AFL, as *amicus curiae* supports the Court finding in favor of Plaintiffs and enjoining the unlawful election practices of Defendants.

I. **PENNSYLVANIA'S ELECTION POLICY AGAINST IDENTITY VERIFICATION OF UOCAVA VOTERS VIOLATES THE PLAIN LANGUAGE OF HAVA.**

Plaintiffs ask is nothing extraordinary. They simply seek

enforcement of the law as written. Defendants and their supporting *amici* cry of "disenfranchisement" of UOCAVA voters, when in fact, the present policies of the Commonwealth disenfranchise both legal UOCAVA voters and non-UOCAVA voters alike. For every fraudulent UOCAVA registration granted and ballot issued, a verifiable UOCAVA voter has his or her vote nullified.

The plain meaning of Section 303(a) of HAVA, 52 U.S.C. § 21083(a)(5), requires state election officials to verify the validity of the applicant's driver's license or last four digits of their social security number **before** that applicant may register to vote. "The starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534, (2004). Section 303(a)(5) of HAVA is entitled "Verification of voter registration information." 52 U.S.C. § 21083(a)(5). Section 303(a)(5)(i) states that "a voter registration for an election for Federal office **may not be accepted or processed by a State** unless the application includes" a valid driver's license number or the last four digits of the applicant's social security number. 52 U.S.C.A. § 21083(a)(5)(A)(i)(I) and (II) (emphasis added). Section 303(a)(5)(A)(iii) is entitled "determination of validity of number provided" and states that the validity of the information provided

shall be determined by state law. 52 U.S.C. § 21083(a)(5)(A)(iii). Finally, Section 303(a)(5)(B)(i) states that "[t]he chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required **to enable each such official to verify the accuracy of the information provided on applications for voter registration**." 52 U.S.C. § 21083(a)(5)(B)(i) (emphasis added).

First, there can be no dispute that HAVA clearly and unambiguously states that an application "may not be accepted or processed" unless it contains the applicant's valid driver's license number or last four digits of the applicant's social security number. Thus, there is little doubt that an official violates HAVA if he processes or accepts voter registration applications with an invalid driver's licenses number or omit the last four digits of a social security number. Second, HAVA states that state officials "shall determine the validity of the number provided." Likewise, it is clear that a state official violates HAVA if he does not determine the validity of an applicant's driver's license or social security number provided. Section 303(a)(5)(i) and Section 303(a)(5)(iii) should be read harmoniously. *City of*

*Philadelphia v. Att'y Gen. of United States*, 916 F.3d 276, 284 (3d Cir. 2019) ("We are mindful not to read [statutory] provisions in isolation. Rather, we look to the text and structure of the statute as a whole.") In sum, to comply with HAVA's prohibition on processing or accepting applications with an invalid driver's license or social security number, state officials must necessarily verify the validity of those numbers.[1] Anything less would render HAVA's prohibition on processing or accepting applications with invalid driver's license or social security numbers meaningless. *TRW Inc. v. Andrews*, 534 U.S. 19, 31, (2001) ("[A] cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.")

To further elucidate on the intent of Congress, the Court should look to the titles and headings of Section 303(a) and its subparts. *I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc.*, 502 U.S. 183, 189, (1991) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text.") Those headings leave no doubt that HAVA requires state election

---

[1] To assist state officials in the verification process, HAVA also requires that the "chief State election official," here the Secretary, "enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority." 52 U.S.C. § 21083(a)(5)(B)(i).

officials to verify the accuracy of the applicant's driver's license or social security number so that prohibited registration are not processed or accepted. Section 303(a) is entitled "**Verification** of voter registration information." 52 U.S.C. § 21083(a)(5) (emphasis added). And section 303(a)(5)(A)(iii) is entitled "determination of **validity** of number provided." 52 U.S.C. § 21083(a)(5)(A)(iii) (emphasis added).

Applying the plain meaning of the words "verification" and "validity" dictates what official shall due under the statute. Verification means "the act or process of verifying."[2] "Verifying" is a verb that means "to establish the truth, accuracy, or reality of."[3] "Validity" means "the state of being acceptable according to the law" or "the quality of being well-grounded, sound, or correct."[4] Thus, the plain and ordinary meanings of these words mandate that state election officials engage in act of **verifying** the driver's license or last four digits of the applicant's social security number to determine whether they are **valid**. *Ohio Republican Party v. Brunner*, 582 F. Supp. 2d 957, 963 (S.D. Ohio 2008) (overturned on other grounds) ("Thus, the Court finds that HAVA requires matching for the purpose of verifying

---

[2] Verification, n, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/verification.
[3] Verify, v, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/verifying.
[4] Validity, noun, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/validity.

the identity and eligibility of the voter before counting that person's vote."); *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1174 (11th Cir. 2008) (emphasis added) ("[S]ection 303(a) requires states to obtain the applicant's identification numbers before accepting a registration application and also to 'determine whether the information provided ... is sufficient to meet [that] requirement' <u>indicates that Congress deemed the identification numbers material to determining eligibility to register and to vote.</u>")

Under the plain and ordinary meaning of § 21083(a)(5)(A)(iii), a state official cannot sit back idly and accept an application so long as it has some numbers on it. But the guidance and directives both from 2018, and those challenged by the Plaintiffs tells local officials to essentially do just that. It commands local election officials to process UOCAVA applications without engaging the act of verifying to determine if the driver's license or social security number numbers are valid. The Commonwealth is hiding an elephant in a mousehole. The 2018 Directive states that so long as an applicant provides any set of numbers, the application "**MUST** be accepted." Accordingly, Pennsylvania officials violate HAVA if they process or accept UOCAVA applications with invalid driver's licenses or social security numbers. Similarly, Pennsylvania election officials violate HAVA when they

fail to **verify** an applicant's driver's license or the last four digits of a social security number.

II. **HAVA's "Special Rule" Does Not Authorize the Commonwealth's Failure to Verify UOCAVA Applicant's Identities Prior to Registration to Vote**

As identified by Plaintiffs in their Amended Complaint, the application of HAVA's Special Rule, found in Section 303(a)(5)(A)(ii), has no application to the relief requested. The "Special Rule" delineates how applications are processed when an applicant lacks either a valid driver's license or social security number. 52 U.S.C.A. § 21083(a)(5)(A)(ii). Plaintiffs seek the Court to enjoin Defendants from failing to verify applicant's driver's license and social security numbers, nowhere do the Plaintiffs seek to circumvent the application of the "Special Rule" where applicable. Moreover, the Special Rule operates as an exception to the general requirement. If Congress did not mandate that an applicant's driver's license or social security number be verified, then there would be no need for a Special Rule for those without either.

`Section 303(a)(5)(A)(iii) does not provide carte blanche for the Secretary to promulgate guidance and directives that circumvent the intent of Congress. Section 303(a)(5)(A)(iii) states "[t]he State shall determine

whether the information provided by an individual is sufficient to meet the requirements of [Section 303(a)], in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii). It was designed to keep in place existing state procedures for processing applications for voter registration and not federalize the procedures for processing voter registration applications. But in no event can state procedures for processing voter registration applications be implemented in a manner that is contrary to substantive federal law.

The Secretary is not only constrained by federalism in issuing a directive in violation of federal law; the Secretary is constrained by Commonwealth law as well. As the Commonwealth concedes, county commissioners **at the county level** determination of the sufficiency of a voter registration application. The Secretary has absolutely no power to tell county commissioners, like petitioner, how to process voter registration applications. *RNC v. Schmidt*, 477 M.D. 2022 (Pa. Commw. Ct. 2023) ("the Secretary does not have control over the County Boards' administration of elections, as the General Assembly conferred such authority solely upon the County Boards.")

## CONCLUSION

For the foregoing reasons, the Court should require Defendants comply with the federal verification mandates of HAVA and enjoin Defendants unlawful guidance and directives that instruct local county officials not to verify UOCAVA applications in compliance with federal law.

Dated: October 28, 2024             Respectfully submitted,

By:  */s/ Walter S. Zimolong*
     Walter S. Zimolong, Esquire
     ZIMOLONG, LLC
     Attorney I.D. 89151
     wally@zimolonglaw.com
     PO Box 552
     Villanova, PA 19085-0552
     Tele: 215-665-0842

     Laura Stell*
     AMERICA FIRST
     LEGAL FOUNDATION
     Attorney I.D. 334806
     611 Pennsylvania Ave. SE #231
     Washington, DC 20003
     Tel: (202) 836-7958
     laura.stell@aflegal.org

     *Attorneys for Amicus Curiae,*
     *America First Legal Foundation*

*Petition for Special Admission pending