# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Hon. Guy Reschenthaler, a member of the
U.S. House of Representatives, *et al*.,

       Plaintiffs,

      v.

Al Schmidt, in his official capacity
as Secretary of the Commonwealth, *et al*.,

       Defendants.

Case No. 1:24-cv-1671-CCC

Hon. Christopher C. Conner

## BRIEF OF *AMICI CURIAE* MICHIGAN FAIR ELECTIONS INSTITUTE AND WISCONSIN VOTER ALLIANCE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST OF *AMICI CURIA*....................................................1

ARGUMENT ........................................................................................................2

I.     Verifying the Identity and Eligibility of Individuals to Vote in a Federal Election Protects the Fundamental Right to Vote of <u>*All*</u> American Citizens, Particularly in a National Election................................................................2

II.    The Lack of Integrity in Our Elections Is Not an "Illusory Problem"—It Is an Existential Threat to Our Constitutional Republic and the Fundamental Right to Vote.................................................................................................10

CONCLUSION ...................................................................................................13

CERTIFICATE OF COMPLIANCE.....................................................................15

CERTIFICATE OF SERVICE .............................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Anderson v. United States,*
417 U.S. 211 (1974) ...................................................................................5, 6

*Baker v. Carr,*
369 U.S. 186 (1962) ......................................................................................5

*Black v. McGuffage,*
209 F. Supp. 2d 889 (N.D. Ill. 2002) ...........................................................6, 8, 9

*Burson v. Freeman,*
504 U.S. 191 (1992) ......................................................................................5

*Crawford v. Marion Cnty. Election Bd.,*
553 U.S. 181 (2008) ......................................................................................3

*Curry v. Baker,*
802 F.2d 1302 (11th Cir.1986) ....................................................................6

*Fla. State Conference of N.A.A.C.P. v. Browning,*
522 F.3d 1153 (11th Cir. 2008) ...................................................................6

*Genetski v. Benson,*
Case No. 20-000216-MM, 2021 Mich. Ct. Cl. LEXIS 3 (March 9, 2021) .............11

*Griffin v. Burns,*
570 F.2d 1065 (1st Cir. 1978) ......................................................................6, 7

*Griffin v. Roupas,*
385 F.3d 1128 (7th Cir. 2004) .....................................................................3

*Harper v. Va. State Bd. of Elections,*
383 U.S. 663 (1966) ......................................................................................4

*Husted v. A. Philip Randolph Inst.,*
138 S. Ct. 1833 (2018) .................................................................................4

*Johnson v. Secretary of State*,
506 Mich. 975, 951 N.W.2d 310 (2020)...........................................................11, 12

*League of Women Voters v. Brunner*,
548 F.3d 463 (6th Cir. 2008) ..........................................................................2, 7, 8

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803)...............................................................................12

*Marks v. Stinson*,
19 F.3d 873 (3d Cir. 1994).................................................................................6, 7

*Prichard v. United States*,
181 F.2d 326 (6th Cir.), *aff'd due to absence of quorum*, 339 U.S. 974 (1950) .......6

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) ..................................................................................................9

*Reynolds v. Sims*,
377 U.S. 533 (1964)..................................................................................4, 5, 7, 8, 9

*Roe v. Ala.*,
43 F.3d 574 (11th Cir.1995) ..................................................................................6

*South v. Peters*,
339 U.S. 276 (1950)................................................................................................5

*United States v. Classic*,
313 U.S. 299 (1941) ...............................................................................................5

*Veasey v. Abbott*,
830 F.3d 216 (5th Cir. 2016) .................................................................................3

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886)................................................................................................9

**Other**

*Building Confidence in U.S. Election, Report of the Commission on Federal Election Reform* (Sept. 2005) ..............................................................................................2, 3

Help America Vote Act of 2002 (HAVA)....................................................................9

https://www.cnn.com/election/2020/results/state/michigan ...................................11

https://www.dailymail.co.uk/news/article-14002851/pennsylvania-voter-registration-fraud-2024-election-lancaster-county.html?ito=native_share_article-nativemenubutton.................................................................................................10

https://www.newyorker.com/magazine/2021/08/09/the-big-money-behind-the-big-lie ..............................................................................................................................10

https://www.wgal.com/article/pennsylvania-election-fraud-lancaster-county/62717614......................................................................................................10

https://wjactv.com/news/local/cambria-county-investigates-21-fraudulent-voter-registration-requests-investigation-elections-pennsylvania-fraud-voting-flagged-democrats-republicans-libertarian-independents-da-officials-.................................10

https://wwmt.com/news/election/more-than-27-million-michigan-voters-request-absentee-ballots-for-nov-3-election .......................................................................11

Michael T. Morley, *Election Emergency Redlines* (Mar. 31, 2020) ....................3, 4

*Pew Center on the States, Election Initiatives Issue Brief*, "Inaccurate, Costly, and Inefficient: Evidence that America's Voter Registration System Needs an Upgrade," (Feb. 2012) ...............................................................................................4

Uniformed and Overseas Citizen Absentee Voting Act (UOCAVA) of 1986..........9

## STATEMENT OF INTEREST OF *AMICI CURIAE*

Michigan Fair Elections Institute d/b/a Michigan Fair Elections ("MFE") is a Michigan-based, non-profit, non-partisan organization.  MFE started in July 2022 with a handful of concerned citizens and has grown to more than 3,500 volunteers across the state.  Its local task forces are dedicated to restoring fair and honest elections through education, local citizen participation in elections, and litigation when necessary.  MFE is at the forefront of working for election integrity.  MFE helps to investigate Michigan's elections to ensure legal compliance (both at the state and federal level), and it communicates the results of its investigations to educate the public about ways to improve Michigan's elections.  MFE analyzes bills and laws with an eye toward closing gaps and opportunities for abuse by any who might undermine free and fair elections.  MFE is an issues-based, educational organization that serves the community and welcomes all who support election integrity and who support both the Michigan and United States Constitutions.

Wisconsin Voter Alliance ("WVA") is a Wisconsin non-profit corporation. WVA seeks to facilitate and coordinate the restoration of voting integrity in Wisconsin.  WVA's mission is to effect change to law and policies surrounding elections by creating multi-faceted objectives to restore voter confidence and integrity in the election process.  WVA educates the public and elected officials,

- 1 -

works to establish best election practices, identifies and encourages debate on election policy and law, and encourages fairness during elections.

In a *national* election, such as the upcoming 2024 general election, procedures to protect voter integrity in *each* state are essential to protect the vote of *all* American citizens. And this is particularly critical and true in the all-important swing states, which include Michigan, Wisconsin, and Pennsylvania.

## ARGUMENT

I. **Verifying the Identity and Eligibility of Individuals to Vote in a Federal Election Protects the Fundamental Right to Vote of _All_ American Citizens, Particularly in a National Election.**

"The right to vote is a fundamental right, preservative of all rights." *League of Women Voters v. Brunner*, 548 F.3d 463, 476 (6th Cir. 2008) (internal quotations and citation omitted).

As the Commission on Federal Election Reform—a bipartisan commission chaired by former President Jimmy Carter and former Secretary of State James A. Baker III, and cited extensively by the United States Supreme Court—observed, "the 'electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud or to confirm the identity of voters.'" *Building Confidence in U.S. Election, Report of the Commission on Federal Election Reform* at 46 (Sept. 2005) (hereinafter, the "*Carter-Baker Report*").

- 2 -

According to the *Carter-Baker Report*, mail-in voting is "the largest source of potential voter fraud." *Carter-Baker Report* at 46. Many well-regarded commissions and groups of diverse political affiliation agree that "when election fraud occurs, it usually arises from absentee ballots." Michael T. Morley, *Election Emergency Redlines* at 2 (Mar. 31, 2020) (hereinafter, "Morley, Redlines").

Such fraud is easier to commit and harder to detect. As one federal court put it, "absentee voting is to voting in person as a take-home exam is to a proctored one." *Griffin v. Roupas,* 385 F.3d 1128, 1131 (7th Cir. 2004); *see also id.* at 1130-31 (voting fraud is a "serious problem" and is "facilitated by absentee voting.").

Courts have repeatedly found that mail-in ballots are particularly susceptible to fraud. As Justice Stevens noted, "flagrant examples of [voter] fraud . . . have been documented throughout this Nation's history by respected historians and journalists," and "the risk of voter fraud" is "real" and "could affect the outcome of a close election." *Crawford v. Marion Cnty. Election Bd*., 553 U.S. 181, 195-96 (2008) (plurality op. of Stevens, J.) (collecting examples). Similarly, Justice Souter observed that mail-in voting is "less reliable" than in-person voting. *Crawford,* 553 U.S. at 212, n.4 (Souter, J., dissenting) ("'[E]lection officials routinely reject absentee ballots on suspicion of forgery.'"); *id.* at 225 (noting that "absentee-ballot fraud . . . is a documented problem"); *see also Veasey v. Abbott,* 830 F.3d 216, 239, 256 (5th Cir. 2016) (*en banc*) ("[M]ail-in ballot fraud is a significant threat"—so

much so that "the potential and reality of fraud is much greater in the mail-in ballot context than with in-person voting."); *see also id.* at 263 ("[M]ail-in voting . . . is far more vulnerable to fraud."); *id.* (recognizing "the far more prevalent issue of fraudulent absentee ballots").

This risk of abuse by absentee or mail-in voting is magnified by the fact that "many states' voter registration databases are outdated or inaccurate." Morley, Redlines at 2. A 2012 study from the Pew Center on the States—which the U.S. Supreme Court cited in a recent case—found that "[a]pproximately 24 million—one of every eight—voter registrations in the United States are no longer valid or are significantly inaccurate"; "[m]ore than 1.8 million deceased individuals are listed as voters"; and "[a]pproximately 2.75 million people have registrations in more than one state." *See Pew Center on the States, Election Initiatives Issue Brief*, "Inaccurate, Costly, and Inefficient: Evidence that America's Voter Registration System Needs an Upgrade," (Feb. 2012) (cited in *Husted v. A. Philip Randolph Inst.,* 138 S. Ct. 1833, 1838 (2018)).

The right of qualified citizens to vote in a state election involving federal candidates is recognized as a fundamental right under the Fourteenth Amendment. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 665 (1966); *see also Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (stating that the Fourteenth Amendment protects the "the right of all qualified citizens to vote, in state as well as in federal elections").

The fundamental right to vote protected by the Fourteenth Amendment is cherished in our nation because it "is preservative of other basic civil and political rights." *Reynolds*, 377 U.S. at 562. Accordingly, voters have a "right to cast a ballot in an election free from the taint of intimidation and fraud," *Burson v. Freeman*, 504 U.S. 191, 211 (1992), and "[c]onfidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy," *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (*per curiam*).

"Obviously included within the right to [vote], secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted" if they are validly cast. *United States v. Classic*, 313 U.S. 299, 315 (1941). "[T]he right to have the vote counted" means counted "at full value without dilution or discount." *Reynolds*, 377 U.S. at 555, n.29 (quoting *South v. Peters*, 339 U.S. 276, 279 (1950) (Douglas, J., dissenting)).

"Every voter in a federal . . . election, whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, *without its being distorted by fraudulently cast votes*." *Anderson v. United States*, 417 U.S. 211, 227 (1974) (emphasis added); *see also Baker v. Carr*, 369 U.S. 186, 208 (1962). Invalid or fraudulent votes "debase[]" and "dilute" the weight of each validly cast vote. *See Anderson*, 417 U.S. at 227.

"The right to an honest [count] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right or privilege secured to him by the laws and Constitution of the United States." *Anderson*, 417 U.S. at 226 (quoting *Prichard v. United States*, 181 F.2d 326, 331 (6th Cir.), *aff'd due to absence of quorum*, 339 U.S. 974 (1950)).

"When an election process 'reache[s] the point of patent and fundamental unfairness,' there is a due process violation." *Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1183-84 (11th Cir. 2008) (quoting *Roe v. Ala.,* 43 F.3d 574, 580 (11th Cir.1995) (citing *Curry v. Baker,* 802 F.2d 1302, 1315 (11th Cir.1986))); *see also Griffin v. Burns*, 570 F.2d 1065, 1077 (1st Cir. 1978) ("If the election process itself reaches the point of patent and fundamental unfairness, a violation of the due process clause may be indicated and relief under § 1983 therefore in order."); *Marks v. Stinson,* 19 F.3d 873, 889 (3d Cir. 1994) (enjoining winning state senate candidate from exercising official authority where absentee ballots were obtained and cast illegally).

"[T]he right to vote, the right to have one's vote counted, and the right to have one's vote given equal weight are basic and fundamental constitutional rights incorporated in the due process clause of the Fourteenth Amendment to the Constitution of the United States." *Black v. McGuffage*, 209 F. Supp. 2d 889, 900

(N.D. Ill. 2002) (holding that a state law that allows local election officials to impose different voting schemes upon some portions of the electorate and not others violates due process); *see also League of Women Voters*, 548 F.3d at 478 (allowing the due process challenge to proceed based upon allegations of "non-uniform rules, standards, and procedures" that resulted in "massive disenfranchisement and unreasonable dilution of the vote").

Additionally, practices that promote the casting of illegal or unreliable ballots, or fail to contain basic minimum guarantees against such conduct, violate the Fourteenth Amendment by leading to the dilution of validly cast ballots.  *See Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").  The Fourteenth Amendment Due Process Clause protects the right to vote from such conduct by state officials which seriously undermines the fundamental fairness of the electoral process.  *See League of Women Voters*, 548 F.3d at 478 ("The Due Process Clause is implicated, and § 1983 relief is appropriate, in the exceptional case where a state's voting system is fundamentally unfair.") *Marks*, 19 F.3d at 889; *Griffin*, 570 F.2d at 1077-78.

Additionally, "[t]he right to vote is protected in more than the initial allocation of the franchise.  Equal protection applies as well to the manner of its exercise.  Having once granted the right to vote on equal terms, the State may not, by later

- 7 -

arbitrary and disparate treatment, value one person's vote over that of another. . . . It must be remembered that 'the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.'" *Bush*, 531 U.S. at 104-05 (quoting *Reynolds*, 377 U.S. at 555). Consequently, an equal protection claim can be advanced in the election context without a suspect classification or invidious discrimination if the challenged practices effectively value one person's vote over the vote of another or by diluting legal votes by allowing illegal ones. *See, e.g., Black*, 209 F. Supp. 2d at 899 (concluding that the plaintiffs have advanced an equal protection claim and noting that "[a]ny voting system that arbitrarily and unnecessarily values some votes over others" violates equal protection "[e]ven without a suspect classification or invidious discrimination"). "The right to vote includes the right to have one's vote counted on equal terms with others." *League of Women Voters*, 548 F.3d at 476.

In sum, permitting electoral abuses and voter fraud by failing to ensure basic identity verification and eligibility requirements threatens to debase and dilute the votes of valid voters and thus deprive them of due process and the equal protection of the law guaranteed by the Fourteenth Amendment. Justification for finding a constitutional violation and granting a preliminary injunction stems from the Supreme Court's recognition that the right to vote in a free and fair election is one that is preservative of other basic civil and political rights. *See Black,* 209 F. Supp.

2d at 900 (quoting *Reynolds,* 377 U.S. at 561-62 ("[S]ince the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.")); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) ("the political franchise of voting . . . is regarded as a fundamental political right, because [*sic*] preservative of all rights.").

In the final analysis, Plaintiffs' have persuasively demonstrated that through unlawful guidance, Defendants are instructing election officials to violate federal law,[1] thereby risking the dilution of all eligible voters, *including eligible military voters*, by allowing ineligible individuals to receive and vote an absentee oversees ballot, in violation of the Constitution.[2]  By doing so, Defendants have harmed the right to vote of <u>all</u> eligible American citizens who vote in this upcoming national election.

---

[1] The Uniformed and Overseas Citizen Absentee Voting Act (UOCAVA) of 1986 establishes certain privileges for members of the military, their family members and other overseas U.S. citizens when voting in a federal election.  The Help America Vote Act of 2002 (HAVA) was passed to establish minimum standards for the administration of federal elections, including the requirement for verification of identity and eligibility for individuals who seek to vote in a federal election.

[2] In a recent television interview provided to Fox News, Defendant Al Schmidt, Secretary of the Commonwealth, acknowledged the importance of "checks and balances" to prevent ineligible voters from voting, including measures to prevent noncitizens from voting.  (*See* https://www.foxnews.com/video/6363840642112).  Yet, in this litigation, Defendant Schmidt is opposing such "checks and balances" with regard to UOCAVA voters.

## II.    The Lack of Integrity in Our Elections Is Not an "Illusory Problem"—It Is an Existential Threat to Our Constitutional Republic and the Fundamental Right to Vote.

Election integrity is essential to the survival of our constitutional republic.  To ensure the integrity of our elections, verifying the identity and eligibility of individuals who seek to vote in a federal election—including those who seek to vote by absentee overseas ballot—is essential.

Certain *amici* in this case (as well as a certain political party) often suggest, and even argue, that ballot fraud is an "illusory problem."  (*See infra.*)  Indeed, any challenge to the legitimacy of the 2020 election, which involved the prolific use of mail-in ballots, was decried as promoting the "big lie."[3]  But the 2020 election was not as pristine as some would like the public—or this Court—to think.  Plaintiffs in this case seek to prevent the repeat of 2020.  *Amici*, who represent the all-important interests of the voters in the swing states of the so-called "blue wall," understand all too well the problems that arose in 2020.  And Pennsylvania is hardly immune from them as investigations of voter fraud are occurring even now.[4]

---

[3] (*See, e.g.*, https://www.newyorker.com/magazine/2021/08/09/the-big-money-behind-the-big-lie).

[4] (*See* https://www.dailymail.co.uk/news/article-14002851/pennsylvania-voter-registration-fraud-2024-election-lancaster-county.html?ito=native_share_article-nativemenubutton; https://www.wgal.com/article/pennsylvania-election-fraud-lancaster-county/62717614; https://wjactv.com/news/local/cambria-county-investigates-21-fraudulent-voter-registration-requests-investigation-elections-pennsylvania-fraud-voting-flagged-democrats-republicans-libertarian-independents-da-officials-).

In the important swing state of Michigan, for example, Donald Trump lost the 2020 election by a mere 154,188 votes. (*See* https://www.cnn.com/election/2020/results/state/michigan). This was a *fraction* of the vote when you consider the fact that there were approximately 3 million absentee ballots (the most in Michigan history) alone,[5] and Michigan Secretary of State Jocelyn Benson's guidance on how these ballots should be treated (*i.e.,* directing clerks "*to presume that signatures are valid*") was declared unlawful. *See Genetski v. Benson*, Case No. 20-000216-MM, 2021 Mich. Ct. Cl. LEXIS 3, at *12, 19 (March 9, 2021) ("[T]he standards issued by defendant Benson on October 6, 2020, with respect to signature-matching requirements amounted to a 'rule' that should have been promulgated in accordance with the APA. And absent compliance with the APA, the 'rule' is invalid."). But that decision was issued too late to do anything to remedy the unlawful guidance or to prevent its adverse impact on the election. As noted above, this is problematic as the courts have long held that mail-in ballots are exceedingly susceptible to fraud. *See supra*. Consequently, we will never know the true impact of this unlawful guidance on the outcome of the election.

Additionally, in *Johnson v. Secretary of State*, 506 Mich. 975, 951 N.W.2d 310 (2020), the Michigan Supreme Court denied a petition for an extraordinary writ

---

[5]    (*See*    https://wwmt.com/news/election/more-than-27-million-michigan-voters-request-absentee-ballots-for-nov-3-election). Consequently, Trump only lost by approximately 5% of the absentee ballots.

that sought an independent audit of the votes in the 2020 election (a petition that

Secretary Benson vigorously opposed). The petition failed by a vote of 4 to 3 (hardly

a decisive victory for the Secretary). In his dissent, Justice Viviano stated, in

relevant part, the following:

> For the second time in recent weeks, individuals involved in last month's election have asked this Court to order an audit of the election results under Const 1963, art 2, § 4. . . . As in that case, petitioners here allege that election officials engaged in fraudulent and improper conduct in administering the election. In support of these claims, _petitioners have submitted hundreds of pages of affidavits and expert reports detailing the alleged improprieties_.[6] Here, as in _Costantino_, I would grant leave to appeal so we can determine the nature and scope of the constitutional right to an election audit. After all, "[i]t is emphatically the province and duty of the judicial department to say what the law is." _Marbury v Madison_, 5 US (1 Cranch) 137, 177 (1803). But I write separately to highlight the lack of clarity in our law regarding the procedure to adjudicate claims of fraud in the election of presidential electors.

_Johnson_, 506 Mich at 984-85, 951 NW2d at 319 (Viviano, J., dissenting) (emphasis

added).

In sum, none of these challenges were "contrived [or] politically-motivated"

nor an "assault on the free and fair administration of elections." (_See_ Br. of _Amici_ at

14-16 [Doc. No. 55-2]). Indeed, as the case challenging Secretary of State Benson's

unlawful guidance regarding the validation requirement for absentee ballot

signatures illustrates, those Secretaries of State who seek to issue such unlawful

---

[6] The constant refrain echoed through the national media that there was "no evidence" of election malfeasance in the 2020 election is demonstrably false.

guidance and who reject requirements for verification of identity and eligibility to vote in a federal election are the ones who create an *authentic* threat to the legitimacy of our elections.  Verification of identity and eligibility to vote in a federal election are bare essentials to a fair election.  Those who seek to remove such basic requirements in a national election are causing the dilution of the votes of *all* American citizens.  Therefore, it is essential that courts intervene in a timely manner to ensure an honest and fair national election.

## CONCLUSION

The Court should deny Defendants' motion to dismiss and promptly grant the requested injunctive relief to ensure a fair national election in 2024.

Respectfully submitted,

LAW OFFICE OF ANDREW H. SHAW. P.C.

/s/ *Andrea L. Shaw*
Andrea L. Shaw, Esq. (89333)
2011 W. Trindle Road
Carlisle, Pennsylvania 17013
(717) 243-7135

THE MUISE LAW GROUP, PLLC

Robert J. Muise, Esq.* (MI P62849)
PO Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756; Fax: (801) 760-3901
rmuise@muiselawgroup.com
* Petition for special admission forthcoming
*Attorneys for Amici Curiae*

- 13 -

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 3,086 words.

I further certify that, in preparation of this document, I used Microsoft Word 2016, and that this word processing program has been applied specifically to include all text, including headings, footnotes, and quotations in the following word count.

LAW OFFICE OF ANDREW H. SHAW. P.C.

/s/ *Andrea L. Shaw*
Andrea L. Shaw, Esq. (89333)

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the court's electronic filing system. Parties may access this filing through the court's system. I further certify that a copy of the foregoing has been served by ordinary U.S. mail upon all parties for whom counsel has not yet entered an appearance electronically: None.

LAW OFFICE OF ANDREW H. SHAW. P.C.

/s/ *Andrea L. Shaw*
Andrea L. Shaw, Esq. (89333)